**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**ROSIE MAGWOOD, on behalf of herself**
**and others similarly situated,**

        **Plaintiff,**

**vs.**

**FAMILY DOLLAR STORES, INC.,**

        **Defendant.**

**No. 1:08-cv-76-WHA**

**Judge W. Harold Albritton, III**

---

**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO TRANSFER VENUE**

Defendant Family Dollar Stores, Inc. ("Family Dollar" or "the Company") submits this Motion and Memorandum in Support of its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

**I.     INTRODUCTION**

Plaintiff Rosie Magwood ("Plaintiff") brought this collective action alleging that her employer, Family Dollar, violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime compensation to its Store Managers.  Although Plaintiff filed her case in this district on behalf of herself and other similarly situated current and former employees, the convenience of the parties and witnesses and the interest of justice compel transfer to the Western District of North Carolina.  Indeed, that is where Family Dollar is headquartered, where voluminous documentary evidence is located, and where numerous key witnesses reside.  More importantly, eleven other district courts have transferred similar FLSA collective actions against Family Dollar to the Western District of North Carolina.  Five of these cases, all of which involve an alleged failure to pay overtime, are currently pending before Judge Graham C. Mullen.

This Court should note that pending before the Judicial Panel on Multidistrict Litigation is a motion filed by plaintiffs in related actions to consolidate several FLSA actions against Family Dollar and transfer them to the Northern District of Alabama pursuant to 28 U.S.C. § 1407.[1]  This case may soon be subject to that motion as a "tag-along" case.  However, that motion does not prevent this Court from ruling on Family Dollar's motion to transfer under 28 U.S.C. § 1404(a).  Indeed, Section 1404(a) is the only vehicle through which this case could be transferred for all purposes, rather than just for pre-trial matters as allowed under Section 1407.

## II.    STATEMENT OF FACTS

### A.    The Parties

Family Dollar is a discount retail store chain specializing in low cost, basic merchandise for family and home needs.  (Exhibit 1, Declaration of Barry Sullivan ¶ 3).  Family Dollar's headquarters and principal place of business are in Matthews, North Carolina.  (Exhibit 1 ¶ 4). Plaintiff worked for Family Dollar in Dothan, Alabama. (Compl. ¶3).  She alleges that Family Dollar violated the FLSA 29 U.S.C. § 201 et seq., by failing to pay overtime for hours worked in excess of forty per week. (Compl. ¶ 5, 11, 20).  Plaintiff further purports to bring this case as a collective action under 29 U.S.C. § 216(b) on behalf of "all employees and former employees of Defendant who are similarly situated."  (Compl. ¶ 4).

### B.    Family Dollar Maintains Relevant Documents At Its North Carolina Headquarters

Family Dollar's general human resources and pay policies and practices, including those for non-exempt employees, are developed by management and executive-level employees at the North Carolina corporate headquarters.  (Exhibit 1 ¶ 7).  Likewise, timesheets and payroll

---

[1] The MDL Panel has set the motion to consolidate for hearing on March 27, 2008.  As explained above, however, the proceedings before the MDL Panel do not in any way restrict this Court from addressing the pending motion.  See Rules of Procedure, Judicial Panel on Multidistrict Litigation, Rule 1.5.

records for the potential plaintiffs in this case are processed and kept in North Carolina, and paychecks are prepared and distributed from there as well. (Exhibit 1 ¶¶ 8, 9). Personnel files are likewise maintained at the corporate headquarters. (Exhibit 1 ¶ 8).

These records are extremely voluminous and would require a major and expensive undertaking to organize, copy, store, and secure, transport back and forth, and efficiently provide for any hearing or trial in Montgomery, Alabama. (Exhibit 1 ¶ 10). Preparing such large volumes of documents for transportation, storing them in a secure off-site facility to protect confidential commercial and private information about the Company's employees, and generally making them available at a moment's notice, would significantly disrupt Family Dollar's business operations because of the expense, time, and personnel required to perform such tasks. (Exhibit 1 ¶ 10).

### C.    A Bulk Of Family Dollar's Key Witnesses Reside In North Carolina

Family Dollar anticipates calling as witnesses many management- and executive-level corporate employees who are based at the Company's headquarters and reside in the Charlotte area. (Exhibit 1 ¶ 12). These thirty-two individuals would be key witnesses to Plaintiff's and any potential opt-in plaintiffs' claims because, for example, they are persons who: (a) develop and prepare the general expectations of employees; (b) calculate pay for employees; (c) process timesheets, paychecks, and payroll; and (d) maintain payroll records. (Exhibit 1 ¶ 11). These witnesses will be required to travel approximately 400 miles, or nearly six and a half hours by automobile, to attend trial in Montgomery, Alabama. (Exhibit 2). Having to travel to Montgomery for hearings and a lengthy trial, would keep these key witnesses away from their work and homes. Because many of the employees have vital responsibilities for the operation of the Company, scheduling time away from work will disrupt business operations because their

responsibilities would have to be delegated to others, or simply not performed at all.  (Exhibit 1 ¶ 14).

**D.    Eleven Other District Courts Have Transferred FLSA Collective Actions Against Family Dollar To The Western District Of North Carolina**

During the last four years, eleven other collective actions against Family Dollar alleging wrongful denial of overtime in violation of the FLSA have been transferred to Charlotte, North Carolina pursuant to § 1404(a):  Rowe v. Family Dollar, Inc., No. 1:03-cv-1737-LJM-WTL (S.D. Ind. Jan. 26, 2004) (Exhibit 3); Anderson v. Family Dollar, Inc., No. CIV-04-0210-F (W.D. Okla. April 30, 2004) (Exhibit 4); Medley v. Family Dollar, Inc., No. 1:03-cv-00082 (M.D. Tenn. May 12, 2004) (Exhibit 5); Lucas v. Family Dollar Stores of Oklahoma, Inc., No. Civ.-04-536-0892 (W.D. Okla. March 9, 2005) (Exhibit 6); Broussard v. Family Dollar, Inc., No. Civ. A. 05-0892, 2006 U.S. Dist. LEXIS 6587 (W.D. La. Jan. 31, 2006) (Exhibit 7); Grace v. Family Dollar Stores, Inc., No. 6:04-CV-22 (WLS) (M.D. Ga. July 14, 2006) (Exhibit 8); Ward v. Family Dollar Stores of Alabama, Inc., No. CV-06-CO-01060-W, 2006 U.S. Dist. LEXIS 96846 (N.D. Ala. Sept. 29, 2006) (Exhibit 9); Ingram v. Family Dollar Stores of Alabama, Inc., No. CV-06-BE-1507-S, 2006 U.S. Dist. LEXIS 96845 (N.D. Ala. Sept. 29, 2006) (Exhibit 10); Blake, et. al. v. Family Dollar Stores, Inc. et al., No. 2:07-cv-361 (S.D. Ohio June 19, 2007) (Exhibit 11); Fowler, et. al. v. Family Dollar Stores, et. al., No. 1:07Cv250 (S.D. Ohio July 26, 2007) (Exhibit 12); Slater, et. al. v. Family Dollar Stores Inc., No. 3:07cv119-JLS (S.D. Miss. Oct. 26, 2007) (Exhibit 13).  Five of these cases, Grace, Ward, Blake, Fowler, and Slater are currently pending before the Honorable Graham C. Mullen. (Exhibits 8, 9, 11, 12, 13).

## III.    ARGUMENT

While this case may soon be a "tag along" to similar cases pending before the MDL Panel, a motion to consolidate and transfer does not limit a court from acting on matters that are

properly before it. <u>See</u> Rules of Procedure, Judicial Panel on Multidistrict Litigation, Rule 1.5. In this regard, to better explain why the MDL motion should not affect this Court's decision to transfer venue under Section 1404, it is helpful to examine the differences between Sections 1407 and 1404. The MDL Panel's authority under 28 U.S.C. § 1407 is limited to consolidating and transferring related cases for pre-trial matters only. Transferred cases must be remanded for trial. <u>See</u> 28 U.S.C. § 1407(a) ("[A]ctions may be transferred to any district for coordinated or consolidated pretrial proceedings. . . . Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."). Transfers made under Section 1404(a), on the other hand, are for all purposes, including trial. <u>See</u> <u>Winters v. Comair Aircraft, Inc.</u>, No. 07-2003-KHV, 2007 U.S. Dist. LEXIS 32957 (D. Kan. May 3, 2007) (explaining that a Section 1407 transfer would require the MDL Panel to remand the case for trial, while a Section 1404 transfer would allow the transferee court to conduct the trial).

Hence, one court confronted with a motion to stay similar to that filed by Plaintiffs here stated that:

> In my view, plaintiff's motion before the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to consolidate discovery proceedings in the numerous pending actions . . . is not inconsistent with nor does it supersede the plaintiff's motion before me under 28 U.S.C. § 1404(a) to transfer . . . [the] counterclaim in this action to the District of Delaware. Sections 1404(a) and 1407 are not mutually exclusive and may properly be used in concert and to complement one another. Nor do I see any basis for the defendant's claim that the making of the motion under Section 1407 before the Panel ousted this court of jurisdiction to decide the Section 1404(a) motion before it.

<u>General Tire & Rubber Co. v. Jefferson Chem. Co.</u>, 50 F.R.D. 112, 116 (S.D.N.Y. 1970) (granting motion to sever and transfer counterclaim under Section 1404(a) and denying motion to stay). Thus, this Court, like the court in <u>General Tire & Rubber Co.</u>, should not hesitate to

rule on this motion to transfer under 1404(a).

Under the transfer of venue statute, " a district court may transfer any civil action to any other district court or division where it might have been brought" for the "convenience of parties and witnesses," and "in the interest of justice."   28 U.S.C. § 1404(a).   Section 1404(a) was enacted as a "federal housekeeping measure, allowing easy change of venue within a unified federal system."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981).   Its purpose is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1965); Ward v. Family Dollar Stores, Inc., 2006 U.S. Dist. LEXIS 96846, at *3.

In considering this motion under section 1404(a), the Court must determine: "whether the action could 'originally have been brought in the proposed transferee district court;' then, the court must determine whether the action should be transferred 'for the convenience of the parties [and] in the interest of justice.'"  C.M.B. Foods, Inc. v. Corral of Middle Georgia, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (quoting Folkes v. Haley, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)).

As explained fully below, Family Dollar satisfies its burden in that all of the statutory requisites for transfer to the Western District of North Carolina are met and all relevant factors strongly favors transfer to that district.

**A.    Plaintiff Could Have Filed This Action In The Western District Of North Carolina**

As a preliminary matter, under Section 1404(a), the transferee court must be one in which the case originally might have been brought.  28 U.S.C. § 1404(a).  Because the FLSA provides the subject matter jurisdiction in this case, it could have been brought in any federal court of competent jurisdiction, which, for a corporation, is "any judicial district in which it is subject to

6

personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Jurisdiction and venue are proper where a party is incorporated, maintains its principal place of business and where a number of events giving rise to the complaint took place. In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003), cert. denied, 540 U.S. 1049 (2003) ("holding that the location of a corporation's principal office is a permissible factor in establishing proper venue in a transferee court").

The Western District of North Carolina's jurisdiction over Family Dollar is unquestionable. Family Dollar is headquartered within the Western District of North Carolina and maintains its principal place of business there. Id.; Ward, 2006 U.S. Dist. LEXIS 96846, at *4; See also, Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (plaintiff could not contest whether action could have been brought in transferee district as it was defendant's "home location"). Furthermore, the pay policies and practices about which Plaintiff complains, emanate from Family Dollar's corporate headquarters, and her paychecks were issued from there as well. (Exhibit 1 ¶¶ 7, 9). Thus, a number of events upon which Plaintiff bases her claim arose in the Western District of North Carolina. Accordingly, Family Dollar clearly satisfies the first statutory element required for transfer of venue to the Western District of North Carolina.

**B.    The Interest Of Justice Favors Transfer To North Carolina**

There is no question that transferring this case to the Western District of North Carolina would serve the interest of justice. In weighing the interest of justice, this Court must consider "those public-interest factors of systematic integrity and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988); A.J. Taft Coal Co. Inc. v. Barnhart, 291 F. Supp. 2d 1290, 1312 (N.D. Ala. 2003). It is proper for a court to transfer a case to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be '[easiest,

and] most expeditious and inexpensive.'" <u>Davis v. Metro Goldwyn-Mayer Pictures</u>, No. 2:05cv860-T(WO), 2007 U.S. Dist. LEXIS 23942, *4 (M.D. Ala. 2007) (citing <u>Howell v. Tanner</u>, 650 F.2d 610, 616 (5th Cir. July 13, 1981) (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947)).

     **1.**       **The Interest Of Justice Compels Transferring This Case To The Western District Of North Carolina Where Several Similar Cases Are Currently Pending**

Where, as here, there are similar cases pending before the transferee district, transfer would be both proper and appropriate to that district. <u>See Gould</u>, 990 F. Supp. at 1361 (quoting <u>Hutchens v. Bill Heard Chevrolet Co.</u>, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996)). The U.S. Supreme Court has made it "quite clear that [t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 531, 110 S. Ct. 1274, 1284 (1990) (quotation and citation omitted).

In <u>Ward</u>, The Northern District of Alabama specifically recognized that the existence of similar or related actions in a transferee venue can be the most compelling reason to transfer a case. <u>See Ward</u>, 2006 U.S. Dist. LEXIS 96846, at *10 ("[T]he pendency of similar or related actions in a transferee venue will often be the most compelling reason for a court to transfer a case."); <u>See also, Gould</u>, 990 F. Supp. at 1364 (court found that transfer was appropriate because there were similar actions pending in the transferee district). The Court should transfer this case as the Northern District of Alabama did in <u>Ward</u>. This case is brought with substantially similar facts, common key witnesses, and evidence as <u>Ward</u> and <u>Grace</u>. <u>See</u> 2006 U.S. Dist. Lexis 96846, * 10. Any store level witnesses and evidence will vary for each plaintiff Store Manager. As noted in the order transferring venue in <u>Ward</u>: "Perhaps most importantly, [transferring venue] would prevent Plaintiffs from obtaining a 'second bite' at class notice and certification if

it is denied by the Western District of North Carolina."

Id. at *12 & n. 3.

In any event, Plaintiff's Complaint presents essentially the same legal issues that tied the Ward case to other cases pending in North Carolina, namely, whether Family Dollar improperly denied its employees overtime compensation in violation of the FLSA. Accordingly, because similar cases involving the same defendant and essentially the same issues and common key witnesses are pending in the Western District of North Carolina, this case should likewise be transferred there.

### 2.     Under The First-Filed Rule, The Western District Of North Carolina Is The Proper Venue

Just as the pendency of similar cases compels transfer under Section 1404(a), the first-filed rule compels transfer for the same reason. The first-filed rule provides that when two actions involving overlapping, parallel, or competing claims are filed in federal court, the forum should be the court in which the first filed suit is pending. See Valpak Direct Mktg. Sys., Inc. v. Valpak of Cincinnati, Inc., 2005 U.S. Dist. LEXIS 43834, *5-6 (M.D. Fla. Sept. 30, 2005). "A principal concern behind the 'first field' rule, as with 28 U.S.C. § 1404(a), is preventing duplication of effort and incompatible rulings. Barnett, 171 F. Supp. 2d at 1296 (citing Allstate Ins. Co. v. Clohessy, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998)). It is no doubt clear that the Eleventh Circuit has adopted the first-filed rule. See Anazonwu v. Nissan North America, Inc., 2006 U.S. Dist. LEXIS 47353, *2 (N.D. Fla. 2006) (citing Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2006) ("[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule," and "[w]e are no exception.").

The plaintiff bears the burden to prove that there are compelling circumstances that would necessitate departing from this well established rule.  See id. at *3; Valpak, 2005 U.S. Dist. LEXIS 43834, at *5.  "[E]ven where compelling circumstances can be shown, most courts adhere to the first-filed rule, unless matters of judicial economy and convenience of the litigants dictate otherwise."  Anazonwu, 2006 U.S. Dist. LEXIS 47353, *3 (citing Philibert 133 Fed. Appx. 980).

District courts transferring FLSA cases against Family Dollar have done so based upon the first-filed rule.  See Slater et. al. v. Family Dollar Stores, Inc., No. 3:07-cv-119-TSL-JCS (S.D. Miss. Sept. 27, 2007) (ordering plaintiffs, who brought an action on their own behalf as well as other Mississippi employees, to show cause why the case should not be transferred to the Western District of North Carolina pursuant to the First-To-File rule).  (Exhibit 13).[2]  This case likewise demands transfer under the first-filed rule.  Multiple FLSA collective actions against Family Dollar, in which current and former Store Managers allege that they were improperly denied overtime, are currently pending before Judge Mullen in the Western District of North Carolina.  Some of these cases purport to be nationwide in scope and would certainly encompass Plaintiff and the current and former Store Managers whom she purports to represent.  Under these circumstances, and as the Slater court noted, there is clearly a sufficient overlap between the issues and parties such that having this case proceed in this Court would simply duplicate the work of Judge Mullen in the first-filed court.  Accordingly, in the interest of judicial economy and comity, this Court should "yield its jurisdiction to the [Western District of North Carolina]" based on the first-filed rule.  See Valpak 2005 U.S. Dist. LEXIS 43834, at *6.

---

[2] Plaintiffs failed to show cause, and consequently, the court transferred the case to the Western District of North Carolina.  (Exhibit 13).

3.    **The Western District of North Carolina Has A Less Crowded Docket**

A final reason that the Court should transfer this case in the interest of justice is that the Western District of North Carolina has a less crowded docket than this district, and such consideration is relevant under a Section 1404(a) transfer analysis.  P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 808 (11th Cir. 2003).   A comparison of "docket conditions" between the Plaintiff's choice of forum and the transferee court is a relevant factor for determining if the "interest of justice" falls in favor of a transfer of venue, particularly when combined with other factors favoring a transfer of venue.  Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989).  Statistics available on uscourts.gov show that for the twelve month period ending September 30, 2006, the average per judgeship caseload of cases pending in this district was 432. (Exhibit 14).  In the same time period, the Western District of North Carolina had an average per judgeship caseload of 332 cases pending. (Exhibit 15).  Thus, this district undoubtedly has a more crowded docket, which supports transferring this case to the Western District of North Carolina.

Consequently, under 28 U.S.C. § 1404(a), the interest of justice clearly favors transferring this case to the Western District of North Carolina, where there is both a history of, and more importantly, an existing presence of other similar FLSA collective actions against Family Dollar.

C.    **Transferring This Action To The Western District Of North Carolina Will Serve The Convenience Of The Parties And Witnesses**

Factors affecting the convenience of parties and witnesses under 28 U.S.C. § 1404(a) also strongly weigh in favor of transferring this case.  Factors considered in determining whether transfer is appropriate for the convenience of parties and witnesses include:

> the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses, the relative ease of access to sources

of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency.

Davis, 2007 U.S. Dist. LEXIS 23942, at *7 (citing Lasalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003) (quoting Holmes v. Freightliner, L.L.C., 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002)).

> **1.    The Court Should Give Little Weight to Plaintiff's Choice Of Forum In Balancing The Factors Affecting Whether A Transfer Of Venue Is Warranted**

Defendant does not deny "some initial weight must be given to [Plaintiff's] choice of forum." Id. (quoting First Federal Savings & Loan v. Berger, 672 F. Supp. 1454, 1457 (M.D. Ga. 1987)).  However, Plaintiff's chosen forum may be greatly diminished:

> Where [as here] there are hundreds of potential plaintiffs, [if not thousands], all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

Gould, 990 F. Supp. at 1358; See also Barnett v. Alabama, 171 F. Supp. 2d 1292, 1297 (S.D. Ala. 2001) ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [her] choice of forum is considerably reduced by virtue of the fact that [she] brought [her] challenge as a class action.").

Significantly, courts that have already transferred similar FLSA collective actions against Family Dollar to North Carolina fully agree that plaintiffs' choice to bring nationwide collective actions diminished the importance of any single plaintiff's choice of forum.  See, e.g., Rowe v. Family Dollar, Inc., No. 1:03CV1737-LJM-WTL, slip op. at 1 (Exhibit 3) ("In this opt-in class action, more than the lead plaintiff's convenience must be considered. By choosing to pursue this matter as a class action, plaintiff's chose of forum has lost its preference."); Lucas v. Family

<u>Dollar Stores of Oklahoma, Inc.</u>, No. Civ.-04-536-M, slip op. at 6 (Exhibit 6) ("[B]ecause Lucas is suing as a class representative, the Court finds that Lucas' choice of forum is entitled to less deference"). In <u>Ward</u>, the court noted that "[i]n the current case, Plaintiffs' proposed collective action under the FLSA covers "all employees and former employees" who were employed as store managers. If notice is sent out pursuant to Plaintiffs' request, the case may generate thousands of opt-in plaintiffs from across the country." 2006 U.S. Dist. LEXIS 96846, at * 6. Accordingly, Plaintiff's choice of forum should be entitled to little if any weight.

### 2.    The Cost Of Attendance And Convenience For Willing Witnesses Favors Transfer

"When considering the practical need to adjudicate in a forum convenient for the parties and witnesses, courts generally examine the location of principal material witnesses, the relative ease of access to sources of proof, and the ability of the parties to bear the expenses of changing the forum." <u>A.J. Taft Coal</u>, 291 F. Supp. 2d at 1311. "The convenience of witnesses is often said to be the 'most important factor' in deciding whether to transfer. Here the key officers of [Defendant], who would be witnesses, are located in [the transferee district]", thus this factor leans in favor of transfer. <u>Gould</u>, 990 F. Supp. at 1359 (internal citations omitted).

Additionally, federal courts have recognized that increased travel distances, travel expenses, and the disruption of work and home schedules all add to the cost of attendance for witnesses to appear for trial, and in this case, they weigh in favor of transfer. Courts will consider such facts and favor transfer to a forum where the costs may be kept to a minimum. The Fifth Circuit has reasoned:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with

overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work and home responsibilities gets increasingly difficult and complicated when the travel time from the home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

In re Volkswagen AG, 371 F.3d 201, 204-05 (5th Cir. 2004) (citing Fed. R. Civ. P. 45(c)(2)),

It is considerably more convenient to try the case in North Carolina. Family Dollar's corporate headquarters in Mathews, a suburb of Charlotte, North Carolina, is approximately 400 miles from Montgomery. (Exhibit 2). While a non-stop flight from Charlotte to Montgomery takes approximately one hour and thirty minutes (Exhibit 16), the time needed to travel to the airport, check in, and navigate security, will add several hours to the trip. Thus, travel to Montgomery would cause a considerable burden to many witnesses who have vital responsibilities for the operation of the Company. Further, adding to the burden these witnesses must bear is that they will have to endure this travel and the time away from their personal lives and jobs after providing the same kind of testimony in other FLSA cases pending in the Western District of North Carolina. Accordingly, the convenience of the witnesses compels transfer to the Western District of North Carolina. See Ward, 2006 U.S. Dist. LEXIS 96846, at *9 ("Transferring this case to the Western District of North Carolina would save a considerable amount of resources regarding travel for key corporate witnesses, the transportation of documents and other evidence, and the avoidance of the disruption of work and home schedules of the witnesses").

In addition to Family Dollar's executive witnesses, the Company faces the possibility of paying for the travel and expenses of countless other material witnesses who are store-level employees who worked, or are working, under the supervision of managerial employees

encompassed by Plaintiff's purported nationwide collective action. See Citibank, N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003) (convenience of witnesses weighed in favor of transfer because more potential witnesses resided outside of plaintiff's choice of forum). Specifically, Family Dollar may be responsible for the expense of store level employees from potentially more than 6,400 stores in 44 different states and the District of Columbia that are the only persons who would be able to provide a court with specific facts necessary for the individualized inquiry into each potential plaintiff's day-to-day activities that are the subject of this suit. (Exhibit 1 ¶ 15). Family Dollar is also likely to call District Managers from across the country to testify regarding expectations of Store Managers. Transferring this action to North Carolina, where the Company has its headquarters and resources to provide discounted lodging and transportation, would significantly reduce costs. (Exhibit 1 ¶ 16). Transfer would also dramatically cut down the costs attendant to these employees having to repeatedly appear as witnesses in litigation pending in multiple courts.

**3. Availability of Compulsory Process To Secure Attendance of Witnesses Balances In Favor Of Transfer**

The availability of compulsory process to secure the attendance of witnesses also tilts in favor of transfer. As in Gould, non-employee witnesses residing in the transferee district may be called to testify. "This fact is especially important given that the Middle District of Alabama would be unable to compel the attendance of these persons." Gould, 990 F. Supp. at 1359. In this action, the following three former Family Dollar employees have information pertinent to Plaintiff's claims and continue to reside within the Charlotte area within reach of a subpoena from the Western District of North Carolina, but not from this Court:

- Fred Wine, former Employee Relations Director;
- Vann Mills, former Manager for Employee Relations; and

- Mary Lauzon, former Manager for Employee Relations.

(Exhibit 1 ¶ 17). Each of these witnesses may have information related to communications with store-level employees regarding compensation issues and the processing of store-level employee complaints. (Exhibit 1 ¶ 17). As a result, Plaintiff and possible opt-in plaintiffs wishing to subpoena such former company witnesses would clearly be better served prosecuting this case in North Carolina rather than in Alabama. See Laffal v. Overseas Adventure Travel Partners, Inc., No. 3:99-CV-1113-J-21A, 2000 WL 362017, *2 (M.D. Fla. Mar. 31, 2000) ("It is reasonable to assume that non-employee witnesses would be greatly inconvenienced, and far less likely to appear voluntarily, if trial were held [far] from their home.").

### 4.    Ease Of Access To Sources Of Proof And The Location Of Relevant Documents Favors Transfer

A bulk of the key documents and information are located in North Carolina, which further supports transfer of this case. It has been long held that the location of documentary evidence is a factor to consider in the court's transfer analysis. Davis, 2007 U.S. Dist. LEXIS 23942, at * 8-9 (location of relevant documents weighed in favor of transfer. Although Plaintiff may have documents, many more are likely near transferee district.); A.J. Taft, 291 F. Supp. at 1311 (finding location of documents or other sources of proof a practical reason for transfer; See also Volkswagen, 371 F.3d at 203; Horseshoe Entm't, 337 F.3d at 434 (location of books and records a factor in favor of transfer). Access to records and documents is more available to Western District of North Carolina, and thus the balance tilts towards transfer of this litigation. See Cortez v. First City Nat'l Bank, 735 F. Supp. 1021, 1024 (M.D. Fla. 1990) (granting motion to transfer venue and noting that relative ease of access to sources of proof is "an important consideration" and that a corporation is assumed to maintain relevant documents and records at its principle place of business); See also Moghaddam v. Dunkin Donuts, Inc., 2002 U.S. Dist.

LEXIS 14952, *10 (S.D. Fla. 2002) ("Because the bulk of the relevant documents are located in [the transferee court], the Court finds that this factor clearly weighs in favor of transfer.").

Plaintiff alleges that Family Dollar failed to pay overtime wages to managerial employees. (Compl. ¶11). She claims that "Defendant's systems and practices relating to their non-payment of overtime . . . have existed for at least three years." (Compl. ¶20). Events material to this case include decisions affecting pay, duties and responsibilities of Family Dollar Managers across the country. The events and sources of proof are linked to general policies and payment procedures and records for more than 17,000 present and former managerial employees that are stored and maintained at Family Dollar's North Carolina headquarters. (Exhibit 1 ¶¶ 6, 8).

The personnel files, timesheets, payroll records, general human resources and pay policies and practices, and job performance programs and practices for the Company are extremely voluminous. Preparing these documents for transportation and storing them in a secure off-site facility to protect their confidential commercial and private information about Family Dollar's employees, would cause a great disruption to Family Dollar's business operations because of the expense, time, and personnel required to perform such tasks. (Exhibit 1 ¶ 10). Consequently, the balance of factors favors transferring this case to the Western District of North Carolina to substantially lower the costs of providing access to these voluminous documents during the course of litigation and for hearings and trial. Also, the avoidance of having to re-produce these documents in this jurisdiction, when it has produced documents in similar cases pending in the Western District of North Carolina, would be a "waste of time, energy, and money," that 1404(a) is meant to prevent.

As shown above, the relevant factors affecting the convenience of the parties and witnesses strongly support transferring this case to Charlotte, North Carolina. Specifically, the (1) cost of attendance and convenience of witnesses, (2) the availability of compulsory process, and (3) the ease of access to sources of proof all fall heavily in favor of transferring this case and also certainly outweigh Plaintiff's original choice of forum. 28 U.S.C. § 1404(a). In fact, because there is no indication that Montgomery, Alabama would be more or equally convenient for the parties and witnesses in Plaintiff's collective action than Charlotte, North Carolina, this case should be transferred to North Carolina – the natural epicenter for this action.

## IV.    CONCLUSION

Based on the foregoing, the Statutory factors tilt heavily in favor of transferring this case notwithstanding Plaintiff's original choice of venue. For all of the above reasons, Defendant Family Dollar Stores, Inc., respectfully requests that this Court enter an Order transferring this action to the Charlotte Division of the United States District Court for the Western District of North Carolina.

Respectfully submitted,

/s/ Terry Price_____
Terry Price
Alabama Bar No. ASB-4658-E58T
Email: tprice@fordharrison.com
Ford & Harrison LLP
2100 Third Avenue North, Suite 400
Birmingham, AL 35203
Telephone: (205) 244-5900
Facsimile: (205) 244-5901

John A. Ybarra (*pro hac vice* petition forthcoming)
LITTLER MENDELSON, P.C.
200 N. LaSalle Street, Suite 2900
Chicago, IL 60601
Telephone:  (312) 372-5520
Facsimile:  (312) 372-7880
E-mail:  jybarra@littler.com
Bar No.:  IL Bar No. 06196983

Jeremy W. Stewart (*pro hac vice* petition
forthcoming)
LITTLER MENDELSON, P.C.
200 N. LaSalle Street, Suite 2900
Chicago, IL 60601
Telephone:  (312) 372-5520
Facsimile:  (312) 372-7880
E-mail:  jwstewart@littler.com
Bar No.:  IL Bar No. 6293884

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on the 20th day of February, 2008

with the Clerk of the Court by using the CM/ECF system, which will send electronic copies to:

Bobbie S. Crook, 367 S. St. Andrews Street, Dothan, AL 36301, BCrook100@aol.com.


/s/ Terry Price
Terry Price

# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

**Rosie Magwood, on behalf of herself
and others similarly situated,**

        **Plaintiff,**

vs.

**FAMILY DOLLAR STORES, INC.,**

        **Defendant.**

No. 1:08-cv-76-WHA

Judge W. Harold Albritton, III

---

## DECLARATION OF BARRY SULLIVAN

I, BARRY SULLIVAN, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on personal knowledge:

1.    I am currently employed by Family Dollar Operations, Inc., a wholly owned subsidiary of Family Dollar, Inc. ("Family Dollar" or "the Company"). In September 2002, I began working for Family Dollar as Vice President of Store Operations. From May 24, 2005 through October 15, 2007, I worked as Senior Vice President of Store Operations. I currently hold the position of Executive Vice President.

2.    As Executive Vice President, I am familiar with almost every aspect of Family Dollar's nationwide store operations. In my position, I help to plan and direct the general activities of all Family Dollar store operations to meet or exceed our Company's goals related to sales, profitability, operating costs, and store development. I am familiar with the Company's procedures related to human resources and the processing of payroll. My office is located at Family Dollar's corporate headquarters, and I frequently travel to review, and obtain information

about, our store operations around the country.

3.     Family Dollar is a discount retail store chain specializing in low cost, basic merchandise for family and home needs.  Family Dollar operates approximately 6,400 stores in 44 states and the District of Columbia throughout the United States.  Plaintiff's employment is with Family Dollar Stores of Alabama, Inc., which is wholly owned by Family Dollar Stores, Inc., through other wholly owned corporate entities.

4.     Family Dollar is headquartered in Matthews, North Carolina, which is located in Mecklenburg County and within the Charlotte metropolitan area.

5.     As of January 3, 2008, Family Dollar has approximately 145 active retail stores in Alabama, and 357 active retail stores in North Carolina.

6.     Based upon the size of the Company's store operations, the number of potential present and former Family Dollar Store Managers nationwide from January 3, 2005 to the present may exceed 17,000 persons.

7.     Family Dollar's general human resources and pay policies and practices are developed by management and executive-level employees who work at the Company's headquarters.  The policies and practices are general tools to help Store Managers make their stores more profitable.

8.     Timesheets and payroll records are processed and kept at Family Dollar's headquarters.  Although some of this information is computerized, some of it exists only in hard copy form and is stored at Family Dollar's Charlotte-area headquarters.  Additionally, all employee personnel files are kept, in hard copy form only, at the Charlotte-area headquarters.

9.     Employee paychecks are also prepared at, and distributed from, the Company's Charlotte-area headquarters.

10.    If physically produced, the corporate documents and records, such as timesheets, payroll records, general human resources and pay policies and practices, for all of Family Dollar's Store Managers nationwide would be extremely voluminous and would require a major and expensive undertaking to organize, copy, store, secure, and transport outside of the Charlotte area. Physically producing, transporting, storing, and securing such documents outside of the Charlotte area would also disrupt Family Dollar's business operations because of the expense, time, and personnel required to perform such tasks.

11.    Witnesses who will likely be called to testify for the Company include Family Dollar management and executive-level employees who: (a) develop and prepare Family Dollar's pay policies and practices; (b) calculate or approve rates of pay for non-exempt employees; (c) process timesheets, paychecks, and payroll; and (d) maintain payroll records. These witnesses generally work at the Company's headquarters.

12.    Such likely witnesses include the following persons, all of whom work at the Company's headquarters and/or live in the Charlotte, North Carolina metropolitan area:

| NAME | TITLE | SUBJECT MATTER |
|---|---|---|
| Barry Sullivan | Executive Vice President | General store operations policies, procedures, directives, and initiatives |
| Mark Chidester | Vice President Human Resources, Store Operations | Company personnel policies and procedures |
| Dennis Merriam | Vice President, Human Resources | Company personnel policies and procedures, prior investigations by the U.S. Department of Labor |

3

| Mike Zuege | Vice President, Asset Protection | General Store Manager responsibilities related to loss prevention |
| Colin McGinnis | Vice President, Store Process Improvement | Store process and efficiency programs |
| Charlie Gibson | Executive Vice President, Supply Chain Management | General Store operations regarding product delivery and stocking |
| Allen Fields | Vice President, Division 1 Store Operations | General store operations policies and their relation to human resources issues |
| Stephen Phillips | Vice President, Division 2 Store Operations | General store operations policies and their relation to human resources issues |
| Earl Bonnecaze | Vice President, Division 3 Store Operations | General store operations policies and their relation to human resources issues. |
| Mike Vickers | Vice President, Division 4 Store Operations | General store operations policies and their relation to human resources issues. |
| Dennis Heskett | Vice President, Division 5 Store Operations | General store operations policies and their relation to human resources issues. |
| David Smith | Divisional Vice President, Risk Management | General store operations policies, including shrinkage and loss |
| Fred Wine[1] | Former Director, Employee Relations | Communication with store-level employees regarding compensation issues. |
| Bill McCarthy | Director, Planning & Financial Analysis | General store payroll budget allocation process |
| Vann Mills[2] | Former Manager, Employee Relations | Communications with store-level employees regarding compensation issues and processing store-level employee complaints. |

---

[1] Family Dollar no longer employs Mr. Wine, but he resides in the Charlotte area.
[2] Family Dollar no longer employs Mr. Mills, but he resides in the Charlotte area.

| Sherry Walden | Director, Payroll | Payroll and timesheet processing |
|---|---|---|
| Leona Spiesman | Director of Back Office Applications | HR payroll and HR data processing |
| Alex Earle | Human Relations Manager | Communications with store-level employees regarding compensation issues and processing store-level employee complaints. |
| Kim Newton | Manager, Payroll | Payroll processing, tracking, correction and check distribution |
| Mary Lauzon[3] | Former Manager, Employee Relations | Communication with store-level employees regarding compensation issues. |
| Robyn Bell | Associate Relations Manager | Communication with store-level employees regarding compensation issues. |
| Micheleann Ireson | Division 1 Director of Human Resources | General store staffing and personnel issues |
| Thomas Alcala | Division 2 Director of Human Resources | General store staffing and personnel issues |
| Barbara Knight | Former Division 4 Director of Human Resources | General store staffing and personnel issues |
| Julie Giblin | Division 4 Director of Human Resources | General store staffing and personnel issues |
| Kathy Fleming | Division 5 Director of Human Resources | General store staffing and personnel issues |
| Jill Fisher | HR Records Supervisor | HR related record keeping procedures |

---

[3] Family Dollar no longer employs Ms. Lauzon, but she resides in the Charlotte, NC area.

| Melissa Minger | Personnel Data Supervisor | Personnel records |
|---|---|---|
| Del Bristol | Divisional Vice President, HR Operations and Systems | General store human resources policies and their relation to human resources issue |
| Robert George | Executive Vice President, Chief Merchandising Officer | General store operations policies, procedures, directives, and initiatives, including store schematics and merchandising |
| John Scanlon | Senior Vice President, Hardlines | General store operations policies, procedures, directives, and initiatives, including store schematics and merchandising |
| Kristina Winiger | Manager, Succession & Retention | Communication with store-level employees regarding compensation issues |

13.    These likely witnesses who reside in the Charlotte area will be required to travel hundreds of miles and approximately 6 to 7 hours by automobile to attend trial if held in Montgomery, Alabama.

14.    Attendance at hearings and a lengthy trial in Montgomery will require these key witnesses to be away from their work and homes, which would substantially disrupt Family Dollar's business operations and the personal schedules of the witnesses.  Moreover, because these likely witnesses hold key responsibilities for the operation of the Company, scheduling time away from work would be difficult because their responsibilities would have to be delegated to others, or simply not performed at all.

15.    Key witnesses expected to testify in this case would also include store level employees from potentially 6,400 stores in 44 different states and the District of Columbia. These store level employees would be able to provide the court with fact-specific, individualized information regarding particular Store Managers' day-to-day activities.

16.    Of course, if store-level employees must leave their stores to testify at trial in

6

Montgomery, the business operations of their respective stores would be disrupted because of the costs involved in accommodating the employees' absences from their stores. Although this is a cost that Family Dollar would bear regardless of the venue for trial, holding trial in the Charlotte area would reduce those travel costs for Family Dollar for employees who do not reside in the Montgomery area. This is because Family Dollar has negotiated discount lodging rates at Charlotte area hotels, there are numerous direct flights to many destinations from Charlotte's international airport, and because Family Dollar would not need to pay for the use of rental cars for many of its witnesses who could be transported by Family Dollar's personnel already working at the Company's headquarters.

17.    In addition to current Family Dollar employees, there are several potentially important witnesses who reside in the Charlotte area who are no longer employees of Family Dollar. These employees are Fred Wine, former employee relations director, and Vann Mills and Mary Lauzon, both of whom are former managers of employee relations. Each of these witnesses may have information related to communications with store-level employees regarding compensation issues and the processing of store-level employee complaints.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Barry Sullivan

Dated: _____2/13/08_____

# EXHIBIT 2



**Notes:**

Only text visible within note field will print.

**Start:**  **Charlotte, NC US**

**End:**  **Montgomery, AL US**

| Directions | Distance |
|---|---|
| **Total Est. Time:** 6 hours, 20 minutes     **Total Est. Distance:** 404.06 miles | |
| **1:** Start out going SOUTHWEST on S TRYON ST toward W 4TH ST. | 0.4 miles |
| **2:** Turn RIGHT onto W HILL ST. | <0.1 miles |
| **3:** Merge onto I-277 S / US-74 W. | 0.9 miles |
| **4:** Merge onto FREEDOM DR via EXIT 1A toward US-29 / NC-27. | 2.4 miles |
| **5:** Merge onto I-85 S via the ramp on the LEFT toward GASTONIA (Passing through SOUTH CAROLINA- then crossing into GEORGIA). | 243.8 miles |
| **6:** Keep RIGHT to take I-85 S via EXIT 242 toward ATL AIRPORT / MONTGOMERY (Crossing into ALABAMA). | 155.6 miles |
| **7:** Take the UNION ST exit- EXIT 1. | 0.1 miles |
| **8:** Turn SLIGHT LEFT to take the ramp toward PERRY ST / DOWNTOWN. | <0.1 miles |
| **9:** Stay STRAIGHT to go onto E SOUTH ST. | 0.1 miles |
| **10:** Turn LEFT onto S DECATUR ST. | 0.1 miles |
| **11:** Turn LEFT onto WINNIE ST. | <0.1 miles |
| **12:** Turn LEFT onto S UNION ST. | <0.1 miles |
| **13:** End at **Montgomery, AL US** | |
| **Total Est. Time:** 6 hours, 20 minutes     **Total Est. Distance:** 404.06 miles | |

All rights reserved. Use Subject to License/Copyright
These directions are informational only. No representation is made or warranty given as to their content, road conditions or route usability or expeditiousness. User assumes all risk of use. MapQuest and its suppliers assume no responsibility for any loss or delay resulting from such use.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

Dennis S. Rowe, Sr., on Behalf of Himself
and All Others Similarly Situated,

               Plaintiff,

vs.

               Cause No. IP03-CV-1737-LJM-WTL

Family Dollar, Inc.,

               Defendant.

## DEFENDANT'S MEMORANDUM
## IN SUPPORT OF ITS 1404(a) MOTION TO TRANSFER

     Defendant Family Dollar Stores, Inc.[1] ("Family Dollar" or "the Company") submits this memorandum in support of its Motion to Transfer pursuant to 28 U.S.C. §1404(a).

### I. INTRODUCTION

     Family Dollar is a discount retail store chain specializing in low cost, basic merchandise for family and home needs. (Clifford Aff. ¶2, attached as Exhibit A). Plaintiff Dennis S. Rowe, Sr., who resides in Indianapolis, Indiana, is a former Family Dollar Store Manager. In his Complaint, Rowe alleges that Family Dollar willfully failed to pay overtime to its salaried Store Managers in violation of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. §201, *et seq.* (Complaint ¶¶11, 13, 27; Answer ¶11, 13, 27).

     Plaintiff purports to bring his case as a "class action pursuant to 29 U.S.C. §216(b)" (Complaint ¶¶7-17, 24-28). However, a claim brought under the FLSA by a plaintiff on behalf of himself and similarly situated employees is properly referred to as a "collective action" and it

---

[1] Rowe was never employed by "Family Dollar, Inc.", the entity named in the caption. His employer was Family Dollar Stores of Indiana LP, which is wholly owned by Family Dollar Stores, Inc., through other wholly owned corporate entities. (Clifford Aff. ¶6). Accordingly, Family Dollar Stores, Inc. has appeared and answered as the Defendant in this action.

differs significantly from a Rule 23 class action. In an FLSA collective action, similarly situated employees must *opt in* to the suit by filing written consents with the district court; whereas in a Rule 23 class action, class members must *opt out* of the suit. Vanskike v. Peters, 974 F.2d 806, 812-813 (7th Cir., 1992). Typically, in an FLSA collective action, court approved notice is sent to such employees informing them of the opportunity to opt in to the case. *See,* Hoffmann-La Roche v. Sperling, 493 U.S. 165 (1989). Those who opt in are individually before the court as parties plaintiff. Anderson v. Montgomery Ward & Co., 852 F.2d 1008, 1016 (7th Cir. 1988).

Family Dollar now moves the Court to transfer this action to the United States District Court for the Western District of North Carolina, Charlotte Division, where it is headquartered.[2] As shown below, transfer would materially advance the convenience of witnesses and parties and the interests of justice.

## II. ARGUMENT

Under 28 U.S.C. §1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for the "convenience of parties and witnesses, in the interest of justice." By enacting this provision, Congress intended to "prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against inconvenience and expense." Somers v. Flash Technology Corporation of America, 2000 WL 1280314 at *1 (S.D. Ind., 2000). The decision to transfer a case is within the sound discretion of the district court judge based on a "case-by-case consideration of convenience and fairness" Id. Motions to transfer under Section 1404(a) should be granted when the movant demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of

---

[2] Family Dollar's headquarters is in Matthews, North Carolina, which is in Mecklenburg County and a part of the Charlotte metropolitan area.

CHICAGO/#1174827.1 12/18/03

the parties and witnesses and promote the interests of justice. Coffey v. Van Doren Iron Works,
796 F.2d 217, 219-220 (7th Cir. 1986).

Here, each of the three statutory requisites for transfer to the Western District of North
Carolina are met. With regard to the first element, Plaintiff alleges and Family Dollar admits
that venue is proper in the Southern District of Indiana. (Complaint ¶6; Answer ¶6; Clifford Aff.
¶7). The remaining elements are discussed below.

**A. This Action Could Have Been Brought in the Western District of North Carolina**

Under Section 1404(a), the transferee court must be one in which the case originally
"might have been brought." 28 U.S.C.§1404(a). Because the FLSA provides the subject matter
jurisdiction in this case, it may be brought in a Federal Court of competent jurisdiction, which,
for a corporation, is "any judicial district in which it is subject to personal jurisdiction at the time
the action is commenced." 28 U.S.C. §1391(c). Because Family Dollar is headquartered within
the Western District of North Carolina (Clifford Aff. ¶7), it "resides" there for personal
jurisdiction purposes; and the second statutory element required for transfer of venue is thus met.

**B. Transferring This Action to the Western District of North Carolina Will Serve the
Convenience of the Parties and Promote the Interests of Justice.**

When evaluating the convenience and fairness of a transfer under Section 1404(a), courts
consider both the private interests of the parties and the public interests of the court. Private
interests include: (1) plaintiff's initial choice of forum; (2) the sites of material events and
relative ease of access to sources of proof; (3) the convenience of witnesses and of the parties in
litigating in the respective forums. Somers v. Flash Technology Corporation of America, 2000
WL 1280314 at *2-3 (S.D. Ind., 2000); Volkswagen Aktiengesellschaft v. Dee Engineering, Inc.,
2003 WL 1089515 at *2-3 (S.D. Ind., 2003); Allied Van Lines, Inc. v. Aaron Transfer and
Storage, Inc., 200 F. Supp.2d 941, 946 (N.D. Ill. 2002). Public interests relate to the efficient

- 3 -

administration of the court system, including transfer to a District where the litigants are more likely to receive a speedy trial. Coffey v. Van Doren Iron Works, 796 F.2d 217, 220-221 (7th Cir. 1986).

As shown below, both private and public interest factors favor transfer of this action to the Western District of North Carolina.

1. **Private Interest Factors Favor Transfer of This Action**

   (a)    **Plaintiff's initial choice of forum should be given no weight**

Because Plaintiff alleges what is properly a collective action, his choice of forum is not entitled to deference. Georgouses v. Natec Resources, Inc., 963 F.Supp 728, 730 (N.D. Ill. 1997) (Illinois plaintiff's choice of forum was irrelevant where he purported to represent 5,670 individuals, 1,900 of whom resided in Illinois); Genden v. Merrill Lynch Pierce, Fenner & Smith, 621 F.Supp. 780, 782 (N.D. Ill. 1985) (location of the main representative plaintiff is not relevant to a Section 1404(a) determination). This is because in a collective action all plaintiffs are party plaintiffs who are likely located throughout the country and "might be inconvenienced by the selection." Eugene v. McDonald's Corp., 1996 WL 41444 at *2 (N.D. Ill. 1996) *Accord*, Dortch v. Financing Alternative, Inc., 2002 WL 598518 at *2 (N.D. Ill. 2002) ("Where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened").[3]

Here, Plaintiff has alleged a nation-wide collective action covering Family Dollar's approximately 5,117 stores in 43 states (Clifford Aff. ¶3). As a result, there may be hundreds or thousands of opt-in plaintiffs. Plaintiff's choice of forum thus should not be given any weight.

---

[3] This court's 1404(a) decisions frequently cite and rely upon case law from the Northern District of Illinois. *E.g.*, Somers v. Flash Technology Corp. of America, 2000 WL 1280314 at *2-3 (S.D. Ind., 2000); Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 WL 1089515 at *2-3 (S.D. Ind., 2003). Family Dollar here does the same.

- 4 -

(b)     **The location of material events and sources of proof at issue favor transfer of this action to the Western District of North Carolina.**

In his Complaint, Rowe alleges that Family Dollar's Store Managers should have been paid overtime, presumably because their job duties do not fall within the FLSA's overtime exemption. (Complaint ¶¶7-8, 13a). Events material to this case thus include decisions affecting the pay and duties and responsibilities of Family Dollar Store Managers. Those events and sources of proof relating to them are focused at Family Dollar's headquarters.

The Company's human resources and pay policies and practices, including those for Store Managers, are developed by management and executive-level employees who work at headquarters. Programs and policies relating to Store Managers' performance of their job duties, such as plans designed to help Managers make their stores more profitable, are developed there. Of great significance, since this case involves pay and overtime issues, is the fact that timesheets and payroll records are processed and kept there. Store Managers' paychecks are prepared at headquarters and distributed from there. (Clifford Aff. ¶¶8-11). Courts have found transfer to the District where the corporate entity is headquartered appropriate where, as in this case, the majority of documentary evidence is located there. *See*, Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 WL 1089515 at *2-3 (S.D. Ind., 2003); Georgouses v. Natec Resources, Inc., 963 F. Supp. 728 (N.D. Ill. 1997); Young v. First Kentucky Bank Corp., 1994 WL 710775 (N.D. Ill. 1994).

Conversely, given Family Dollar's approximately 5,117 stores in 43 states, potential plaintiffs and events relating to them are spread across the country. In such circumstances, courts have concluded that the site of material events is a company's headquarters. Dortch v. Financing Alternatives, 2002 WL 598518 at *4 (N.D. Ill. 2002) ("due to the fact that this is an

- 5 -

alleged national class action, the logical epicenter of the material events in this case is [the defendant's] offices . . . this factor weighs in favor of transfer").

Since Family Dollar's headquarters is the epicenter of its national operations and the vast majority – if not virtually all – of the documentary evidence is located in North Carolina, this factor heavily weighs in favor of transfer.

(c)    **It is more convenient for witnesses and the parties if this case proceeds in North Carolina.**

Courts place great weight on the convenience of the venue for witnesses who will testify at trial. Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 WL 1089515 at *2-3 (S.D. Ind., 2003); Somers v. Flash Technology Corp. of America, 2000 WL 1280314 at *3 (S.D. Ind., 2000) ("This analysis is not merely a numbers game: what is significant is the substance and materiality of potential witnesses' testimony."). Here, it will be considerably more convenient for witnesses and the parties if the case were transferred to North Carolina.

Witnesses who may be expected to testify for the Company include Family Dollar executives who: a) determine the responsibilities and duties of retail Store Managers; b) determine rates of pay for Store Managers; c) process timesheets and payroll; and d) maintain payroll records. All of these witnesses are based at the Company's headquarters and reside in the Charlotte area (Clifford Aff. ¶¶12-13); accordingly, it would be significantly more convenient for these witnesses if this case were heard in North Carolina. *See,* Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 WL 1089515 at *4 (S.D. Ind., 2003) (convenience of witness factor weighed in favor of transfer to defendant's headquarters because its witnesses were more likely to provide testimony on contested issues in the case). Also significantly arguing in favor of transfer is the disruption to the Company's operations that would result if these management and executive-level employees were called to Indiana for a

- 6 -

lengthy trial. Such operational interruptions weigh in favor of transferring the case to North Carolina. <u>Rohde v. Central Railroad of Indiana</u>, 951 F. Supp. 746, 748 (N.D. Ill. 1997).

On the other hand, potential plaintiff witnesses are Store Managers from any of Family Dollar's 5,117 retail stores across the United States who opt in to the case. That said, there simply cannot be *one* particular forum that would be convenient for *all* plaintiffs; and there is no reason to think that potential plaintiff witnesses from around the country would find Indianapolis most convenient. In fact, North Carolina has nearly twice as many Family Dollar stores as Indiana. (Clifford Aff. ¶¶4-5). *See*, <u>Somers v. Flash Technology Corp. of America</u>, 2000 WL 1280314 at *3 (S.D. Ind., 2000) (equities favored transfer because virtually all of Defendant's witnesses would be convenienced and plaintiff made virtually no countervailing argument in favor of his chosen forum, Indiana).

Since it would be significantly more convenient for nearly all of Family Dollar's witnesses if venue is in North Carolina and absolutely nothing indicates that Indiana would be more convenient for plaintiff witnesses than North Carolina, this case should be transferred to North Carolina. <u>Nelson v. AIM Advisors, Inc.</u>, 2002 WL 442189 at *4-5 (S.D. Ill. 2002) (transfer granted where more convenient for the majority of the witnesses, because it was more convenient for individual plaintiffs and their attorney to travel to the transferee District, than for a number of witnesses to travel for each individual plaintiff's case).

## 2. The Interests of Justice Favor Transfer to North Carolina

The "interests of justice" analysis involves an evaluation of factors that relate to the efficient administration of the court system. For example, "the interest of justice may be served

- 7 -

by a transfer to a district where the litigants are more likely to receive a speedy trial."[4] Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986).

According to statistics published by the Administrative Office of the United States Courts, this case is likely to proceed more expeditiously in the Western District of North Carolina. In 2002, civil cases in the Southern District of Indiana took an average of 10.5 months from filing to disposition, while in civil cases in the Western District of North Carolina, the average time between filing and disposition was 9.1 months. Also in 2002, there were 3,352 civil filings and 3,039 pending civil cases in the Southern District of Indiana, compared with 1,416 filings and 1,368 pending civil cases in the Western District of North Carolina. Not surprisingly, in 2002, judges in the Southern District of Indiana had a heavier caseload as well – 608 pending cases per judge – compared with 456 pending cases per judge in the Western District of North Carolina. Federal Court Management Statistics, http://www.uscourts.gov (copies of relevant statistics are attached as Exhibit B).

Undeniably, these statistics demonstrate that the case is likely to be more quickly resolved in North Carolina than in Indiana. This factor too weighs in favor of transfer.

### III. CONCLUSION

For all of these reasons, Defendant Family Dollar Stores, Inc. respectfully requests that this Court enter an Order transferring this action to the United States District Court for the Western District of North Carolina.

---

[4] Other factors considered under this analysis (but not relevant here) include: 1) whether jurors in a particular district have a financial interest in the case, and 2) in which district could a jury best apply community standards. Id.

Respectfully submitted,


/s/Elizabeth G. Russell
Elizabeth G. Russell, Attorney No. 13979-49
erussell@kdlegal.com
Amy J. Adolay, Attorney No. 23147-49
aadolay@kdlegal.com
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204-2079
Telephone: (317) 636-4341
Facsimile: (317) 636-1507


Michael G. Cleveland
mcleveland@vedderprice.com
Kathryn Colvin
kcolvin@vedderprice.com
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
Telephone: (312) 609-7500
Facsimile: (312) 609-5005


Attorneys for Defendant
Family Dollar Stores, Inc.

- 9 -

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CHERYL M. ANDERSON, on behalf      )
of herself and all others similarly      )
situated,                                            )
                                                         )
                    Plaintiff,                      )
                                                         )
vs.                                                     )      Case No. CIV-04-0210-F
                                                         )
FAMILY DOLLAR, INC.,                    )
                                                         )
                    Defendant.                    )

### O R D E R

Before the court is Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed March 22, 2004 (docket entry no. 7), wherein defendant seeks to transfer the above-entitled case to the Western District of North Carolina. Plaintiff has responded to the motion and defendant has thereto replied. Upon due consideration of the parties' submissions, the court makes its determination.

Defendant contends that this action should be transferred to the Western District of North Carolina because (1) the action is one which could originally have been brought in that district; (2) plaintiff's choice of forum should not be given any deference in that she has alleged an opt-in class action under FLSA[1] involving defendant's approximately 5, 117 stores in 43 states and her own employment with defendant involves two states, Oklahoma and Virginia; (3) witnesses expected to testify on behalf of defendant include management and executive-level employees who are based at defendant's headquarters and reside in North Carolina; (4) potential witnesses for plaintiff are store managers and assistant managers (from defendant's

---

[1]Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

stores in 43 states) who may opt in; (5) the material events and sources of proof in regard to this FLSA action are centered at defendant's headquarters in North Carolina; (6) travel by witnesses would be less costly if case tried in North Carolina; and (7) a similar opt-in class action is currently pending in the Western District of North Carolina. Plaintiff does not dispute that this action is one which could have been brought in the Western District of North Carolina. However, plaintiff counters that (1) plaintiff's choice of forum should be given deference, regardless of the fact she has brought an opt-in action; (2) defendant has failed to state the specific substance of the executives' testimony and the relevancy of the testimony; (3) defendant's witnesses are employees of the company and it is the inconvenience of non-party witnesses that is an important factor in venue transfer; (4) plaintiff and some of her witnesses live in Oklahoma and it would be more convenient and less costly for her to try the case in this district; (5) the location of trial will not affect the cost of document production; and (6) the docket in the Western District of North Carolina is substantially more congested than in this district.

Venue can be transferred "for the convenience of the parties and witnesses in the interest of justice." 28 U.S.C. §1404(a). The moving party bears the burden of establishing that the action should be transferred because the existing forum is inconvenient. Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567 (10th Cir. 1978). The decision to transfer is discretionary and must be made in accordance with individualized, case-by-case consideration of convenience and fairness. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). Factors to be considered are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise

from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine the questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* citing <u>Texas Gulf Sulphur Co. v. Ritter</u>, 371 F.2d 145, 147 (10th Cir. 1967).

Typically, a plaintiff is given wide latitude in choosing a particular forum for commencing and prosecuting an action. *See*, <u>Chrysler Credit Corp.</u> at 1515; <u>Texas Gulf Sulphur Co.</u>, 371 F.2d at 147; <u>Headrick v. Atchison, T.& S.F.Ry.</u>, 182 F.2d 305, 310 (10th Cir. 1950). However, significantly less deference is given to a plaintiff's choice of forum when the plaintiff sues derivatively or as a class representative or when the cause of action did not conclusively arise within the forum. *See*, <u>Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein, Roe & Farnham</u>, 681 F. Supp. 479, 483-484 (N.D. Ill. 1987)(citing <u>Koster v. Lumbermens Mutual Casualty</u>, 330 U.S. 518, 524 (1947)), *see also*, <u>Georgouses v. Natec Resources, Inc.</u>, 963 F. Supp. 728, 730 (N.D. Ill. 1997). Where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to plaintiff's choice of forum is considerably weakened. <u>Koster</u>, 330 U.S. at 524.

Of the other factors cited in the <u>Chrysler Credit</u> case, only those pertaining to witness and party convenience, access to other proof, cost of making necessary proof, congested dockets and other practical considerations are relevant here. Although plaintiff and one opt-in plaintiff live in Oklahoma and some of the witnesses will be from Oklahoma, other witnesses for Ms. Anderson will be from Virginia. Trial in North Carolina would be more convenient for these Virginia witnesses. Defendant is headquartered in North Carolina and the majority of its witnesses reside in the North Carolina. Defendant has adequately shown that the testimony of these witnesses will be necessary to its case. Although the witnesses are employees of

defendant and will voluntarily appear at trial, the court anticipates that the witnesses will be required to be be away from company business for an extended period of time to defend this class action. In addition, there are hundreds, if not thousands, of potential plaintiffs for this action. The court cannot say that this forum rather than North Carolina would be more convenient for these plaintiffs and their witnesses. There may be no one convenient forum for all of the potential plaintiffs and their witnesses. The court concludes that the witness and party convenience factors favor a transfer to North Carolina.

As to access to other evidence, the court is not convinced that this consideration should be given much weight. It appears that much of the evidence for this action will come from defendant's business records, the majority of which are located in North Carolina. However, in light of modern photocopying and other means to transfer information, the court is not convinced that this factor weighs in favor of transfer.

As to cost of necessary proof, the court concludes that this factor favors a transfer. It would be less costly for plaintiff's Virginia witnesses and defendant's witnesses if trial were conducted in North Carolina. It would also be less costly to defendant. And as this is a class action, the court cannot say that it would be less costly for all the potential plaintiffs to try the action in this district.

As to practical considerations, there is currently pending in the Western District of North Carolina a similar opt-in class action suit against defendant, Rowe v. Family Dollar, Inc., Case No. 04-CV-60. The case was originally brought in the Southern District of Indiana and recently transferred to the Western District of North Carolina. From the court's review of the docket sheet, the case is in its infancy. In situations such as in this case, where two actions involving the same parties and issues have been filed, transfer is favored. See, Ferens v. John Deere Co., 494 U.S. 516, 531 (1990). Although this case also includes assistant managers as well as managers, that fact appears to be irrelevant since the claims and issues would be the same and many

-4-

employees, like plaintiff, would have had experience in both positions. And even though plaintiff has cited authority that the Western District of North Carolina has twice as many weighted filings than this district, the court concludes that the fact the Western District of North Carolina has a similar FLSA opt-in class suit against defendant, which is headquartered in that district, weighs in favor of transfer of this case.

Accordingly, after weighing all the relevant factors, the court concludes that this case should be transferred to the Western District of North Carolina.

Accordingly, Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), filed March 22, 2004 (docket entry no. 7), is **GRANTED**. This action is transferred to the Western District of North Carolina.

Dated this 30th day of April, 2004.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0210p001.wpd

ENTERED ON JUDGMENT DOCKET ON 4-30-04

# EXHIBIT 5

BROWN, CASE-CLOSED

**U.S. District Court**
**Middle District of Tennessee (Columbia)**
**CIVIL DOCKET FOR CASE #: 1:03-cv-00082**

Medley, et al v. Family Dollar, et al
Assigned to: Senior Judge Thomas A. Higgins
Demand: $0
Cause: 29:203 Equal Pay Act

Date Filed: 08/06/2003
Date Terminated: 01/03/2005
Jury Demand: Both
Nature of Suit: 710 Labor: Fair
Standards
Jurisdiction: Federal Question

**Plaintiff**

**Cynthia Medley**
*individually and on behalf of others*
*similarly situated*

represented by **Jerry Gonzalez**
Jerry Gonzalez, P.C.
2441-Q Old Fort Parkway
Box 381
Murfreesboro, TN 37128
(615) 360-6060
Fax: (615) 360-3333
Email: jgonzalez@edge.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lynette M. Quezaire**

represented by **Jerry Gonzalez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Family Dollar Services, Inc.**

represented by **J. Davidson French**
Bass, Berry & Sims
AmSouth Center
315 Deaderick Street
Suite 2700
Nashville, TN 37238-3001
(615) 742-6200
Email: dfrench@bassberry.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Colvin**
Vedder, Price, Kaufman & Kammholz,
P.C.

222 N La Salle Street
Chicago, IL 60601-1003
(312) 609-7500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Cleveland**
Vedder, Price, Kaufman & Kammholz,
P.C.
222 N La Salle Street
Chicago, IL 60601-1003
(312) 609-7500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William N. Ozier**
Bass, Berry & Sims
AmSouth Center
315 Deaderick Street
Suite 2700
Nashville, TN 37238-3001
(615) 742-6200
Email: bozier@bassberry.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Family Dollar Stores of Tennessee,**
**Inc.**

represented by **J. Davidson French**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Colvin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael G. Cleveland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William N. Ozier**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jerry Johns**

represented by **J. Davidson French**
(See above for address)

LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**William N. Ozier**
(See above for address)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 08/06/2003 | 1 | COMPLAINT (Summons issued) Filing fee paid in the amount of: 150.00 Receipt # 93479 (ot) (Entered: 08/08/2003) |
| 08/06/2003 | 2 | NOTICE of Initial Case Management Conference: ICMC set for 1:30 p.m. on 10/3/03 before Judge Thomas A. Higgins. (ot) (Entered: 08/08/2003) |
| 08/14/2003 | 3 | RETURN OF SERVICE executed upon deft Family Dollar-TN on 8/13/03 by certified mail (no green card) (vh) (Entered: 08/15/2003) |
| 08/20/2003 | 4 | RETURN OF SERVICE executed upon deft Jerry Johns on 8/15/03 personal service (vh) (Entered: 08/21/2003) |
| 08/26/2003 | 5 | ATTORNEY APPEARANCE for defts by J. Davidson French (vh) (Entered: 08/27/2003) |
| 08/26/2003 | 6 | ATTORNEY APPEARANCE for defts by William N. Ozier (vh) (Entered: 08/27/2003) |
| 09/02/2003 | 7 | CIVIL NOTICE: Case Management Conference is reset for 1:30 p.m. on 10/2/03. (cc: all counsel) (vh) (Entered: 09/02/2003) |
| 10/01/2003 | 8 | ANSWER by defts to [1-1] (km) (Entered: 10/01/2003) |
| 10/02/2003 | 9 | CLERK'S RESUME: Case Management Conference held 10/2/03. Jury trial set for 5/17/04 in Columbia; Settlement by 5/12/04; PTC set for 4/12/04 in Nashville; Scheduling order to enter. C/R : John Tummel (vh) (Entered: 10/02/2003) |
| 10/02/2003 | 10 | ORDER by Judge Thomas A. Higgins: Jury trial is set for 9:00 a.m. on 5/17/04 in Columbia; pretrial conference is set for 1:30 p.m. on 4/12/04 in Nashville; joint proposed pretrial order ddl 4/12/04; Discovery deadline 1/9/04; Dispositive motion filing deadline 1/28/04. (cc: all counsel) EOD 10/3/03 (vh) (Entered: 10/03/2003) |
| 10/02/2003 | 11 | ORDER by Judge Thomas A. Higgins: Not less than 10 calendar days prior to the PTC pltf shall file a manuscript of proposed jury instructions and serve a copy on counsel for defts. Not less than 5 calendar days prior to the PTC defts shall file a ntc stating that the proposed jury instructions are acceptable or a ntc setting forth any objections and serve a copy on counsel for pltf. (cc: all counsel) EOD 10/3/03 (vh) (Entered: 10/03/2003) |
|  |  |  |

| | | |
|---|---|---|
| 12/18/2003 | 12 | MOTION by pltf Cynthia Medley to amend cmp to add a count under Title 7 of Civil Rights Act, dismiss Family Dollar Services, Inc and add Family Dollar Inc. (w/ attached proposed amd cmp) (mk) (Entered: 12/19/2003) |
| 12/18/2003 | 13 | MEMORANDUM by pltf Cynthia Medley in support of motion to amend cmp to add a count under Title 7 of Civil Rights Act, dismiss Family Dollar Services, Inc and add Family Dollar Inc. [12-1] (mk) (Entered: 12/19/2003) |
| 12/19/2003 | 14 | ORDER by Judge Thomas A. Higgins granting motion to amend cmp to add a count under Title 7 of Civil Rights Act, dismiss Family Dollar Services, Inc and add Family Dollar Inc. [12-1]. The first amended complaint shall be filed within 10 days of the entry of this order on the docket. (EOD 12/19/03) (cc: all counsel) (km) (Entered: 12/19/2003) |
| 12/23/2003 | 15 | FIRST AMENDED COMPLAINT [1-1] by pltf Cynthia Medley; jury demand (vh) (Entered: 12/23/2003) |
| 12/23/2003 | 16 | MOTION by pltf Cynthia Medley to approve notice to punitive members (vh) (Entered: 12/23/2003) |
| 12/23/2003 | 17 | BRIEF by pltf Cynthia Medley in support of motion to approve notice to punitive members [16-1] (w/attachments) (vh) (Entered: 12/23/2003) |
| 12/23/2003 | 18 | JOINT MOTION by parties to extend discovery deadlines (vh) (Entered: 12/23/2003) |
| 12/30/2003 | 19 | ORDER by Judge Thomas A. Higgins granting joint motion to extend discovery deadlines [18-1]; Discovery deadline is extended to 1/23/04; Dispositive motion filing deadline is extended to 2/13/04. (cc: all counsel) EOD 12/31/03 (vh) (Entered: 12/31/2003) |
| 01/13/2004 | 20 | ANSWER by defts to [15-1]; jury demand (vh) (Entered: 01/14/2004) |
| 01/13/2004 | 21 | RESPONSE by defts in opposition to motion to approve notice to punitive members [16-1] (w/attachments) (vh) (Entered: 01/14/2004) |
| 01/15/2004 | 22 | MOTION by pltf Cynthia Medley for leave to file reply to response to mtn to approve ntc (vh) (Entered: 01/15/2004) |
| 01/21/2004 | 23 | ORDER by Judge Thomas A. Higgins granting pltf's motion for leave to file reply to response to mtn to approve ntc [22-1]. The reply shall be filed within 10 days of the date of entry of this order on the docket. (cc: all counsel) EOD 1/21/04 (vh) (Entered: 01/21/2004) |
| 02/04/2004 | 24 | REPLY by pltf Cynthia Medley to response to motion to approve notice to punitive members [16-1] (w/attachments) (vh) (Entered: 02/05/2004) |
| 02/12/2004 | 25 | MOTION by defts Family Dollar for leave to file brief in support of motion for summary judgment in excess of 20 pages . (pl) (Entered: 02/12/2004) |
| 02/13/2004 | 26 | ORDER by Judge Thomas A. Higgins granting defts' motion for leave to file brief in support of motion for summary judgment in excess of 20 |

| | | |
|---|---|---|
| | | pages [25-1]. (cc: all counsel) EOD 2/13/04 (vh) (Entered: 02/13/2004) |
| 02/13/2004 | 27 | MOTION by defts for summary judgment (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 28 | MEMORANDUM by defts in support of motion for summary judgment [27-1] (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 29 | APPENDIX (1-9) filed by defts re [28-1] (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 30 | STATEMENT of undisputed facts by defts in support of [27-1] (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 31 | AFFIDAVIT of Marlena Uuro re [27-1] (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 32 | AFFIDAVIT of Jerry Lee Johns re [27-1] (w/attached exhibits 1-3) (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 33 | NOTICE by defts of filing deposition transcript of Cynthia Lynn Medley (gi) (Entered: 02/17/2004) |
| 02/13/2004 | 34 | DEPOSITION of Cynthia Lynn Medley taken on the following date(s): 1/8/04 (gi) (Entered: 02/17/2004) |
| 02/19/2004 | 35 | MOTION by pltf to continue trial and to extend discovery and dispositive mtn ddls (km) (Entered: 02/19/2004) |
| 02/19/2004 | 36 | SECOND MOTION by pltf to amend complaint (km) (Entered: 02/19/2004) |
| 02/19/2004 | 37 | BRIEF by pltf in support of motion to amend complaint [36-1] (w/attached copy of second amended complaint and attachments) (km) (Entered: 02/19/2004) |
| 02/23/2004 | 38 | RESPONSE by defts to motion to continue trial and related deadlines [35-1] (vh) (Entered: 02/24/2004) |
| 02/23/2004 | 39 | RESPONSE by defts to second motion to amend complaint [36-1] (w/attachments) (vh) (Entered: 02/24/2004) |
| 03/03/2004 | 40 | ORDER by Judge Thomas A. Higgins granting motion to continue trial [35-1] and extend discovery and dispositive mtn ddls [35-2]. Jury trial set for 5/14/04 is continued. The parties shall submit within 10 days of the date of entry of this order a proposed revised case management order. (cc: all counsel) EOD 3/4/04 (vh) (Entered: 03/04/2004) |
| 03/03/2004 | 41 | ORDER by Judge Thomas A. Higgins granting pltf's second motion to amend complaint [36-1]. The second amended complaint shall be filed within 10 days of the date of entry of this order on the docket. (cc: all counsel) EOD 3/4/04 (vh) (Entered: 03/04/2004) |
| 03/08/2004 | 42 | ORDER by Judge Thomas A. Higgins granting pltf's motion to approve notice to punitive members [16-1] as modified in this order. The notice shall be modified and sent to only female store managers who worked in the same stores as the lead pltf during the two year period preceding the date of the notice. The notice shall be modified to provide that the failure |

| | | |
|---|---|---|
| | | to return the opt-in forms within 30 days after notice is mailed will result in not being able to participate in the lawsuit. (cc: all counsel) EOD 3/8/04 (vh) (Entered: 03/08/2004) |
| 03/09/2004 | 43 | SECOND AMENDED COMPLAINT [15-1] by pltf Cynthia Medley; adding Lynette M. Quezaire; jury demand (vh) (Entered: 03/09/2004) |
| 03/19/2004 | | JOINT PROPOSED Case Management Order (vh) (Entered: 03/19/2004) |
| 03/22/2004 | 44 | JOINT CASE MANAGEMENT ORDER by Judge Thomas A. Higgins: Pltf's response to defts' motion for summary judgment [27-1] is due on 3/31/04. The deadline for filing a motion to certify this case is 7/31/04. The parties shall serve interrogatories and requests for production of documents by 4/30/04. (cc: all counsel) EOD 3/22/04 (vh) (Entered: 03/22/2004) |
| 03/23/2004 | 45 | MOTION by defts Family Dollar and Family Dollar-TN for attorneys Michael G. Cleveland and Kathryn Colvin to appear pro hac vice (PHV fees paid 4/16/04) (vh) Modified on 04/20/2004 (Entered: 03/24/2004) |
| 03/23/2004 | 46 | MOTION by defts Family Dollar and Family Dollar-TN to sever and transfer case to USDC/WDNC (vh) (Entered: 03/24/2004) |
| 03/23/2004 | 47 | MEMORANDUM by defts Family Dollar and Family Dollar-TN in support of motion to sever [46-1] and transfer case to USDC/WDNC [46-2] (w/att'd exhibits A-D) (vh) (Entered: 03/24/2004) |
| 03/24/2004 | 48 | LETTER from USDC Deputy Clerk to Michael Cleveland and Kathryn Colvin re pro hac vice fee (PHV fees paid 4/16/04) (vh) Modified on 04/20/2004 (Entered: 03/24/2004) |
| 03/26/2004 | 49 | NOTICE OF FILING by defts Family Dollar and Family Dollar-TN of copies of certificates of good standing for Michael G. Cleveland and Danielle Kathryn Colvin (w/attachments) (vh) (Entered: 03/26/2004) |
| 03/26/2004 | 50 | MOTION by defts Family Dollar and Family Dollar-TN to substitute original affidavit of Janet Kelley as exh. A to memorandum in support of mtn to sever and transfer (w/att'd original affidavit of Janet Kelley (vh) (Entered: 03/26/2004) |
| 03/26/2004 | 51 | NOTICE by defts of filing certificates of good standing for Michael G. Cleveland and Danielle Kathryn Colvin (gi) (Entered: 03/26/2004) |
| 03/26/2004 | 52 | CERTIFICATE of Good Standing from USDC, ND/IL for Michael G. Cleveland filed by defts (gi) (Entered: 03/26/2004) |
| 03/26/2004 | 53 | CERTIFICATE of Good Standing from USDC, ND/IL for Daniel Kathryn Colvin filed by defts (gi) (Entered: 03/26/2004) |
| 03/31/2004 | 54 | RESPONSE by pltfs to motion for summary judgment [27-1] (w/attachments) (km) (Entered: 04/01/2004) |
| 03/31/2004 | 55 | RESPONSE by pltfs to defts' stmt [30-1] (km) (Entered: 04/01/2004) |
| 04/01/2004 | 56 | ANSWER by defts Family Dollar, Family Dollar-TN and Jerry Johns to |

| | | |
|---|---|---|
| | | second amended complaint [43-1]; jury demand (km) (Entered: 04/01/2004) |
| 04/02/2004 | 57 | MOTION by defts for an order regarding pltf's communication with potential pltfs (w/attached exhibits A-C) (km) (Entered: 04/02/2004) |
| 04/06/2004 | 58 | MOTION by defts for permission to file reply brief in support of motion for summary judgment (km) (Entered: 04/06/2004) |
| 04/06/2004 | 59 | NOTICE by pltf Cynthia Medley of filing of depositions, affidavits and a videotape (w/attached copies of affidavits, depositions and a videotape) (km) (Entered: 04/06/2004) |
| 04/08/2004 | 60 | ORDER by Judge Thomas A. Higgins granting motion for permission to file reply brief in support of motion for summary judgment [58-1]. (EOD 4/8/04) (cc: all counsel) (km) (Entered: 04/08/2004) |
| 04/08/2004 | 61 | ORDER by Judge Thomas A. Higgins granting motion to substitute original affidavit of Janet Kelley as exh. A to memorandum in support of mtn to sever and transfer [50-1]. (EOD 4/8/04) (cc: all counsel) (km) (Entered: 04/08/2004) |
| 04/08/2004 | 62 | AFFIDAVIT of Janet G. Kelley, Esq. re [47-1] (km) (Entered: 04/08/2004) |
| 04/12/2004 | 63 | RESPONSE by pltfs to motion to sever [46-1] and transfer case to USDC/WDNC [46-2] w/attached exhibits. (pl) (Entered: 04/12/2004) |
| 04/14/2004 | 64 | MOTION by defts for permission to file reply brief in support of motion to sever and transfer (jb) (Entered: 04/15/2004) |
| 04/15/2004 | 65 | REPLY BRIEF by defts in support of defts' motion for summary judgment [27-1] (w/attached exhs. A & B) (jb) (Entered: 04/15/2004) |
| 04/15/2004 | 66 | ORDER by Judge Thomas A. Higgins granting motion for permission to file reply brief in support of motion to and transfer [64-1]. (EOD 4/16/04) (cc: all counsel) (km) (Entered: 04/16/2004) |
| 04/20/2004 | 67 | RESPONSE by pltfs to motion for an order regarding pltf's communication with potential pltfs [57-1] (km) (Entered: 04/20/2004) |
| 04/22/2004 | 68 | ORDER by Judge Thomas A. Higgins granting motion for attorneys Michael G. Cleveland and Kathryn Colvin to appear pro hac vice [45-1] by Family Dollar and Family Dollar-TN. EOD 4/23/04 (cc: all counsel) (gi) (Entered: 04/23/2004) |
| 04/23/2004 | 69 | REPLY by defts in support of their motion to sever [46-1] and transfer [46-2] (w/attached exh. 1) (jb) (Entered: 04/23/2004) |
| 04/26/2004 | 70 | AFFIDAVIT of Ronald H. Kent (Filed in support of motion to sever [46-1] and transfer [46-2] per Notice DE #72.) (km) Modified on 04/30/2004 (Entered: 04/26/2004) |
| 04/27/2004 | 71 | ORDER by Judge Thomas A. Higgins: Motion for an order regarding pltf's communication with potential pltfs [57-1] is denied because there is |

| | | |
|---|---|---|
| | | no sufficient showing to justify the prior restraint of speech requested. (EOD 4/27/04) (cc: all counsel) (km) (Entered: 04/27/2004) |
| 04/27/2004 | 72 | ORDER by Judge Thomas A. Higgins: The Court does not understand what this affidavit [70-1] is related to. One party or the other will have to advise the Court what this affidavit is intended to accomplish. (EOD 4/27/04) (cc: all counsel) (km) (Entered: 04/27/2004) |
| 04/27/2004 | 73 | ORDER by Judge Thomas A. Higgins: Deft's motion to sever and transfer [46-1], [46-2] is set for hearing on 5/12/04 at 1:30 in Nashville. (EOD 4/27/04) (cc: all counsel) (km) (Entered: 04/27/2004) |
| 04/30/2004 | 74 | NOTICE by defts Family Dollar, Family Dollar-TN, & Jerry Johns of filing of original affidavit of Ronald H. Kent in support of defts' motion to sever and transfer (Affidavit was filed on 4/26/04.) (jb) (Entered: 04/30/2004) |
| 05/04/2004 | 75 | NOTICE by pltfs of filing the original signatures on affidavits submitted in support of pltfs response to defts motion for summary judgment (w/attached affidavits) (km) (Entered: 05/04/2004) |
| 05/04/2004 | 76 | AFFIDAVIT of Cynthia Medley re [54-1] (km) (Entered: 05/04/2004) |
| 05/04/2004 | 77 | AFFIDAVIT of Lynette Quezaire re [54-1] (km) (Entered: 05/04/2004) |
| 05/04/2004 | 78 | NOTICE by defts of filing of supplemental authority in support of mtn to sever and transfer (w/attached exhibits 1-7) (gi) (Entered: 05/11/2004) |
| 05/07/2004 | 79 | MOTION by pltfs for leave to file surreply to defts' reply in support of their mtn to sever and transfer (gi) (Entered: 05/11/2004) |
| 05/10/2004 | 80 | ORDER by Judge Thomas A. Higgins granting motion for leave to file surreply [79-1]. EOD 5/11/04 (cc: all counsel) (gi) (Entered: 05/11/2004) |
| 05/11/2004 | 81 | NOTICE by pltfs of filing surreply w/copy of affidavit of Gregory O. Wiggins attached. (pl) (Entered: 05/11/2004) |
| 05/11/2004 | 82 | NOTICE by pltf of filing supplemental authority in support of motion to sever and transfer. (pl) (Entered: 05/11/2004) |
| 05/12/2004 | 83 | CLERK'S RESUME: Motions hearing held 5/12/04 ; Motion for summary judgment #27 withdrawn on the record w/o prejudice; Motion to Sever #46 (Count 5 of second amended complaint) granted for reason stated on the record. Pltfs claims under count 5 will be transferred to WD/NC (Rowe v. Family Dollar 3:04-0060). Order to enter forwarding D/E #43 & answer, D/E #56; C/R: Donna Heidel (km) (Entered: 05/13/2004) |
| 05/12/2004 | 84 | ORDER by Judge Thomas A. Higgins: Defts request to be permitted to withdraw, without prejudice to renew, their motion for summary judgment [27-1] is granted and is deemed withdrawn, without prejudice to being renewed, and moot. (EOD 5/13/04) (cc: all counsel) (km) (Entered: 05/13/2004) |
| 05/12/2004 | 85 | ORDER by Judge Thomas A. Higgins: For reasons stated on the record |

| | | |
|---|---|---|
| | | at the hearing on 5/12/04, which constitute the Court's findings of fact and conclusions of law, the motion to sever [46-1] and transfer [46-2] is granted. Accordingly, the pltfs' assertion of a nationwide Fair Labor Standards Act claim in Count V of the Second Amended Complaint is severed and transferred to the USDC/WDNC at Charlotte, NC. Clerk is directed to send a certified copy of the second amended complaint (Docket Entry No. 43) and the defts' answer (Docket Entry No. 56) to the Clerk of USDC WD/NC, along with a certified copy of this order. (EOD 5/14/04) (cc: all counsel) (km) (Entered: 05/14/2004) |
| 05/13/2004 | 86 | ORDER by Judge Thomas A. Higgins: Clerk is directed to file this fax message as part of the record in this action. (EOD 5/14/04) (cc: all counsel) (km) (Entered: 05/14/2004) |
| 05/13/2004 | 87 | LETTER (FAX) from Davidson French, counsel for defts with docket numbers 3:04-0060 and 3:04-0220; cases that have been transferred to the WD/NC (Charlotte Div.) filed pursuant to Order #86 (km) (Entered: 05/14/2004) |
| 05/14/2004 | | REMARK - Certified copy of the second amended complaint, defts' answer, Order #85 and docket sheet forwarded to USDC, WD/NC, Charlotte Div. this date (km) (Entered: 05/14/2004) |
| 07/26/2004 | | PROPOSED Joint Proposed Scheduling Order (km) (Entered: 07/26/2004) |
| 07/30/2004 | 88 | TRANSCRIPT filed of the hearing re: motion to sever and transfer on 5/12/04 before the Hon. Judge Thomas A. Higgins; CR: Donna S. Heidel (Transcript not signed.) (jb) (Entered: 08/02/2004) |
| 08/27/2004 | 89 | ORDER by Judge Thomas A. Higgins: Case Management Conference is set for 1:30 on 10/1/04. (EOD 8/30/04) (cc: all counsel) (km) (Entered: 08/30/2004) |
| 09/29/2004 | 90 | JOINT MOTION by parties to refer the case for judicial settlement conference (km) (Entered: 09/29/2004) |
| 10/01/2004 | 91 | CLERK'S RESUME: Case Management Conference held 10/1/04. Parties discussed settlement. Trial set for 6/6/05 at 9:00 in Columbia; settlement ddl is 6/2/05. PTC set for 5/23/05 at 1:30 in Nashville. Scheduling order to enter. C/R: Charlotte Sloan (gi) (Entered: 10/04/2004) |
| 10/01/2004 | 92 | ORDER by Judge Thomas A. Higgins granting motion to refer the case for judicial settlement conference [90-1]. This action is referred to Magistrate Judge Griffin for a settlement conference at the earliest opportunity. EOD 10/4/04 (cc: all counsel) (gi) (Entered: 10/04/2004) |
| 10/08/2004 | 93 | ORDER by Magistrate Judge Juliet E. Griffin: Settlement conference is set for 9:00 on 12/8/04. By 4:00 on 12/3/04 parties shall deliver under seal to the courtroom deputy settlement conference statements. Telephone conference set for 2:00 on 12/6/04. EOD 10/8/04 (cc: all counsel) (gi) (Entered: 10/08/2004) |
| | | |

| 12/09/2004 | 94 | ORDER by Magistrate Judge Juliet E. Griffin: settlement conference held 12/8/04 ; the parties reached a settlement & shall submit an agreed order of dismissal by 12/23/04; the Clerk is directed to return the file to Judge Higgins for consideration of the dismissal papers. (cc: all counsel) EOD 12/9/04 (hv) (Entered: 12/09/2004) |
|---|---|---|
| 01/03/2005 | 95 | ORDER by Judge Thomas A. Higgins: the Court has been advised by counsel that all matters have been compromised & settled; dismissing case with prejudice ; this order shall constitute judgment in this case. (cc: all counsel) EOD 1/4/05 (hv) (Entered: 01/04/2005) |
| 01/04/2005 |  | PROPOSED Order of dismissal (hv) (Entered: 01/05/2005) |
| 01/06/2005 | 96 | ORDER by Judge Thomas A. Higgins: the parties have compromised & settled the matter; dismissing case with prejudice ; costs are taxed to the defts. Entry of this order constitutes judgment in this action. (cc: all counsel) EOD 1/6/04 (hv) (Entered: 01/07/2005) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/14/2008 13:46:51 | | |
| **PACER Login:** | lm0071 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:03-cv-00082 |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARBARA LUCAS, and other persons similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-04-536-M |
| | ) | |
| FAMILY DOLLAR STORES OF OKLAHOMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant's Motion to Sever and Transfer, filed August 10, 2004.  On

September 9, 2004, plaintiff Barbara Lucas ("Lucas") filed her response, and on September 27,

2004, defendant filed its reply.

I.    Introduction

Defendant Family Dollar Stores of Oklahoma, Inc.[1] employed Lucas for approximately five

(5) years in its stores in Shawnee and Tecumseh, Oklahoma.  While employed with defendant, Lucas

periodically worked as an Assistant Store Manager and was eventually promoted to Store Manager.

Defendant terminated Lucas' employment in November, 2002.

On April 28, 2004, plaintiff filed the instant action against defendant alleging that defendant

failed to pay Lucas and others similarly situated overtime compensation in violation of the Fair

Labor Standards Act ("FLSA") and that defendant's Oklahoma district managers and supervisors

discriminated against Lucas and others similarly situated in violation of the Age Discrimination in

Employment Act ("ADEA").  Defendant now moves to sever plaintiffs' FLSA claim and to transfer

---

[1]Family Dollar Stores of Oklahoma, Inc. is wholly owned by Family Dollar Stores, Inc.
through other wholly owned corporate entities.  Family Dollar Stores, Inc. is headquartered in
Matthews, North Carolina.

that claim to the United States District Court for the Western District of North Carolina, where defendant is headquartered and where three other nationally-pled collective actions alleging the same FLSA claim are already pending.

II.    Discussion

A.    Severance of FLSA Claim

Federal Rule of Civil Procedure 21 provides, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21. A claim may be severed solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever claims for the purpose of permitting the transfer of those claims. *Apache Prods. Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650, 660 (S.D. Miss. 1994); *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y. 1986).

> [A] court considering a severance motion should weigh the following factors in making its determination:
>> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.
> Further, [t]he decision whether to grant a severance motion is committed to the sound discretion of the trial court.

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003) (internal quotations and citations omitted).

Having carefully reviewed plaintiffs' Complaint and the parties' submissions, and in light of this Court's finding that plaintiffs' FLSA claim should be transferred as set forth below, the Court

2

finds that severance of plaintiffs' FLSA claim is appropriate in this case. Specifically, the Court finds that plaintiffs' FLSA claim and ADEA claim do not arise out of the same transaction or occurrence, do not present common questions of law or fact, and require different witnesses and documentary proof. Plaintiffs' FLSA claim challenges defendant's classification of management employees as exempt from the FLSA's overtime pay requirements, whereas plaintiffs' ADEA claim challenges defendant's allegedly discriminatory practice of replacing employees over the age of 40 with younger employees. A review of these claims reveals no factual or legal overlap. Further, the Court finds that judicial economy would be facilitated by severing plaintiffs' FLSA claim and transferring it to the United States District Court for the Western District of North Carolina, where three substantially similar lawsuits are pending.

Accordingly, the Court finds that defendant's motion to sever should be granted.

B.    Transfer of FLSA Claim

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.[2]

28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Jacobs v. Lancaster*, 526 F. Supp. 767, 769 (W.D. Okla. 1981) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960)).

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing

---

[2]In her response, Lucas does not dispute that this action could have been brought in the United States District Court for the Western District of North Carolina. Rather, Lucas asserts the balance of conveniences and interests of justice favors retaining the FLSA claim in this Court.

3

that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). However, shifting the inconvenience from one party to another is not a permissible justification for transferring the case. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992). A district court has discretion to adjudicate motions to transfer based upon an "individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp.*, 928 F.2d at 1516 (internal quotations and citations omitted).

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.*[3]

1.    Lucas' choice of forum

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Chicago, Rock Island and Pacific R.R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 587 (10th Cir. 1956) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1957)). However, significantly less deference is given to a plaintiff's choice of forum when the plaintiff sues as a class representative. *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998);

---

[3]In the case at bar, the following factors are not relevant: (1) questions of the enforceability of a judgment if one is obtained; (2) difficulties that may arise from congested dockets; (3) the possibility of the existence of questions arising in the area of conflict of laws, and (4) the advantage of having a local court determine questions of local law. Whether the FLSA has been violated is a federal question, and both district courts are equally competent to hear and decide issues of federal law.

*Georgouses v. Natec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997). Accordingly, because Lucas is suing as a class representative, the Court finds that Lucas' choice of forum is entitled to less deference. Further, the Court finds that the fact that Lucas is suing only on behalf of Oklahoma Family Dollar Store Managers and Assistant Store Managers does not entitle Lucas' choice of forum to additional deference. While many of the potential plaintiffs may reside in this district, it is also highly likely that many of these potential plaintiffs live in the Eastern or Northern Districts of Oklahoma and that several of the potential plaintiffs have moved and reside in states other than Oklahoma.

      2.      Convenience of the parties and witnesses and access to sources of proof

Having carefully reviewed the parties' submissions, the Court finds the convenience of the parties and the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses, does not weigh heavily in favor of transferring plaintiffs' FLSA claim. Although it is clear that North Carolina would be a more convenient forum for defendant – defendant's headquarters are in North Carolina and all of defendant's relevant documents and witnesses are located in North Carolina – it is also clear that Oklahoma would be a more convenient forum for Lucas – she resides in Oklahoma; all of her witnesses are located either in Oklahoma or Texas, and many of her relevant documents are located in Oklahoma or Texas.

      3.      Interests of justice

Courts have concluded that "the presence of a related case in the transferee forum is a powerful reason to grant a change of venue." *Blanning v. Tisch*, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974) (internal citations omitted); *see also Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936 (E.D.

5

Va. 2001); *Gould*, 990 F. Supp. at 1360-61; *Rohde v. Central R.R. of Ind.*, 951 F. Supp. 746, 749

(N.D. Ill. 1997); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996);

*Martin v. South Carolina Bank*, 811 F. Supp. 679, 685-86 (M.D. Ga. 1992); *Martin-Trigona v.*

*Meister*, 668 F. Supp. 1 (D.D.C. 1987); *Berg v. First Am. Bankshares, Inc.*, 576 F. Supp. 1239, 1243

(S.D.N.Y. 1983); *Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192

(E.D. Pa. 1982).  Further, as the United States Supreme Court has stated: "[t]o permit a situation in

which two cases involving precisely the same issues are simultaneously pending in different District

Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."

*Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (internal quotations and citation omitted).

Additionally,

> [t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that:  (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results can be avoided.

*Blanning*, 378 F. Supp. at 1061 (internal quotations and citation omitted).

There are currently pending in the United States District Court for the Western District of

North Carolina three collective actions brought on behalf of Family Dollar Store Managers and

Assistant Store Managers nationwide.  In all three of these actions, the plaintiffs allege that Family

Dollar, Inc. failed to pay overtime compensation in violation of the FLSA, the same claim plaintiffs

make in the instant action.

Having carefully reviewed the parties' submissions, the Court finds the existence of the

pending related actions in North Carolina strongly, and conclusively, weighs in favor of transferring

plaintiffs' FLSA claim to the United States District Court for the Western District of North Carolina.

Even though the instant action is limited to Oklahoma Family Dollar Store Managers and Assistant

Store Managers, the Court finds that the instant action and the actions currently pending in North

Carolina involve the same legal and factual issues and most, if not all, the same witnesses and

documentary evidence. The Court further finds that a transfer of plaintiffs' FLSA claim would

promote uniformity of results, avoid duplicative court proceedings, and would be in the best interest

of efficiency and justice.

Accordingly, the Court finds that plaintiffs' FLSA claim should be transferred to the United

States District Court for the Western District of North Carolina.

III.    Conclusion

For the reasons set forth above, the Court GRANTS defendant's Motion to Sever and

Transfer [docket no. 25]. Accordingly, the Court, pursuant to Federal Rule of Civil Procedure 21,

SEVERS plaintiffs' FLSA claim (First Cause of Action in plaintiff's Complaint) and, pursuant to

28 U.S.C. § 1404(a), TRANSFERS plaintiffs' FLSA claim to the United States District Court for

the Western District of North Carolina. The Clerk is directed to send a certified copy of the

Complaint [docket no. 1] and defendant's Answer [docket no. 8] to the Clerk of the United States

District Court for the Western District of North Carolina, along with a certified copy of this Order.

**IT IS SO ORDERED this 9th day of March, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 7

FOCUS - 1 of 1 DOCUMENT

**DORA BROUSSARD, on behalf of herself and all others similarly situated VERSUS
FAMILY DOLLAR STORE, INC., et al**

**CIVIL ACTION NO. 05-0892**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
LOUISIANA, LAFAYETTE DIVISION**

*2006 U.S. Dist. LEXIS 6587*

**January 31, 2006, Decided**

**COUNSEL:** [*1] For Dora Broussard, on behalf of herself and all others similarly situated, Plaintiff: L Clayton Burgess, Brenda B Maturin, Law Office of L Clayton Burgess, Lafayette, LA.

For Family Dollar Stores Inc, Family Dollar Stores of Louisiana Inc, Defendants: Gregory Guidry, Onebane Law Firm, Lafayette, LA; John A Ybarra, Littler Mendleson, Chicago, IL; Yvette V Gatling, Littler Mendelson, Houston, TX.

**JUDGES:** REBECCA F. DOHERTY, UNITED STATES DISTRICT JUDGE. MAGISTRATE JUDGE HILL.

**OPINION BY:** REBECCA F. DOHERTY

**OPINION**

**RULING**

Before this Court is defendant's Motion to Transfer Venue [Doc. # 6], pursuant to *28 U.S.C. § 1404(a)*, wherein defendant seeks to transfer the above-entitled case to the Western District of North Carolina. Plaintiff opposes the motion. All briefing has now been completed and the motion has been taken under advisement.

Plaintiff Dora Broussard filed this suit against her former employer, Family Dollar Stores, Inc. Plaintiff, who resides in Lafayette, Louisiana, was employed by Family Dollar as a Store Manager in Lafayette. [1] In the Complaint, plaintiff alleges that Family Dollar willfully and intentionally failed to pay overtime for managerial [*2] employees who worked fifty (50) to ninety (90) hours a week, in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* [2] Plaintiff purports to bring this matter as a "collective action, as authorized by *29 U.S.C. § 216(b)*," on behalf of herself and

other similarly situated managerial employees of Family Dollar. [3] Family Dollar now moves the Court to transfer this action, pursuant to *28 U.S.C. § 1404(a)*, to the United States District Court for the Western District of North Carolina, Charlotte Division, where Family Dollar is headquartered and where four (4) opt-in FLSA cases making essentially the same claim have been transferred.

1 Plaintiff's Complaint, PP3, 11, 13.

2 Plaintiff's Complaint, PP4, 8, 15.

3 Plaintiff's Complaint, P5.

*28 U.S.C. § 1404(a)* provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil [*3] action to any other district or division where it might have been brought." Congress enacted this provision as a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft v. Reyno, 454 U.S. 235, 254, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1991)* (internal quotations omitted). The purpose of *28 U.S.C. § 1404(a)* is "to prevent the waste of time, energy and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)* (citing *Continental Grain Co., v. Barge F.B.L., 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)*) (internal quotations omitted). The decision to transfer is within the sound discretion of the district court, determined by an individualized, case-by-case consideration of convenience and fairness. *Stewart Org v. Ricoh Corporation, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)*.

Courts must perform a two-prong analysis before granting a motion to transfer venue. The first inquiry is whether the proposed transferring district is one in which

the action originally could have been brought. The second inquiry is whether the transfer of venue [*4] will serve the convenience of the parties and the interests of justice. In *In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004)*. In the Fifth Circuit, a determination of "'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." Id. Private concerns include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* Public factors include:

> (1) the administrative difficulties from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.*

Typically, great weight is given to plaintiff's choice of forum. *Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966)*. However, plaintiff's choice of forum, while a factor to be considered, [*5] is neither conclusive nor determinative. *In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003)*. Moreover, federal courts have long recognized that, "where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiffs' chosen forum is considerably weakened." *Koster v. Lumberman Mutual Casualty, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)*. Although the Fifth Circuit has not addressed the issue to this Court's knowledge, other courts have given significantly less deference to plaintiff's choice of forum when a plaintiff sues derivatively or is a class representative or when the causes of action did not conclusively arise within the forum. *See e.g. Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein, Roe & Farnham, 681 F. Supp 479, 482-483 (N.D. Ill. 1987)* (citing Koster);*Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997)*.

In the instant matter, defendant argues this action should be transferred to the Western District of North Carolina because: (1) the action could have originally been brought in that district; [*6] (2) plaintiff's choice of forum should be given no weight due to the fact that she has alleged a nationwide collective action under the FLSA involving defendant's 6,523 stores in 44 states and the District of Columbia; (3) witnesses expected to testify on defendant's behalf include management and executive-level employees who are based at defendant's headquarters and reside in North Carolina; (4) transportation and lodging of out-of-state employee witnesses would be more convenient in Charlotte, North Carolina than in Lafayette, Louisiana; (5) potential plaintiffs are more likely to come from North Carolina than from Louisiana due to the fact that Family Dollar operates 313 stores in North Carolina, as opposed to 214 stores in Louisiana; (6) several former managerial employees of Family Stores reside in North Carolina and would not be subject to compulsory process in Louisiana; (7) material events and sources of proof are centered at defendant's headquarters in North Carolina; (8) the Western District of North Carolina has a smaller and faster moving civil docket; and (9) prior FLSA collection actions against Family Dollar Stores making essentially the same claims have been transferred [*7] to the Western District of North Carolina and, therefore, that court is familiar with this litigation.

Plaintiff does not dispute that this action could have been brought in the Western District of North Carolina. Rather, plaintiff counters that: (1) certification as a collective action should be decided before transfer; (2) plaintiff's choice of forum should not be disturbed; (3) transferring this case would inconvenience plaintiffs, and "defendants are scattered throughout the country anyway;" [4] (presumably, plaintiff will have numerous witnesses who live in this district and, therefore, it is no more convenient to litigate this matter in North Carolina than in Louisiana); (5) defendant's argument regarding ease of access to documents should be disregarded because plaintiff believes that most of the documents are stored electronically; (6) the majority of the conduct at issue occurred across the country and not in North Carolina; and (7) a transfer of this matter to North Carolina will result in delay and prejudice because, to plaintiff's knowledge, the other collective actions' allegations have not been addressed by the North Carolina court.

4  Plaintiff's opposition brief, page 12.

[*8] This Court finds that in the instant matter, the witnesses who made the allegedly unlawful decisions regarding payroll are located in North Carolina; the records that reflect those decisions are in North Carolina as well. The issues involved in this case are not unique to Louisiana, but rather, are corporate-wide decisions. Most, if not all, of the relevant documentary evidence is likely located at Family Dollar's corporate headquarters

2006 U.S. Dist. LEXIS 6587, *

in North Carolina. It appears the vast majority of witnesses reside in North Carolina, and defendant has adequately shown that the testimony of these witnesses will be necessary to its case. A trial in North Carolina will be less destructive to the operations of defendant's business than requiring all of defendant's witnesses to attend trial in Louisiana. Finally, there are hundreds, if not thousands, of potential plaintiffs to this action. This Court cannot say that this forum, rather than North Carolina, would be more convenient for these plaintiffs and their witnesses. There may be no one convenient forum for *all* of the potential plaintiffs and their witnesses. All of these factors weigh heavily in this Court's decision regarding venue, and [*9] plaintiff has not convinced this Court, in light of defendant's arguments, that public and private interests will be better served by maintaining this potential collective action in the Western District of Louisiana.

Accordingly, after weighing all relevant factors, the Court concludes that this case should be transferred to the Western District of North Carolina.

For the foregoing reasons, the Motion to Transfer Venue is GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 31 day of January, 2006.

REBECCA F. DOHERTY

UNITED STATES DISTRICT JUDGE

## ORDER

Considering the foregoing Ruling:

IT IS HEREBY ORDERED that the Motion to Transfer Venue [Doc. # 6], filed by Family Dollar Store, Inc., et al, is hereby GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 31 day of January, 2006.

REBECCA F. DOHERTY

UNITED STATES DISTRICT JUDGE

# EXHIBIT 8

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### THOMASVILLE DIVISION

IRENE GRACE, on behalf of herself          :
and all others similarly situated,          :
                                            :
      Plaintiff,                           :
                                            :
v.                                          :          6:04-CV-22 (WLS)
                                            :
FAMILY DOLLAR STORES, INC., :
                                            :
      Defendants.                          :
_____          :

### <u>ORDER</u>

    Before the Court are Defendant's Motion to Strike or to Transfer (Doc. 5), Plaintiff's

Motion for Miscellaneous Relief (Doc. 20), Plaintiff's Motion for Miscellaneous Relief (Doc.

23), Defendant's Motion for Protective Order (Doc. 39), Plaintiffs' Motion to Compel (Doc.

43), Defendant's Motion to Compel (Doc. 62), Defendant's Motion for Protective Order (Doc.

67), and Defendant's Motion to Strike (Doc. 85).[1]

    For the reasons stated below, Defendant's Motion to Transfer (Doc. 5) is **GRANTED**;

Defendant's Motion for Protective Order (Doc. 39) is **DENIED AS MOOT**; and Plaintiff's

Motion to Compel (Doc. 43) is **DENIED AS MOOT**.   Resolution of Defendant's Alternate

Motion to Strike (Doc. 5), Plaintiff's Motion for Miscellaneous Relief (Doc. 20), Plaintiff's

Motion for Miscellaneous Relief (Doc. 23),  Defendant's Motion to Compel (Doc. 62),

Defendant's Motion for Protective Order (Doc. 67), and Defendant's Motion to Strike (Doc.

85) is **STAYED** pending further consideration by the United States District Court for the

Western District of North Carolina, Charlotte Division.

---

[1]    The Court issued an Order limiting discovery in this case to issues regarding the appropriateness and viability of a collective action and whether this action should be transferred to the Western District of North Carolina, Charlotte Division.  All other discovery in this case was stayed pending further order of this Court.  (*See* Doc. 31).

**DISCUSSION**

Regarding changes of venue such as the one sought by Defendant in the instant motion, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

"The purpose of [Section 1404(a)] is to prevent avoidable waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *See* Lemke v. St. Margaret Hosp., 594 F. Supp. 25, 27 (N.D. Ill. 1983). "The decision to transfer a case to another district is left to the sound discretion of the trial court." Brown v. Connecticut Gen'l. Life Ins. Co., 934 F.2d 1196, 1197 (11th Cir. 1991) (*quoting* Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. Unit B July 1981), *cert. denied*, 456 U.S. 918 (1982)).

"To transfer an action under 1404(a), the court must first determine whether the action could have been brought originally in the transferee court." First Federal Savings and Loan v. Berger, 672 F.Supp. 1454, 1456 (M.D.Ga. 1987). Here, the above-captioned action could have been brought in the Western District of North Carolina. As a corporation, Defendant is "deemed to reside in any jurisdiction in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Defendant is headquartered, and thereby subject to personal jurisdiction, in Charlotte, North Carolina. (Doc. 6). Accordingly, Defendant resides there for personal jurisdiction purposes. Charlotte, North Carolina is located within Mecklenburg County, which in turn is located within the Western District of North Carolina. 28 U.S.C. § 113(c). Accordingly, this action could have been brought in the Western District of North Carolina.

"After concluding that the case could have been brought in the transferee court, the transferor court must determine whether the interests of justice would be served by a transfer of venue." First Federal Savings, 672 F.Supp. at 1456-57 (*citing* Dove v. Massachusetts Mutual Life Ins. Co., 509 F. Supp. 248, 250 (S.D. Ga. 1981)). "The burden is on the moving party to

2

establish that a balance of the 1404(a) interests favors the transfer." *Id.* at 1457. "[S]ome initial weight must be given to [Plaintiff Irene Grace's] choice of forum," however equal weight must be given where Defendant makes a showing that: "1) the witnesses who would be inconvenienced are key witnesses and their testimony cannot be effectively presented by depositions; and 2) [that] other actions invoking the same or substantially similar subject matter are pending in the transferee district. *Id.*

Here, Plaintiff has alleged a collective action involving numerous potential opt-in plaintiffs, potentially located in 43 different states. (Doc. 1). "Where there are potentially hundreds, if not thousands of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened." Koster v. Lumbermens Mutual Casualty, 330 U.S. 518, 524 (1947). Additionally, Defendant shows that key witnesses who may be expected to testify for Defendant include Family Dollar management- and executive-level employees, who are based at Defendant's Charlotte headquarters and who reside in the Charlotte area. (Doc. 6; *see also* Doc. 83, Exh. G). Furthermore, Defendant shows that other actions invoking the same or substantially similar subject matter are pending in the Western District of North Carolina.[2] (Doc. 6). Based on the foregoing, the Court finds that Defendant has met its burden of establishing that the balance of the Section 1404(a) interests favor transfer.

The Court further finds that the interest of justice favors transfer to the Western District of North Carolina. Here there are three actions involving the same or similar subject matter pending in one District. *See supra* n. 2. The overwhelming majority of documentary evidence concerning key issues of this case, including, but not limited to Defendant's human resources and pay policies and practices is located in Charlotte. As found earlier, the majority of key witnesses are also located in Charlotte. Indeed, Section 1404(a) was "designed to prevent" situations "in which two cases involving precisely the same issues are simultaneously pending in different district courts." Ferens v. John Deere Co., 494 U.S. 516, 531 (1990). To continue

---

[2]   *See, e.g.* Rowe v. Family Dollar, Inc., W.D.N.C. No. 04-CV-60; Anderson v. Family Dollar, Inc., W.D.N.C. 04-CV-220; Lucas v. Family Dollar of Oklahoma, Inc., W.D.N.C. 05-CV-122.

3

proceedings in the above-captioned action in this Court would unnecessarily lead to "the wastefulness of time, energy and money." *Id.* Having so found, the Court finds it proper to transfer the instant case to the Western District of North Carolina, Charlotte Division for further resolution.

Upon review of the parties' pending motions, the Court finds that the subject matters addressed by Defendant's Motion for Protective Order (Doc. 39) and Plaintiff's Motion to Compel (Doc. 43) are rendered moot by the transfer of this case. Accordingly, said motions (Docs. 39, 43) are **DENIED AS MOOT WITHOUT PREJUDICE.** The Court further finds, for reasons similar to those found in granting Defendant's Motion to Transfer, that the remaining pending motions should also be addressed by the transferee district.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Transfer (Doc. 5) is **GRANTED**; Defendant's Motion for Protective Order (Doc. 39) is **DENIED AS MOOT WITHOUT PREJUDICE**; and Plaintiff's Motion to Compel (Doc. 43) is **DENIED AS MOOT WITHOUT PREJUDICE.** Resolution of Defendant's Alternate Motion to Strike (Doc. 5), Plaintiff's Motion for Miscellaneous Relief (Doc. 20), Plaintiff's Motion for Miscellaneous Relief (Doc. 23), Defendant's Motion to Compel (Doc. 62), Defendant's Motion for Protective Order (Doc. 67), and Defendant's Motion to Strike (Doc. 85) is **STAYED** pending further consideration by the United States District Court for the Western District of North Carolina, Charlotte Division.

**SO ORDERED**, this ___14th___ day of July, 2006.

/s/W. Louis Sands
**W. LOUIS SANDS, CHIEF JUDGE
UNITED STATES DISTRICT COURT**

4

# EXHIBIT 9

LEXSEE 2006 U.S. DIST. LEXIS 96846

SHAWN ERIC WARD, et al., Plaintiffs, vs. FAMILY DOLLAR STORES, INC., De-
fendant.

CV-06-CO-01060-W

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ALABAMA, WESTERN DIVISION

2006 U.S. Dist. LEXIS 96846

September 29, 2006, Decided
September 29, 2006, Filed

COUNSEL: [*1] For Shawn Eric Ward, on behalf of himself and others similarly situated, Isaiah Raheem Wilder, on behalf of himself and others similarly situated, Augusta Ayers, on behalf of himself and others similarly situated, Christopher Anderson, on behalf of himself and others similarly situated, Phillip W. Mitchell, Plaintiffs: Gregory O Wiggins, Herman N Johnson, Jr, LEAD ATTORNEYS, WIGGINS CHILDS QUINN & PANTAZIS, Birmingham, AL; J Allen Schreiber, P Mark Petro, LEAD ATTORNEYS, SCHREIBER & PETRO PC, Birmingham, AL.

For Family Dollar Stores, Inc., Defendant: James N Boudreau LEAD ATTORNEY, LITTLER MENDELSON PC, Philadelphia, PA; Jerry Howard Walters, Jr, LEAD ATTORNEY, LITTLE MENDELSON, P.C., Charotte, NC; John A Ybarra, LEAD ATTORNEY, LITTLER MENDELSON PC, Chicago, IL; Terry Price, LEAD ATTORNEY, FORD & HARRISON LLP, Birmingham, AL.

JUDGES: L. SCOTT COOGLER, UNITED STATES DISTRICT JUDGE.

OPINION BY: L. SCOTT COOGLER

OPINION

OPINION & ORDER

The Court has for consideration Defendant Family Dollar Stores, Inc.'s (Family Dollar's) Motion for Transfer (Doc. 11), filed on June 19, 2006. Plaintiffs filed the current action on June 1, 2006, alleging that Family Dollar willfully and intentionally failed to pay overtime to managerial [*2] employees who worked more than forty hours per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. (Doc. 1, P 8.)

Plaintiffs submit that this case should be treated as a "collective action" under 29 U.S.C. § 216(b) on behalf of themselves and other similarly situated managers of Family Dollar stores nationwide. Id. at P 7. Defendant submits to the Court that this case should be transferred to the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)") for the convenience of the witnesses and parties, it would serve the interests of justice, many of the related documents and accounting records are located in North Carolina, and because it would be in the public interest. (Doc. 11.)

"The decision to transfer a case to another district is left to the sound discretion of the trial court." Brown v. Connecticut General Life Ins. Co., 934 F.2d 1196, 1197 (11th Cir. 1991) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981), cert. denied, 456 U.S. 918, 102 S. Ct. 1775, 72 L. Ed. 2d 178 (1982)). Section 1404(a) governs the transfer of civil actions from one district court to another: "For the convenience of parties and witnesses, [*3] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of 1404(a) is "to prevent avoidable waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Lemke v. St. Margaret Hospital, 594 F. Supp. 25, 27 (N.D. Ill. 1983).

A court's analysis of a § 1404(a) motion to transfer involves a two-step inquiry. "First, the court must determine whether the actions could 'originally have been brought in the proposed transferee district court;' then, the court must determine whether the action should be transferred 'for the convenience of the parties [and] in the interest of justice.'" C.M.B. Foods, Inc. v. Corral of Middle Georgia, 396 F. Supp. 2d 1283, 1286 (M.D. Ala.

2005) (quoting *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)) (internal citations omitted). Therefore, the threshold question is whether Plaintiffs could have initiated this action in the United States District Court for the Western District of North Carolina, and there does not appear to be any question that Plaintiffs could [*4] have brought this suit against Family Dollar in that court. Because the FLSA is the basis for the Court's subject matter jurisdiction in this case, Plaintiffs could have filed their lawsuit in any federal court of competent jurisdiction. For a corporation, this means "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *28 U.S.C. § 1391(c).* Family Dollar is headquartered within the Western District of North Carolina; therefore, it "resides" there for personal jurisdiction purposes. *See also In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003), cert. denied, 540 U.S. 1049, 124 S. Ct. 826, 157 L. Ed. 2d 698 (2203) (holding that the location of a corporation's principal office is a permissible factor in establishing proper venue in a transferee court).

After determining that the case could have been brought in the United States District Court for the Western District of North Carolina, this Court "must determine whether the interests of justice would be served by a transfer of venue." *First Federal Savings & Loan v. Berger*, 672 F. Supp. 1454, 1456-57 (M.D. Ga. 1987) (citing *Dove v. Massachusetts Mutual Life Ins. Co.*, 509 F. Supp. 248, 250 (S.D. Ga. 1981)). [*5] In making this determination, courts generally consider the following factors: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system." *Gould v. National Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998). However, it is the burden of the moving party to demonstrate that the "balance of the 1404(a) interests favors transfer." *First Federal Savings*, 672 F. Supp. at 1457; see also *Martin v. South Carolina Bank*, 811 F. Supp. 679, 683 (M.D. Ga. 1992).

While "some initial weight must be given to [Plaintiffs'] choice of forum," the Court must give equal weight if Defendant is able to show: "(1) the witnesses who would be inconvenienced are key witnesses and their testimony cannot be effectively presented by depositions; and (2) [that] other actions invoking the same or substantially similar subject matter are pending in the transferee district." *First Federal Savings*, 672 F. Supp. at 1457. [*6] Also, "[w]here there are potentially hundreds, if not thousands of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably

weakened." *Dortch v. Financing Alternative, Inc.*, 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2 (N.D. Ill. April 17, 2002) (citing *Koster v. Lumbermens Mutual Casualty*, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)); see also *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1297 (S.D. Ala. 2001) ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [his] choice of forum is considerably reduced by virtue of the fact that he brought his challenge as a class action.").

In the current case, Plaintiffs' proposed collective action under the FLSA covers "all employees and former employees" who were employed as store managers. (Doc. 1, P 8.) Defendants contend that the class would potentially include more than 15,000 present and former Family Dollar managerial employees in approximately 6,080 stores in 44 states and the District of Columbia. (Doc. 12, p. 6.) If notice is sent out pursuant to Plaintiffs' request, the case may generate thousands of opt-in plaintiffs from across the country. *Id.* Therefore, Defendants believe that "the [*7] natural epicenter for this nationwide collective action attacking Family Dollar should be the Company's corporate headquarters in North Carolina - not Birmingham, Alabama, where only *eleven* Family Dollar Stores are located." (Doc. 12, p. 7.) Plaintiffs respond that although the management of Family Dollar stores is centralized in the Store Operations Department, the department is run through a set of managers located throughout the United States. (Doc. 19, p. 8.) Plaintiffs also focus on the nine individual plaintiffs currently in the case, eight of whom live in Alabama, and the ninth lives in Florida. *Id.* at 9. However, as stated above, due to the fact that there may be thousands of opt-in plaintiffs, the original choice of forum is not entitled to the same level of deference as it would be if this was not an FLSA collective action. *Dortch*, 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2. [1]

---

1    Moreover, at a hearing held in Tuscaloosa, Alabama, on August 23, 2006, counsel for defendant stated on the record that his client would agree to a tolling agreement which will allow Plaintiffs to refile their individual cases in this Court using the date they filed this case for the purposes of the statute of limitations. [*8] (Tr. at 38-39, 52-53.) This Court recognized the fact that if the Western District of North Carolina does not treat this case as a collective action it would be "ridiculous" to have eight plaintiffs from Alabama litigating claims in North Carolina, but this has been cured by Defendant agreeing to toll the statute of limitations such that Plaintiffs can dismiss their action in North Carolina and refile their individual claims in this Court.

2006 U.S. Dist. LEXIS 96846, *

Defendant has identified approximately thirty-seven employee witnesses that will be called to testify who currently work out of the corporate headquarters in North Carolina. "[W]hen considering the practical need to adjudicate in a forum convenient for the parties and material witnesses, courts generally examine the location of principal material witnesses, 'the relative ease of access to sources of proof,' and the ability of the parties to bear the expense of changing the forum." *A.J. Taft Coal Co., Inc. v. Barnhart, 291 F. Supp. 2d 1290, 1311 (N.D. Ala. 2003)* (quoting *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947))*. If the case is not transferred, these witnesses would be required to travel approximately three hundred and ninety miles to attend [*9] trial in Tuscaloosa, Alabama. Transferring this case to the Western District of North Carolina would save a considerable amount of resources regarding travel for key corporate witnesses, the transportation of documents and other evidence, and the avoidance of the disruption of work and home schedules of the witnesses.

A "persuasive reason for transferring [an] action is that a related action involving the same issues is currently pending in the [transferee court]." *Mirasco, Inc. v. American National Fire Ins. Co., 2000 U.S. Dist. LEXIS 19461*, at *15 (N.D. Ga. July 5, 2000). Transferring a case to a court in which a case involving substantially similar facts is currently pending "promote[s] judicial economy by preventing the duplication of judicial effort and avoiding the possibility of inconsistent results." *Id.* In *Martin*, the district court determined that although a "plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee district." *Martin, 811 F. Supp. at 686.* On July 14, 2006, Judge W. Louis Sands, Chief Judge of the United States District Court for the Middle District of Georgia, transferred [*10] a case factually similar to the one at bar to the Western District of North Carolina. *Grace v. Family Dollar Stores, Inc., 6:04-CV-22 (WLS) (Doc. 91) (M.D. Ga. July 14, 2006).* [2] The very same law firm represents the plaintiffs in both *Grace* and this case. Therefore, they will have to travel to North Carolina to conduct depositions, attend hearings, examine physical evidence, and attend trial regardless of whether this case is transferred to that district. For these reasons, the Court's deference to Plaintiff's choice of forum is "considerably weakened." *Dortch, 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2.*

2   Judge Sands denied Plaintiffs' motion for reconsideration on August 15, 2006. *Id.* at Doc. 96.

The Court is also of the opinion that the interests of justice favor transfer to the Western District of North Carolina. As stated above, at least one other case is currently pending before that Court which involves substantially similar facts, the same attorneys, and the very same witnesses and physical evidence. *See Grace, 6:04-CV-22 (WLS).* "Indeed, *Section 1404(a)*, was [*11] 'designed to prevent' situations 'in which two cases involving precisely the same issues are simultaneously pending in different districts.'" *Grace, 6:04-CV-22 (WLS),* at 3 (quoting *Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)).* To proceed with simultaneous cases in two different courts "would unnecessarily lead to 'the wastefulness of time, energy and money.'" *Id.* Accordingly, the pendency of similar or related actions in a transferee venue will often be the most compelling reason for a court to transfer a case. *See, e.g., Martin, 811 F. Supp. at 685-86* (". . . the most compelling reason for transfer is that there are related proceedings pending in the Northern District of Alabama."). Transferring the current case to the Western District of North Carolina "would promote uniformity of results, avoid duplicative court proceedings, and would be in the best interest of efficiency and justice." *Lucas v. Family Dollar Stores of Oklahoma, Inc., CIV-04-536-M,* at 7, *2005 U.S. Dist. LEXIS 45521 (W.D. Okla. March 14, 2005)* (transferring the case to the Western District of North Carolina). Perhaps most importantly, it would prevent Plaintiffs from obtaining a "second bite" at class notice and certification if [*12] it is denied by the Western District of North Carolina. [3]

3   At the hearing, Plaintiffs' counsel stated on the record that "if the court in North Carolina does what we expect it to do, deny notice, we would certainly probably move this court for notice . . . ." (Tr. at 35.) This is exactly the type of forum shopping that can be prevented by transferring a case to another district under *§ 1404(a)*. It would waste judicial resources to allow Plaintiffs to pursue parallel paths to class notice and certification simply because they believe that their chances for success are greater in the Eleventh Circuit than they are in the Fourth Circuit.

Accordingly, Defendant's motion to transfer (Doc. 11) is GRANTED. The Clerk of Court is hereby directed to TRANSFER this case to the United States District Court for the Western District of North Carolina.

Done this 29th day of September 2006.

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

# EXHIBIT 10

LEXSEE 2006 U.S. DIST. LEXIS 96845

**BRENDA INGRAM, Plaintiff, v. FAMILY DOLLAR STORES OF ALABAMA, INC. doing business as Family Dollar Stores, Defendant.**

**CV-06-BE-1507-S**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*2006 U.S. Dist. LEXIS 96845*

September 29, 2006, Decided
September 29, 2006, Filed

**COUNSEL:** [*1] For Brenda Ingram, Plaintiff: Samuel Briskman, LEAD ATTORNEY, BAXLEY DILLARD DAUPHIN & MCKNIGHT, Birmingham, AL; William J Baxley, BAXLEY DILLARD DAUPHIN & MCKNIGHT, Birmingham, AL.

For Family Dollar Stores of Alabama, Inc, doing business as Family Dollar Stores, Defendant: James N Boudreau, LEAD ATTORNEY, LITTLER MENDELSON PC, Philadelphia, PA; Jerry Howard Walters, Jr, LEAD ATTORNEY, LITTLE MENDELSON, P.C., Charotte, NC; John A Ybarra, LEAD ATTORNEY, LITTLER MENDELSON PC, Chicago, IL; Terry Price, FORD & HARRISON LLP, Birmingham, AL.

**JUDGES:** KARON OWEN BOWDRE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** KARON OWEN BOWDRE

**OPINION**

**MEMORANDUM OF OPINION AND ORDER GRANTING MOTION TO TRANSFER**

This matter comes before the court on the Defendant's Motion to Transfer Venue to the Western District of North Carolina Pursuant to *28 U.S.C. § 1404(a)* (doc. 5). Plaintiff filed her opposition (doc. 12) to which the Defendant replied (doc. 14). For the reasons stated below, the court finds that the motion is due to be GRANTED.

*Plaintiff's Complaint*

Plaintiff Brenda Ingram formerly worked for Family Dollar as a clerk in the Piedmont, Alabama, store. She alleges that Family Dollar willfully and intentionally failed to pay her overtime [*2] for the hours she worked in excess of 40 hours a week, in violation of the Fair Labor Standards Act, *29 U.S.C. § 201.* Plaintiff filed her complaint as a collective action, under *29 U.S.C. § 216(b),* on behalf of herself and "all other employees employed by Family Dollar Stores in the United States of America." (Compl. P 7). Six other federal district courts [1] have transferred similar opt-in FLSA cases to the Western District of North Carolina, where Family Dollar is headquartered. Family Dollar argues that this case should also be transferred to that district.

> 1 Other FLSA collective actions transferred to Charlotte, North Carolina, include *Rowe v. Family Dollar, Inc.,* No. 3:04-CV-60 (W.D.N.C. filed February 12, 2004) (transferred from the Southern District of Indiana); *Anderson v. Family Dollar, Inc.,* No. 3:04-CV-220 (W.D.N.C. filed May 6, 2004) (transferred from the Western District of Oklahoma); *Medley v. Family Dollar, Inc.,* No. 3:04-CV-243 (W.D.N.C. filed May 18, 2004) (transferred from the Middle District of Tennessee); *Lucas v. Family Dollar Stores of Oklahoma, Inc.,* No. 3:05-CV-122 (W.D.N.C. filed March 14, 2005) (transferred from the Western District of Oklahoma); *Broussard v.* [*3] *Family Dollar Store, Inc.,* No. Civ. A. 05-0892 (transferred from the Western District of Louisiana) and *Grace v. Family Dollar Stores, Inc.,* No. 6:04-CV-22 (transferred from the Middle District of Georgia). Although the foregoing cases concerned the exempt status of certain employees under the FLSA, the rationale underlying the transfer decisions remains the same.

*Standard for Transfer*

Title *28 U.S.C. § 1404* provides that "[f]or the convenience of parties and witnesses, in the interest of jus-

tice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. Congress enacted *§ 1404* as a "'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)* (citing *Van Dusen v. Barrack, 376 U. S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964))*. Its purpose is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*.

Courts apply a two-part test when evaluating a motion to transfer venue: (1) whether the plaintiff could have filed [*4] the action in the venue to which the defendant seeks transfer; and (2) whether the balance of convenience to the parties and the interest of justice favors transfer. *See C.M.B. Foods, Inc. v. Corral of Middle, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005)* (quoting *Folkes v. Haley, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)*. Once the court determines that the plaintiff could have filed the case in another district, a court's decision to transfer depends on the balance of convenience and justice. In making this determination, a judge has considerable discretion based on a "case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)* (citing *Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964))*.

The Plaintiff could have filed this action originally in the Western District of North Carolina. Because subject matter jurisdiction vests under FLSA in any Federal Court of competent jurisdiction, the suit could be brought in any judicial district in which the corporate defendant is subject to personal jurisdiction. *28 USC § 1391(c)*. Because Family Dollar's headquarters is in the Western District of North Carolina, it resides there for personal jurisdiction [*5] purposes. Thus, the first element for transfer is met. *See In re Horseshoe Entm't, 337 F. 3d 429, 433 (5th Cir. 2003), cert. den. 540 U.S. 1049, 124 S. Ct. 826, 157 L. Ed. 2d 698 (2003)*.

The court finds that the factors affecting the balance of convenience to the parties and the interests of justice, the second part of the *§ 1404* test, weigh heavily in favor of transfer of this case. In considering the balance of interests, courts generally consider the following factors: 1) the convenience of the parties; 2) the convenience of the witnesses; 3) where the challenged conduct occurred; 4) the possibility of delay and prejudice if the transfer is granted; and 5) the interests of justice in general. *See Clement v. Pehar, 575 F. Supp. 436, 444 (N.D.Ga. 1983)*.

Much of the Plaintiff's argument against transfer ignores the allegations of her complaint. She argues that this case is currently a one-plaintiff complaint, that she chose this forum, and that she resides in Alabama, making litigation in North Carolina difficult for her. Although a plaintiff's choice of forum usually carries considerable weight and should not lightly be disregarded, when a plaintiff chooses to pursue a nationwide class action, other factors become more [*6] significant than the individual plaintiff's choice and convenience. When the potential class involves hundreds or thousands of people from around the country, the plaintiff's chosen forum loses much of its weight. *See Koster v. Lumbermens Mutual Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947); Barnett v. Alabama, 171 F. Supp. 2d 1292, 1295 (S.D. Ala. 2001)* ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [plaintiff's] choice of forum is considerably reduced by virtue of the fact that he brought his challenge as a class action"). [2]

> 2  *See also Bolton v. Tesoro Petroleum Corp., 549 F. Supp. 1312, 1313-14 (E.D. Pa. 1982)* ("It has been consistently held . . . that the weight accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal."); *Georgouses v. Natec Res., Inc., 963 F. Supp 728, 730 (N.D. Ill. 1997)* (Illinois plaintiff's choice of forum irrelevant where he purported to represent 5,670 individuals, 1,900 of whom resided [*7] in Illinois); *Int'l Show Car Ass'n v. Am. Soc'y of Composers, Authors & Publrs., 806 F. Supp. 1308, 1312 (E.D. Mich. 1992)* ("[W]here, as here, the 'class' is nationwide, the deference usually accorded to the plaintiff's choice of venue is less important than in the traditional transfer of venue cases."); *Shulof v. Westinghouse Elec. Corp., 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975)* ("While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in . . . class actions . . . .").

Ms. Ingram brought this action as a purported nationwide collective action that covers "all ...past or current employees employed by any or all Family Dollar stores/locations in the United States of America . . . ." Compl. P P 1, 7, 11. According to the Defendant's affidavit, such a class could potentially involve more than 32, 114 Family Dollar employees in approximately 6,142 stores in 44 states and the District of Columbia. Because of the nature of a collective action where all the plaintiffs who opt in become party plaintiffs, Ms. Ingram's choice

of forum might well inconvenience the vast majority of the potential plaintiffs. Her choice of forum, therefore, [*8] cannot become the decisive factor she urges it to be. As the Supreme Court noted, "[w]here there are hundreds of potential plaintiffs . . . and all of whom could with equal show of right go into their many home courts, the [forum] claim of any one plaintiff. . . is considerably weakened." *Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947).*

The Supreme Court directed district courts to consider the *potential* number of plaintiffs based upon the allegations of the complaint as opposed to the actual number of named plaintiffs at the initiation of the case. *330 U.S. at 524.* Thus, the fact that Ms. Ingram is the lone plaintiff at this stage carries little weight in the balancing of interests.

Ms. Ingram also alleges in her complaint that the basis of the wrong sustained by the class is the centralized "illegal, wrongful pattern or practice regarding overtime compensation for employees." Compl. P10. Such alleged wrongful conduct thus occurred at the corporate headquarters in North Carolina. Plaintiff concedes that where the conduct occurred is a factor in the determining a motion for transfer. She then argues that the conduct pertinent to her individual claim occurred in Piedmont, [*9] Alabama. Again, Ms. Ingram forgets that she choose to assert a nationwide class action for all employees of Family Dollar. Further, her complaint on its face specifically asserts that the Defendant's conduct -- even as directed to her personal claim -- arose from a centralized wrongful pattern and practice of conduct. Thus, even as to her own individual claim, the decisions that she alleged affected the Defendant's refusal to pay her overtime originated at the corporate headquarters. Because she alleges a nationwide class based on a corporate-wide pattern, the natural and logical epicenter of the material events occurred at corporate headquarters, making North Carolina the appropriate location for this action.

As the Defendant demonstrates, the vast majority of witnesses as to Plaintiff's claims of corporate wrongdoing will be current or past employees from Defendant's headquarters in Charlotte, North Carolina. Defendant's sworn evidence identifies 33 likely company witnesses who are currently located near the corporate headquarters in Charlotte, North Carolina. These witnesses include current and former employees. As Plaintiff argues, the convenience of only non-party witnesses may [*10] be considered when evaluating the factor of convenience of witnesses. *See Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2001).* However, when the court considers the convenience of the *parties,* the location and convenience of party witnesses properly deserves consideration. Interestingly, the only witness the Plaintiff identifies is herself. Again, she

ignores the impact of this case as a nationwide class action with thousands of party plaintiffs around the country.

As the epicenter of the material events, corporate headquarters also hosts the location of the documentary evidence that will be a significant part of the discovery and proof in this case. The location of documentary proof is a factor a court can consider in balancing interests. *A. J. Taft Coal Co. v. Barnhart, 291 F. Supp. 2d 1290, 1311 (N.D. Ala. 2003).* As described in Family Dollar's Motion to Transfer, the Defendant creates and stores official personnel files, time sheets, payroll records and human resource policies at the corporate headquarters, and also issues paychecks from there. Thus, the common conduct and witnesses are located in North Carolina. The remainder of the conduct [*11] and witnesses necessarily are spread around the United States where Family Dollar has stores.

Perhaps the most significant reason to transfer this case to North Carolina is the fact that six other FLSA collective actions have been transferred there. *See* note 1 *supra.* The Supreme Court has made quite clear that district courts should not permit similar cases to be pending in different districts, because that situation leads "to the wastefulness of time, energy and money that *§ 1404(a)* was designed to prevent." *Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)* (quotation and citation omitted). Accordingly, courts have consistently recognized that the pendency of similar or related actions in a transferee venue will often be the most compelling reason for a court to transfer a case. *See Martin v. South Carolina Bank, 811 F. Supp. 679, 685-86 (M.D. Ga. 1992)* (". . . the most compelling reason for transfer is that there are related proceedings pending in the Northern District of Alabama."); *Hoffman v. Medquist, Inc., 2005 U.S. Dist. LEXIS 29995, *5-6 (N.D. Ga. Nov. 16, 2005)* ("... this factor may be more important than the three set out in Section *§ 1404(a).*"); *Mirasco, Inc. v. American Nat'l Fire Ins. Co., 2000 U.S. Dist. LEXIS 19461, *5 (N.D. Ga. July 5, 2000)* [*12] ("The most persuasive reason for transferring this action is that a related action involving the same issues is pending in the [transferee court]."); *Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001)* ("[The presence of a related case] is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite").

The existence of pending FLSA actions against Family Dollar in North Carolina strongly weighs in favor of transferring this nationwide FLSA claim to the United States District Court for the Western District of North Carolina. Plaintiff argues without any supporting evidence that "almost all of [the cases transferred to North Carolina] were dismissed voluntarily by the plaintiffs...

2006 U.S. Dist. LEXIS 96845, *

because they could not afford to fully litigate hundreds.. of miles away from their home jurisdiction." Not only do Plaintiff's allegations lack any proof, they are based solely on speculation. Plaintiff should consider the expense of litigating an opt-in nationwide class action when deciding to bring such an action. The court also notes that, in her complaint, Ms. Ingram affirmatively asserts that she can "fairly and [*13] adequately protect the interests of the members of the class...." Compl. P 8(b). The Plaintiff should also remember that she will benefit from the resources of the potentially thousands of individual party plaintiffs should they decide to opt in to the case.

In conclusion, the court finds that balancing the factors of § 1404(a) tilts heavily in favor of transferring this nationwide opt-in class action to the Western District of North Carolina. The epicenter of the conduct that forms the basis of Plaintiff's complaint occurred there. Every district court that has considered transferring a nationwide FLSA case against Family Dollar has transferred those cases to North Carolina. The convenience of parties -- including the thousands of potential party plaintiffs nationwide -- supports transfer. For all the reasons set out in this opinion and the Defendant's briefs, the court finds that the interest of justice mandates this transfer.

Therefore, the court hereby ORDERS that this case be TRANSFERRED to the Western District of North Carolina. The Clerk of the Court is hereby DIRECTED to take all necessary steps to effectuate the transfer.

DONE AND ORDERED this 29th day of September, 2006.

KARON [*14] OWEN BOWDRE

UNITED STATES DISTRICT JUDGE

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MELANIE BLAKE**, *et al.*,

        **Plaintiffs**,

    **vs.**

                           **Civil Action 2:07-CV-361**
                           **Judge Watson**
                           **Magistrate Judge King**

**FAMILY DOLLAR STORES, INC.**, *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on *Defendants' Motion to Transfer Venue to the Western District of North Carolina Pursuant to 28 U.S.C. § 1404(a)* ("*Defendants' Motion to Transfer*"). Doc. No. 5. For the reasons set forth below, defendants' motion is **GRANTED**.

**I.    BACKGROUND**

On November 14, 2005, Melanie Blake filed this action in the Belmont County, Ohio, Court of Common Pleas, alleging that defendants violated the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111.03, by failing to pay overtime compensation. *See Complaint*, Doc. No. 3. On April 19, 2007, Ms. Blake amended her complaint to add an overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and to join Lori Orwig and Kathy Collins as plaintiffs. In the *Amended Complaint*, plaintiffs purport to bring this action as a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated Ohio store managers. *Exhibit L* attached to *Complaint*. On April 24, 2007, defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1446. *Notice of Removal*, Doc. No. 2. On that same day, defendants filed *Defendants' Motion to Transfer*.

In *Defendants' Motion to Transfer*, defendants ask that the action be transferred to the United States District Court for the Western District of North Carolina. On May 15, 2007, plaintiffs filed their opposition to *Defendants' Motion to Transfer*, Doc. No. 12, and on May 29, 2007, defendants filed their reply in support of their motion to transfer ("*Defendants' Reply*"), Doc. No. 15.

## II.    DISCUSSION

### A.    Standard for Transfer of Venue

Defendants move the Court to transfer venue pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Congress enacted Section 1404 as a "'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Its purpose is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Courts apply a two part analysis when evaluating a motion to transfer venue. *See Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002) (Sargus, J.). The threshold consideration is whether the action "might have been brought" in the transferee court. *Id.* (citing 28 U.S.C. § 1404(a)). Once a court determines that the plaintiff could have filed the action in another district, a court's decision to transfer depends on the balance of convenience and justice. In this regard, the Court must consider both the private interests of the litigants and

2

the public's interest in the administration of justice. *Id.* (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-09 (1947)). The moving party bears the burden of establishing that a change of venue is warranted. *Id.* (citations omitted). In making this determination, a trial court has considerable discretion based on a "case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted); *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989).

### B.    Analysis

The Court concludes that this action could have filed this action in the United States District Court for the Western District of North Carolina. Because subject matter jurisdiction vests under the FLSA in any federal court of competent jurisdiction, this action could have been brought in any judicial district in which the corporate defendants are subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c). Defendant Family Dollar Stores of Ohio, Inc., plaintiffs' employer, is wholly owned by defendant Family Dollar Stores, Inc., whose headquarters is located in the Western District of North Carolina. *Declaration of Barry Sullivan*, ¶¶3-4, attached to *Defendants' Motion to Transfer (Sullivan Decl.")*.[1] Thus, this action might have been brought in the transferee court, thus satisfying the first element required for transfer under 28 U.S.C.§ 1404(a).

The issue now becomes whether transfer is justified under the balance of Section 1404(a), which authorizes transfer for "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). In taking into account the litigants' interests the Court

---

[1]Mr. Sullivan is the Senior Vice President of Store Operations for defendant. *Sullivan Decl.* ¶ 1.

3

must consider the following factors::

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Gulf Oil*, 330 U.S. at 508.

In this action, the main sources of documentary proof are housed in defendants' headquarters in North Carolina. *Defendants' Motion to Transfer* at 12-14 (citing *Sullivan Decl.* ¶¶ 6-9). Also, several key witnesses are located in Charlotte, North Carolina. *Id.* at 7-10 (citing *Sullivan Decl.* ¶ 10). Further, and more importantly, three important witnesses are subject to compulsory process only in North Carolina. *See* Fed. R. Civ. P. 45(c)(3) (a subpoena may be quashed if it requires travel of more than 100 miles). These three witnesses, all former managers for defendants, may have information regarding compensation issues that form the heart of this lawsuit. *See Defendants' Motion to Transfer* at 11 (citing *Sullivan Decl.* ¶¶ 11, 15); *Defendants' Reply* at 15. Thus, consideration of these factors weighs in favor of transfer.

The Court must nevertheless give due -- but not controlling -- deference to plaintiffs' choice of forum. *See Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). In the case *sub judice*, plaintiffs' choice of forum "is entitled to somewhat less weight" because plaintiffs are no longer in their chosen forum, *i.e.*, state court, by reason of defendants' removal of the action to this Court. *See Jamhour*, 211 F. Supp.2d at 947. Moreover, the deference afforded plaintiffs' chosen forum is "considerably weakened" where the case has been brought as a class or collective action, as the instant action. *Koster v. American Lumermen's Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("Where there are only two parties to a dispute, there is good

4

reason why it should be tried in the plaintiff's home forum if that has been his choice. But where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 613 (6th Cir. 1984) (same).

Next, the Court must consider the public interests, including:

> [d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.

*Gulf Oil*, 330 U.S. at 508. This Court's case load is nearly double that of the Western District of North Carolina. *Defendants' Motion to Transfer* at 18 (citing *Exhibit 21*, *Federal Judicial Caseload Statistics: March 31, 2006*, Table C-1, Office of Judges Programs, Statistics Division, Office of the United States Courts (2006)). Moreover, since defendants are headquartered in North Carolina, that jurisdiction does indeed have a relation to this cause of action. Further, the Court is unwilling to accept plaintiffs' complaint that they cannot expect a fair trial in the Western District of North Carolina. It is significant, too, that "Ohio's wage and hour law 'parallels the FLSA,'" and therefore, "[c]ourts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006) (citing, *e.g.*, *Douglas v. Argo-Tech Corp.*, 113 F.3d 67 n.2 (6th Cir. 1997). The North Carolina court, as well as all federal courts, are competent to consider causes of action under federal statutes.

Finally, and most importantly, seven other district courts have transferred FLSA collective actions against defendants to the Western District of North Carolina, Charlotte Division. *See Exhibits* attached to *Defendants' Motion to Transfer*: *Exhibit 2, Rowe v. Family*

*Dollar, Inc.*, Case No. 1:03-cv-1737-LJM-WTL (S.D. Ind. Jan. 26, 2004) ; *Exhibit 10, Anderson v. Family Dollar, Inc.*, Case No. CIV-04-0210-F (W.D. Okla. April 30, 2004); *Exhibit 15, Lucas v. Family Dollar, Inc.*, Case No. Civ.-04-536-M (W.D. Okla. March 9, 2005); *Exhibit 12, Broussard v. Family Dollar Stores, Inc.*, Case No. Civ. A. 05-0892 (W.D. La Jan. 31, 2006); *Exhibit 13, Grace v. Family Dollar Stores, Inc.*, Case No. 6:04-CV-22 (M.D. Ga July 14, 2006); *Exhibit 9, Ward v. Family Dollar Stores of Alabama, Inc.*, Case No. CV-06-CO-01060-W (N.D. Ala. Sept. 29, 2006) and *Exhibit 14, Ingram v. Family Dollar Stores of Alabama, Inc.*, Case No. CV-06-BE-1507-S (N.D. Ala. Sept. 29, 2006). The United States Supreme Court has "made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Taking in account all these factors, this Court concludes that transfer of this action will surely promote uniformity of results, avoid duplicative court proceedings, save time, energy and money and better serve the interests of efficiency and justice. The Court reaches this conclusion, moreover, even though these other cases are not currently consolidated on the docket of a single trial judge.

This Court is not insensitive to plaintiffs' complaints that they are less able to bear the cost of travel to North Carolina than are the corporate defendants able to bear the expenses of travel to Ohio. Although the Court concludes, for the reasons stated *supra*, that transfer of the case is warranted, the Court also expresses its willingness, should plaintiffs' motion to certify a collective action be denied, to entertain the remand of this action to this Court.

**WHEREUPON** *Defendants' Motion to Transfer*, Doc. No. 5, is **GRANTED**. This

action is **ORDERED TRANSFERRED** to the Western Division of North Carolina, Charlotte

Division.


June 19, 2007                              s/ Norah McCann King
Date                                        Norah McCann King
                                            United States Magistrate Judge

7

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Pamela Fowler, Terri
Campbell, Kevin Jones, and
Patricia Fontenot, on behalf of
themselves and others similarly situated

        Plaintiffs,

    v.

Family Dollar Stores of Ohio, Inc. and
Family Dollar Stores, Inc.,

        Defendants.

Case No. 1:07cv250

Judge Michael R. Barrett

## AGREED ORDER

Pursuant to the agreement between the Parties, and for good cause shown, Defendants' Motion to Transfer Venue to the U.S. District Court for the Western District of North Carolina (Doc. 9) is hereby GRANTED. Additionally, pursuant to the same agreement, it is hereby ordered that the Fair Labor Standards Act statute of limitations for potential Opt-in Plaintiffs in this action is tolled for twenty-one (21) days, effective on the date entered below.

The Clerk of Court is directed to close this matter from the docket of this Court and transfer the case to the U.S. District Court for the Western District of North Carolina.

SO ORDERED THIS 26th DAY OF JULY, 2007.

                s/Michael R. Barrett
                Michael R. Barrett
                United States District Judge

APPROVED:

s/Robert E. DeRose
Robert E. DeRose, Esq. (0055214)
Trial Attorney for Plaintiff

s/Thomas M.L. Metzger
Thomas M.L. Metzger, Esq. (0059694)
Trial Attorney for Defendants

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LASHONDA SLATER, SLATER, ROCHELLE                    PLAINTIFFS
ANTHONY, SHARON LEWIS,
AND MICHELLE REEVES, ON BEHALF
OF THEMSELVES AND ALL OTHER SIMILARLY
SITUATED

VS.                          CIVIL ACTION NO. 3:07CV119TSL-JCS

FAMILY DOLLAR STORES, INC.,                          DEFENDANTS
D/B/A FAMILY DOLLAR STORES, AND
JOHN DOES 1-10

<u>ORDER</u>

This cause is before the court on the motion of defendant
Family Dollar Stores, Inc. to transfer venue to the United States
District Court for the Western District of North Carolina.
Having regarded defendant as having raised a new argument in its
rebuttal submission, i.e, transfer based on the first-to-file
rule, in effort to allow the plaintiffs to respond to the
argument, on September 27, 2007, the court entered a show cause
order, requiring plaintiffs to show cause, on or before October
8, 2007, why this case should not be transferred pursuant to the
first-to-file rule.  On October 12, 2007, the court granted
plaintiff's first motion for an extension of time to respond to
the show cause order, granting plaintiffs until October 18, 2007
to respond.  However, as of this date, plaintiffs have not
responded to the order.  Accordingly, for the reasons set forth
in the September 27, 2007 show cause order, the court concludes

that defendant's motion should be granted and thus, that this case should be transferred to the United States District Court for the Western District of North Carolina, Charlotte Division.

SO ORDERED, this the 26th day of October, 2007.


                    S/ James C. Sumner_____
                    UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 14

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| ALABAMA MIDDLE | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
| | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
|---|---|---|---|---|---|---|---|---|---|
| OVERALL CASELOAD STATISTICS | Filings* | 1,471 | 1,490 | 1,561 | 1,472 | 1,580 | 1,715 | U.S. | Circuit |
| | Terminations | 1,551 | 1,597 | 1,498 | 1,457 | 1,550 | 1,764 | | |
| | Pending | 1,295 | 1,388 | 1,500 | 1,432 | 1,402 | 1,388 | | |
| | % Change in Total Filings — Over Last Year | | -1.3 | | | | | 51 | 6 |
| | % Change in Total Filings — Over Earlier Years | | | -5.8 | -.1 | -6.9 | -14.2 | 67 | 8 |
| | Number of Judgeships | 3 | 3 | 3 | 3 | 3 | 3 | | |
| | Vacant Judgeship Months** | .0 | 2.7 | 12.0 | 4.5 | 2.0 | 5.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 490 | 497 | 521 | 490 | 527 | 572 | 28 | 5 |
| | FILINGS — Civil | 396 | 409 | 432 | 417 | 448 | 524 | 21 | 4 |
| | FILINGS — Criminal Felony | 76 | 73 | 78 | 62 | 67 | 33 | 39 | 4 |
| | FILINGS — Supervised Release Hearings** | 18 | 15 | 11 | 11 | 12 | 15 | 62 | 7 |
| | Pending Cases | 432 | 463 | 500 | 477 | 467 | 463 | 25 | 3 |
| | Weighted Filings** | 498 | 510 | 520 | 505 | 537 | 613 | 30 | 6 |
| | Terminations | 517 | 532 | 499 | 486 | 517 | 588 | 21 | 4 |
| | Trials Completed | 31 | 27 | 27 | 23 | 30 | 26 | 15 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 9.1 | 8.3 | 9.5 | 8.2 | 7.7 | 8.7 | 55 | 6 |
| | From Filing to Disposition — Civil** | 10.0 | 11.0 | 9.5 | 9.2 | 9.2 | 8.4 | 61 | 7 |
| | From Filing to Trial** (Civil Only) | 16.0 | 20.0 | 23.0 | 20.0 | 18.0 | 19.5 | 9 | 2 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 43 | 94 | 92 | 71 | 79 | 69 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 4.1 | 8.0 | 7.2 | 5.8 | 6.4 | 5.5 | 40 | 8 |
| | Average Number of Felony Defendants Filed Per Case | 1.2 | 1.4 | 1.2 | 1.2 | 1.3 | 1.6 | | |
| | Jurors — Avg. Present for Jury Selection | 28.89 | 24.88 | 25.44 | 25.31 | 23.77 | 25.81 | | |
| | Jurors — Percent Not Selected or Challenged | 29.3 | 21.7 | 25.3 | 24.8 | 21.8 | 23.4 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 1187 | 111 | 30 | 449 | 21 | 4 | 41 | 114 | 82 | 17 | 255 | 1 | 62 |
| Criminal* | 228 | 2 | 41 | 14 | 80 | 27 | 13 | 10 | 4 | 23 | 1 | 3 | 10 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# EXHIBIT 15

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **NO. CAROLINA WESTERN** | | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,602 | 1,672 | 1,604 | 1,686 | 1,508 | 1,416 | U.S. | Circuit |
| | Terminations | | 1,872 | 1,748 | 1,598 | 1,419 | 1,416 | 1,543 | | |
| | Pending | | 1,376 | 1,659 | 1,751 | 1,740 | 1,485 | 1,368 | | |
| | % Change in Total Filings | Over Last Year | -4.2 | | | | | | 60 | 5 |
| | | Over Earlier Years | | -.1 | -5.0 | 6.2 | 13.1 | | 11 | 2 |
| | Number of Judgeships | | 5 | 5 | 5 | 5 | 5 | 3 | | |
| | Vacant Judgeship Months** | | 11.3 | 18.7 | 16.9 | 12.0 | 12.6 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 321 | 334 | 321 | 337 | 301 | 472 | 74 | 8 |
| | | Civil | 210 | 214 | 197 | 223 | 216 | 323 | 76 | 8 |
| | | Criminal Felony | 82 | 97 | 106 | 96 | 61 | 117 | 35 | 6 |
| | | Supervised Release Hearings** | 29 | 23 | 18 | 18 | 24 | 32 | 30 | 3 |
| | Pending Cases | | 275 | 332 | 350 | 348 | 297 | 456 | 76 | 7 |
| | Weighted Filings** | | 329 | 393 | 400 | 416 | 365 | 573 | 76 | 8 |
| | Terminations | | 374 | 350 | 320 | 284 | 283 | 514 | 64 | 7 |
| | Trials Completed | | 33 | 18 | 17 | 13 | 15 | 37 | 13 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.1 | 13.7 | 12.9 | 13.3 | 14.9 | 13.2 | 86 | 9 |
| | | Civil** | 7.5 | 9.8 | 10.9 | 10.0 | 10.8 | 9.1 | 21 | 3 |
| | From Filing to Trial** (Civil Only) | | 21.0 | - | 27.0 | - | - | - | 27 | 5 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 52 | 70 | 46 | 50 | 42 | 48 | | |
| | | Percentage | 6.5 | 7.2 | 4.4 | 4.2 | 3.9 | 5.1 | 65 | 7 |
| | Average Number of Felony Defendants Filed Per Case | | 1.7 | 1.7 | 1.8 | 1.8 | 2.2 | 1.9 | | |
| | Jurors | Avg. Present for Jury Selection | 41.81 | 27.30 | 30.07 | 30.57 | 31.23 | 32.38 | | |
| | | Percent Not Selected or Challenged | 44.6 | 18.1 | 27.3 | 29.3 | 31.0 | 30.1 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1049 | 64 | 219 | 221 | 22 | 15 | 51 | 149 | 48 | 73 | 122 | 4 | 61 |

# EXHIBIT 16

Join Dividend Miles | DM# or User Name [_____] [Log In] ☐ Remember Me

**US AIRWAYS**
*Fly with Us.*


The new In-flight Café
New menus with more choices

Book travel | Dividend Miles | Specials | Travel to

Home > Book travel > Flights > **Purchase**



## Purchase

Enter Details    Build Itinerary  Purcha

To complete this reservation, select seats, enter credit card information, and click '**Purchase**'. A shown are in USD unless otherwise noted.

| Depart | Arrive | Flight # and Details | |
|---|---|---|---|
| 4:05 PM 14 Feb 2008 | 4:31 PM 14 Feb 2008 | Flight: 2393 | Canadair Regional Jet | Meal: N |
| Charlotte, NC | Montgomery, AL | Class: Coach | On-Time: N/A | Travel T |

| Return | Arrive | Flight # and Details | |
|---|---|---|---|
| 6:05 AM 15 Feb 2008 | 8:19 AM 15 Feb 2008 | Flight: 2344 | Canadair Regional Jet | Meal: N |
| Montgomery, AL | Charlotte, NC | Class: Coach | On-Time: N/A | Travel T |

Flight operated by PSA Airlines

Summar

Base Fare

Taxes and Fees

**Grand Total**                                            **Hide Details**

**Passenger Type**

Base Fare

CLT to MGM - Fare Basis NXA0NA2

MGM to CLT - Fare Basis NXA0NA2

Adjusted Base Fare

Tax: US Domestic Percentage

**Fare**

Tax: US Domestic Segment

September 11 Security Fee

Fee: US Passenger Facility Charge

**Total Per Passenger**

Number of Passengers

**Total by Passenger Type**

### Need Help?

❓ **Help with This Page**

💬 **Live Help! Chat With an Agent**

✉ **Email us**

📞 **Call us 800-428-4322**

**Passenger Information**
Red fields are required

**Adult**

| First Name | MI | Last Name | Airline Partner | Frequent Flyer # | Special Needs ❓ |
|---|---|---|---|---|---|
| | | | US Airways | | None |

Purchase Reservation

For information on entering Partner Frequent Flyer numbers, Click Here.

## Select Your Seats



Click the **'Select Your Seats'** button to make your seat selection for y
Once you have clicked the **'Purchase'** button below, these seats will I

## Payment & Contact Information

⦿ **Credit Card**          

○ **Bill Me Later**®          Buy Fast. Feel Secure. Pay Later!®
What is Bill Me Later?®

Yes, I'd like No Payments for 90 Days!

○ **PayPal**          What is PayPal?

## Billing Information
Red fields are required

Billing Country Of Residence ❓ United States

Credit Card Type     Please select ---

Credit Card Number

Expiration Date     1          2008

Credit Card Security Digit ❓          Applies to AMEX, VISA, MC, DS

Name as it Appears on Card

Billing Address

Address Line 2

City

State     Select State ---

Zip Code          -

## Contact Information
Red fields are required

Day of Departure Phone (          )          -          Add an International Phone Number

Destination Phone (          )          -          Add an International Phone Number

Email (for receipt)

Email 2 (duplicate receipt)

Email 3 (duplicate receipt)

Email 4 (duplicate receipt)

Third Party Agent ❓

## Trip Cancellation/Interruption Insurance

Protect yourself against trip cancellations and interruptions with Access America, a US Airway

Protect yourself against trip cancellations and interruptions with Access America, a US Airways
partner. Coverage is available for non-refundable tickets up to $3,000. Terms and conditions ap

◯ Add Airline Ticket Protector for an additional $43.13*. How was this calculated?

◯ Decline Airline Ticket Protector

*This charge is in addition to the grand total above.

## Terms and Conditions

- Ticket is non-transferable.
- Ticket is non-refundable.
- Unused tickets must be cancelled by midnight on the date of departure to retain value.
- Any change to this reservation (including flight, dates, or cities) is subject to a $100.00 cha
  passenger. The new itinerary will be priced at the lowest available published fare at the tin
  which may result in a fare increase.
- PSA Airlines will operate one or more flights in this itinerary.
- Due to smaller-sized overhead compartments on our Express aircraft, carry-on bag size is
  following dimensions for these flights: 15"x9"x11".
- Ticket expires one year from original date of issue. Unflown value expires one year from o
  issue.
- All fares are subject to change until purchased.
- Airline Ticket Protector purchase is a separate credit card transaction billed by Access Am
  claims and questions will be processed by Access America.

☐ **I agree to comply with the terms and conditions applying to this ticket.**
(You must check this box to complete your reservation.)

Careers | Privacy Rights | Usage Agreement | System Requirements | Security | Site Map | Contact US Airways

**US Airways** and **America West Airlines** have merged to offer affordable
airline ticketsand last minute airfare to destinations all over the world.

**Reservation questions?** Call **US Airways** at **800-428-4322** or **email us**.

Copyright 2008, US Airways Inc. All Rights Reserved.