IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROSIE MAGWOOD, on behalf of herself and others similarly situated, <br><br>         **Plaintiff,** <br><br> **v.** <br><br> **FAMILY DOLLAR STORES, INC.,** <br><br>         **Defendant.** | Civil Action No. <br> 1:08-cv-076-WHA |

## DEFENDANT FAMILY DOLLAR STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

**I.      Introduction**

On February 4, 2008, Plaintiff filed the instant action, alleging that Defendant Family Dollar Stores, Inc. ("Family Dollar" or the "Company") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay overtime to her and "all employees and former employees" of Family Dollar who are similarly situated.  Pursuant to 28 U.S.C. § 1404(a), Family Dollar promptly filed the instant motion to transfer venue to the Western District of North Carolina, Charlotte Division, because that location is where Family Dollar is headquartered, where many of the key documents and witnesses are located, and where *multiple* other FLSA overtime cases involving similar allegations against Family Dollar are currently pending.  Indeed, after consideration of all of the relevant factors, *thirteen* other district courts have transferred similar FLSA collective actions against Family Dollar to the Western District of

North Carolina.[1]  *Seven* of these cases are currently pending before Judge Graham C. Mullen.

In response, Plaintiff maintains (once again) that the Court should not rule on this motion until the Multi-District Panel has ruled on Plaintiff's pending motion to transfer and consolidate certain related cases under 28 USC § 1407.  Plaintiff has already tried, and failed, with this argument before this Court.  On February 26, 2008, this Court denied Plaintiff's motion to stay this case pending resolution of their Section 1407 motion, and ordered the parties to comply with the briefing schedule as previously established (Doc. 16).[2]  Thus, Plaintiff's thinly veiled attempt to have this Court reconsider its previous ruling must be rejected.

---

[1] The following are the 13 other collective actions against Family Dollar alleging wrongful denial of overtime in violation of the FLSA which have been transferred to Charlotte, North Carolina pursuant to § 1404(a):  Rowe v. Family Dollar, Inc., No. 1:03-cv-1737-LJM-WTL (S.D. Ind. Jan. 26, 2004) (Doc. 5, Exhibit 3); Anderson v. Family Dollar, Inc., No. CIV-04-0210-F (W.D. Okla. April 30, 2004) (Doc. 5 , Exhibit 4); Medley v. Family Dollar, Inc., No. 1:03-cv-00082 (M.D. Tenn. May 12, 2004) (Doc. 5, Exhibit 5); Lucas v. Family Dollar Stores of Oklahoma, Inc., No. Civ.-04-536-0892 (W.D. Okla. March 9, 2005) (Doc. 5, Exhibit 6); Broussard v. Family Dollar, Inc., No. Civ. A. 05-0892, 2006 U.S. Dist. LEXIS 6587 (W.D. La. Jan. 31, 2006) (Doc. 5, Exhibit 7); Grace v. Family Dollar Stores, Inc., No. 6:04-CV-22 (WLS) (M.D. Ga. July 14, 2006) (Doc. 5, Exhibit 8); Ward v. Family Dollar Stores of Alabama, Inc., No. CV-06-CO-01060-W, 2006 U.S. Dist. LEXIS 96846 (N.D. Ala. Sept. 29, 2006) (Doc. 5, Exhibit 9); Ingram v. Family Dollar Stores of Alabama, Inc., No. CV-06-BE-1507-S, 2006 U.S. Dist. LEXIS 96845 (N.D. Ala. Sept. 29, 2006) (Doc. 5, Exhibit 10); Blake, et. al. v. Family Dollar Stores, Inc. et al., No. 2:07-cv-361 (S.D. Ohio June 19, 2007) (Doc. 5, Exhibit 11); Fowler, et. al. v. Family Dollar Stores, et. al., No. 1:07Cv250 (S.D. Ohio July 26, 2007) (Doc. 5, Exhibit 12); Slater, et. al. v. Family Dollar Stores Inc., No. 3:07cv119-JLS (S.D. Miss. Oct. 26, 2007) (Doc. 5, Exhibit 13); Robinson v. Family Dollar Stores of Florida, Inc., No: 3:07-cv-997-J-25TEM (Feb. 29, 2008) (Doc. 24, Exhibit A); Scott v. Family Dollar Stores, Inc., No. 7:08-CV-16-LSC (N.D. Ala. Mar. 4, 2008) (Doc. 23, Exhibit A).  Seven of these cases, Grace, Ward, Blake, Fowler, Slater, Robinson and Scott are currently pending before the Honorable Graham C. Mullen. (Doc. 5, Exhibits 8, 9, 11, 12, 13, Doc. 24, Exhibit A, Doc. 23, Exhibit A).

[2] Like this Court, Judge L. Scott Coogler of the Northern District of Alabama also refused Plaintiff's request to stay ruling on Family Dollar's motion to transfer another case also involving nearly identical allegations of failure to pay Company employees overtime in violation of the Fair Labor Standards Act.  See Doc. 24, Exhibit A:  Scott v. Family Dollar Stores, Inc., 7:08-CV-16-LSC (N.D. Ala. March 4, 2008).  As Judge Coogler found, in rejecting a similar motion to stay ruling, "a motion to consolidate and transfer before a Multidistrict Litigation Panel does not serve to stay the cases that are subject to the motion, nor does such a motion limit the Court from acting on matters properly before it."  See Id. at 4. (internal citations omitted).  Judge Coogler further found that "a ruling by the Multidistrict Panel does not affect the need or validity of Defendant's motion to transfer [because] in the event the Panel declines to consolidate and transfer the related cases, the Motion to Transfer would then need to be decided.  On the other hand, if the Panel does consolidate and transfer this case, the question of which court will preside over the trial remains a matter to be decided by this Court."  Id.

2

Plaintiff also claims that transfer is premature because "Plaintiff has not yet moved, nor has she decided if she will move, this Court for notice to be sent to other potential similarly situated individuals." This argument is nonsensical. Regardless of Plaintiff's professed indecision as to whether she will seek to facilitate notice, there is no question that Plaintiff has chosen to bring this case "on behalf of herself and others similarly situated," to recover overtime compensation allegedly owed to Plaintiff "and other similarly situated Store Managers" (*See* Complaint caption, and ¶¶ 7-11, 19-20, 23-27, 29). Plaintiff also claims in her Complaint that she will seek to facilitate notice to these allegedly similarly situated individuals (*See* Complaint's request for relief, at p. 6). Now, when faced with Family Dollar's motion to transfer based on these claims, Plaintiff feebly attempts to distance herself from these allegations and maintains instead that she has not decided whether she will pursue her case as a collective action by seeking to facilitate notice. Plaintiff has not and cannot cite to any authority to support her proposition that such "notice" is a prerequisite to a motion to transfer pursuant to 28 U.S.C. § 1404(a). In fact, no authority exists that would permit Plaintiff to ignore the plain allegations of her Complaint in this manner.

Regardless of the number of plaintiffs or class members at issue, the Section 1404 analysis is the same: the convenience of the parties and witnesses and the interest of justice compel transfer to the Western District of North Carolina because Family Dollar is headquartered within that District, voluminous documentary evidence is located within that District, and numerous key witnesses reside within that District. Most importantly, Judge Mullen, in the Western District of North Carolina, presides over seven cases involving similar issues and allegations as those addressed in <u>Magwood</u> – whether it be a single plaintiff or collective action case. Thus, as set forth below, this case should be transferred to the Western

3

District of North Carolina.

## II.    Defendant's Motion to Transfer Must Be Granted

Plaintiff argues that it makes no logical sense to transfer her "single plaintiff's case" to North Carolina. As explained, however, Plaintiff's complaint is not styled as a single plaintiff case. If Plaintiff truly wanted to pursue a single plaintiff case, she had the opportunity to accept Family Dollar's suggestion, made in its Response to Plaintiff's Motion to Amend (Doc. 26), that she strike her collective action allegations, with prejudice. Tellingly, Plaintiff instead promptly sought to withdraw her motion to amend, and to maintain intact her collective action claims. Now, Plaintiff apparently is suggesting that her decision to continue to pursue her collective action allegations is meaningless, and that notwithstanding her complaint allegations, she is pursuing her individual claims only.

Plaintiff's motive could not be more transparent: after Plaintiff used this Court and the *Magwood* case to concoct geographic diversity for the MDL Panel, she wants to delay in pursuing her collective action allegations until she knows whether the MDL Panel will transfer her case to the judge of her choosing, Judge U.W. Clemon. Plaintiff's blatant forum-shopping and judge-shopping should not be countenanced.

As a class representative in a collective action, Plaintiff cannot simply litigate her individual claim, as she apparently desires. Rather, she must at least try to establish that Family Dollar "intentionally failed and/or refused to pay Plaintiff and other Store Managers salary/rates according to the provisions of the FLSA." (Complaint, ¶ 19). As thirteen other courts have found, after an independent review of the facts and law, the vast majority of the documentary and testimonial evidence relevant to that determination is indisputably located within the Western District of North Carolina, and transfer to that District likewise serves the interests of justice.

Consistent with those cases, and as explained fully below, all of the statutory requisites for transfer to the Western District of North Carolina are met and all relevant factors strongly favor transfer to that district. Thus, Family Dollar's motion to transfer must be granted.

### A.     The Interests of Justice Mandate Transfer

There is no question that transferring this case to the Western District of North Carolina will serve the interests of justice. Plaintiff's Complaint presents the legal issue of whether Family Dollar improperly denied its employees overtime compensation in violation of the FLSA. This issue is likewise presented in all seven cases currently pending in the Western District of North Carolina. In light of this fact, this case should likewise be transferred there. Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1361 (M.D. Ala. 1998) (where similar cases are pending before the transferee district, transfer to that district is proper).

### B.     The Convenience Of The Parties And Witnesses Will Be Served By Transferring This Action To The Western District Of North Carolina

Apart from her conclusory assertions, Plaintiff has failed to show how transferring the case to the Western District of North Carolina would inconvenience her. For instance, Plaintiff claims that traveling to North Carolina to pursue her claims would constitute a "severe financial hardship" on her. (Doc. 31, p. 2). However, she makes this statement without supporting declarations or any description of the alleged hardship.[3] In any event, it is unfathomable that the cost of travel would begin to outweigh the legal fees involved for her counsel to duplicate in Alabama what is being (or has already been) done in the FLSA overtime cases filed by Family Dollar Store Managers that are pending in the Western District of North Carolina. Moreover,

---

[3] This also calls into question Plaintiff's ability to serve as a class representative. In Ingram, No. 2:06-BE-1507-S (Doc. 5, Exhibit 10 p. 7-8), the court dismissed the plaintiff's claim that litigating her collective action in North Carolina would be prohibitively expensive for her and other plaintiffs. Ingram asserted in her complaint that she could fairly and adequately protect the interest of the class, and the court stated that she should have considered the expense of litigating an opt-in collective action when deciding to bring such an action. Id.

Plaintiff's alleged "financial hardship" is contradicted by the fact that she is willing to pay for her counsel to travel to Charlotte, North Carolina to depose any corporate witnesses -- Plaintiff does not explain how she can afford for her counsel to take numerous corporate depositions there but cannot likewise afford to prosecute her case there.

Further, Plaintiff has not identified any other witnesses who would be inconvenienced if this matter were transferred to the Western District of North Carolina.  Instead, Plaintiff claims, without any support whatsoever, that Family Dollar's list of 32 key witnesses is "a sham" because those witnesses are irrelevant to her single plaintiff case.  Putting aside the ridiculous argument that Plaintiff's complaint allegations are "irrelevant" to the nature of her case, there is no question that Family Dollar's witness list is both valid and legitimate.  The thirty-two individuals on Family Dollar's list are management and executive-level corporate employees who are based at the Company's headquarters and reside in the Charlotte, North Carolina area. (Doc. 5, Exhibit 1 ¶ 12).  They would be key witnesses to Plaintiff's and any potential opt-in plaintiffs' claims because, for example, they are persons who: (a) develop and prepare the general expectations of employees; (b) calculate pay for employees; (c) process timesheets, paychecks, and payroll; and (d) maintain payroll records. (Doc. 5, Exhibit 1 ¶ 11).  These witnesses will be required to travel approximately 400 miles, or nearly six and a half hours by automobile, to attend trial in Montgomery, Alabama.  (Doc. 5, Exhibit 2).  Having to travel to Montgomery for hearings and a lengthy trial, would keep these key witnesses away from their work and homes.  Because many of the employees have vital responsibilities for the operation of the Company, scheduling time away from work will disrupt business operations because their responsibilities would have to be delegated to others, or simply not performed at all.  (Doc. 5,

Exhibit 1 ¶ 14).[4]

Based upon similar considerations, Judge Coogler noted in Ward v. Family Dollar,

> Defendant has identified approximately [thirty-two] employee
> witnesses that will be called to testify who currently work out of
> the corporate headquarters in North Carolina. "[W]hen considering
> the practical need to adjudicate in a forum convenient for the
> parties and material witnesses, courts generally examine the
> location of principal material witnesses, 'the relative ease of access
> to sources of proof,' and the ability of the parties to bear the
> expense of changing the forum." . . . Transferring this case to the
> Western District of North Carolina would save a considerable
> amount of resources regarding travel for key corporate witnesses,
> the transportation of documents and other evidence, and the
> avoidance of the disruption of work and home schedule of the
> witnesses.

Ward v. Family Dollar Stores of Alabama, Inc., No. CV-06-CO-01060-W, p. 8-9 (N.D. Ala.

Sept. 29, 2006) (Doc. 5, Exhibit 9); See also, Anderson v. Family Dollar, Inc., No. CIV-04-0210-

F (W.D. Okla. April 30, 2004) (Doc. 5 , Exhibit 4) ("Defendant has adequately shown that the

testimony of these witnesses will be necessary to its case.  Although the witnesses are employees

of defendant and will appear at trial, the court anticipates that the witnesses will be required be []

away from company business for an extended period of time . . . "); Broussard v. Family Dollar,

Inc., No. Civ. A. 05-0892, 2006 U.S. Dist. LEXIS 6587 (W.D. La. Jan. 31, 2006) (Doc. 5,

Exhibit 7) ("It appears the vast majority of witnesses reside in North Carolina, and defendant has

adequately shown that the testimony of these witnesses will be necessary to its case.  A trial in

North Carolina will be less destructive to the operations of defendant's business than requiring

all of the defendant's witnesses to attend trial in Louisiana."); Grace v. Family Dollar Stores,

Inc., No. 6:04-CV-22 (WLS) (M.D. Ga. July 14, 2006) (Doc. 5, Exhibit 8) ("a majority of key

---

[4] In addition, as noted in Family Dollar's memorandum in support of its motion to transfer, although the
common corporate witnesses are all located in North Carolina, other store-level witnesses and documents
necessarily will be located across the country in this case which has been pled as a nation-wide collective
action.

witnesses are located in Charlotte"); <u>Blake, et. al. v. Family Dollar Stores, Inc. et al.</u>, No. 2:07-cv-361 (S.D. Ohio June 19, 2007) (Doc. 5, Exhibit 11) ("several key witnesses are located in Charlotte, North Carolina. . . . Further, and more importantly, three important witnesses are subject to compulsory process only in North Carolina").

Transferring this case to North Carolina, the site of Family Dollar's corporate headquarters, also is warranted, because the bulk of relevant documents are located there. Plaintiff disagrees and "supports" her position with her conjecture that the Company's payroll records are all maintained in electronic format.[5]  Plaintiff is mistaken: as Barry Sullivan testified in his Declaration, only *some* of the Company's payroll records are computerized; others are in hard copy form only. (Doc. 5, Exhibit 1 ¶ 8).  In any event, the fact that documents can be imaged and produced on a disc does not change the fact that the originals are in North Carolina, and that ultimately, Family Dollar may be required to produce them at trial.  Fed. R. Evid. 1002. Furthermore, Family Dollar's general human resources and pay policies and practices, including those for non-exempt employees, are developed by management and executive-level employees at the North Carolina corporate headquarters.  (Doc. 5, Exhibit 1 ¶ 7).  Likewise, timesheets and payroll records for the potential plaintiffs in this case are processed and kept in North Carolina, and paychecks are prepared and distributed from there as well.  (Doc. 5, Exhibit 1 ¶¶ 8, 9). Personnel files are likewise maintained at the corporate headquarters.  (Doc. 5, Exhibit 1 ¶ 8).

Under these circumstances, it is appropriate to transfer this case to the Western District of North Carolina.  See <u>Gehm v. APL Logistics Warehouse Mgmt. Servs. Inc.</u>, No. 1:05cv804, 2006 U.S. Dist. LEXIS 50085, *7 (S.D. Ohio July 21, 2006) (attached as Exhibit 1); <u>see also</u>

---

[5] Continuing their effort to transform her case into a single plaintiff case, Plaintiff also claims that there "could not be" records in North Carolina relating to Plaintiff's singular employment history.  Plaintiff's continued effort to recast her allegations is, once again, contradicted by the complaint allegations.  In addition, it is "supported" by nothing other than sheer speculation.

Ingram, CV-06-BE-1507-S (Doc. 5, Exhibit 10 p. 6) (transferring FLSA overtime case against Family Dollar to the Western District of North Carolina, in part, because "[a]s the epicenter of the material events, corporate headquarters also hosts the location of the documentary evidence that will be a significant part of the discovery and proof in this case").

### C.    Judicial Economy Mandates Transfer

Seven actions which allege claims substantially identical to Plaintiff's, are currently pending in the Western District of North Carolina.  Like the present case, each of those actions (1) purports to be filed on behalf "all employees and former employees" who worked as Store Managers for Family Dollar.[6].  Because each of these actions was filed prior to the present action, and this case involves substantially "overlapping issues," there is a "strong presumption" favoring the transfer of this case to the Western District of North Carolina under the "first-filed rule", so that these substantially identical cases can be resolved together in the interest of judicial economy and comity.  See Slater et. al. v. Family Dollar Stores, Inc., No. 3:07-cv-119-TSL-JCS (S.D. Miss. Sept. 27, 2007) (Doc. 5, Exhibit 13).[7]

Plaintiff suggests that Family Dollar's judicial economy request is insincere because, after successfully moving to transfer both Grace and Ward to North Carolina, it opposed consolidation of these two cases.  However, Family Dollar opposed consolidation of Grace and Ward for good reason.  Grace was filed on May 17, 2004, and the parties conducted extensive

---

[6] While the alleged claims are substantially identical, three cases, Blake, Fowler, and Slater, limited potential plaintiffs to Store Managers in their respective states.

[7] Plaintiff criticizes Family Dollar's statistical data regarding each court's docket.  It should be noted that Family Dollar relied on statistics available at www.uscourts.gov, which is the same site that hosts the Middle District of Alabama's website.  In support of her argument that the Middle District Of Alabama has a smaller docket, Plaintiff surmises that this Court's actual caseload can be calculated by dividing the number of pending cases by the number of district court and magistrate judges.  Plaintiff is mistaken in her analysis.  M.D. Ala. LCrR. 73.1 indicates that Magistrate judges may exercise all power and duties in a case, provided they have consent of the parties; however, it is neither reasonable nor reliable for Plaintiff to assume that Magistrate Judges exercise the same caseload as District Court Judges.

discovery on the issue of whether Store Managers were similarly situated for purposes of receiving notice and the opportunity to opt into the collective action.  Grace had been pending for more than two years, and its pre-notice discovery was complete, when the *same* Plaintiffs' counsel, Wiggins Childs, filed Ward (a similar action) in the Northern District of Alabama.  The act of filing a second nationwide collective action against Family Dollar was a transparent maneuver to get a "second bite" at the conditional certification apple in the event that Grace court denied conditional certification and court-facilitated notice.  In transferring Ward to the Western District of North Carolina, Judge L. Scott Coogler astutely noted that Wiggins Childs was admittedly "forum shopping" by filing Ward as a separate action in Alabama.  (Doc. 5, Exhibit 9 p. 10 n.3).  In short, Family Dollar opposed consolidation because the two cases were in different procedural postures, and it wanted Wiggins Childs to adhere to its choice of maintaining two separate actions after its forum shopping ploy failed.

Contrary to Plaintiff's argument, the judicial economy of transferring venue will not be lost if the Western District of North Carolina ultimately declines to consolidate this case with any of the similar pending cases:

> A transfer will promote judicial economy by obviating the need to pursue two actions . . . in distant forums.  In the event, the two cases are consolidated, it would allow a single court to provide a final adjudication of the parties' . . . dispute.  *Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court.*

Talent Tree Crystal, Inc. v. DRG, Inc., No. 1:04-CV-875, 2005 WL 3312554, *5 (W.D. Mich. Dec. 7, 2005) (emphasis added) (attached as Exhibit 2).  Thus, whether the Western District of Carolina chooses to consolidate this case with any others has no bearing on whether this Court should do its part to promote judicial economy by placing related claims before the same court.  Clearly, it is most logical and efficient for the Western District of North Carolina (where seven

cases are presently pending) to handle the numerous cases that purport to bring substantially similar claims against Family Dollar.  See Davis v. Metro Goldwyn-Mayer Pictures, No. 2:05cv860-T(WO), 2007 U.S. Dist. LEXIS 23942, *4 (M.D. Ala. 2007) (citing Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. July 13, 1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

**III.     Conclusion**

For the reasons stated herein, and those articulated in Defendant's Motion to Transfer Venue (Doc. 5), Family Dollar respectfully requests that the Court transfer this case to the United States District Court for the Western District of North Carolina, where it can be resolved with the numerous other previously-filed FLSA collective actions currently pending against Family Dollar in that forum.

Respectfully submitted,

/s/ Terry Price
Terry Price
Alabama Bar No. ASB-4658-E58T
Email:  tprice@fordharrison.com
Ford & Harrison LLP
2100 Third Avenue North, Suite 400
Birmingham, AL 35203
Telephone:  (205) 244-5900
Facsimile: (205) 244-5901

John A. Ybarra (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
200 N. LaSalle Street, Suite 2900
Chicago, IL 60601
Telephone:  (312) 372-5520
Facsimile:  (312) 372-7880
E-mail:  jybarra@littler.com
Bar No.:  IL Bar No. 06196983

Jeremy W. Stewart (admitted *pro hac vice*)
LITTLER MENDELSON, P.C.
200 N. LaSalle Street, Suite 2900
Chicago, IL 60601
Telephone: (312) 372-5520
Facsimile: (312) 372-7880
E-mail: jwstewart@littler.com
Bar No.: IL Bar No. 6293884

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing on the 21st day of March, 2008

with the Clerk of the Court by using the CM/ECF system, which will send electronic copies to:

Bobbie S. Crook, 367 S. St. Andrews Street, Dothan, AL 36301, BCrook100@aol.com.


/s/ Terry Price
Terry Price


Birmingham:20410.1

# EXHIBIT 1

1 of 1 DOCUMENT

**Michelle N. Gehm, Plaintiff, v. APL Logistics Warehouse Management Services Inc. a/k/a APL Logistics, Inc., Defendant.**

**Case No. 1:05cv804**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*2006 U.S. Dist. LEXIS 50085*

**July 21, 2006, Filed**

COUNSEL: [*1] For Michelle N Gehm, Plaintiff: August Randall Vehar, International Chemical Workers Union Council, Akron, OH; Robert W Lowrey, UFCW, Akron, OH.

For APL Logistics Warehouse Management Services Inc also known as APL Logistics Inc, Defendant: Roger L Schantz, Benesch Friedlander Coplan & Aronoff - 2, Columbus, OH; Andrew J Martone, Bobroff Hesse Lindmark & Martone PC - 2, St Louis, MO.

JUDGES: Michael R. Barrett, Judge.

OPINION BY: Michael R. Barrett

OPINION

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant's Motion to Transfer Venue Pursuant to *28 U.S.C. § 1404(a)* (Doc. 5 and 19). Plaintiff has filed a Response in Opposition (Doc. 10 and 20) and Defendant has filed a Reply (Doc. 12). This matter is now ripe for review.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This matter was filed in this District Court on December 8, 2005. Plaintiff filed its first amended complaint on December 20, 2005. Defendant answered and filed its first Motion to Transfer Venue on February 27, 2006 (Doc. 5). Plaintiff filed a Second Amended Complaint on May 30, 3006. Defendant again answered and filed its Second Motion to Transfer Venue on June 5, 2006 (Doc. [*2] 19).

**II. ARGUMENTS OF THE PARTIES**

The Defendant argues that this matter should have been brought in the United States District Court for the Western District of Kentucky as both the public interest factors and private interest factors strongly favor the Western District of Kentucky (Doc. 5). The undisputed facts are that Plaintiff was a resident of Shepherdsville, Kentucky (in the Western District of Kentucky) when she was discharged (Doc. 5 and 10) from her employment with Defendant, that Plaintiff worked at Defendant's warehouse facility in or near Shepherdsville, Kentucky, and that Plaintiff was hospitalized and received medical treatment in the Western District of Kentucky (Doc. 5 and 10). Defendant further argues that the decision to terminate Plaintiff was made in Shepherdsville, Kentucky, Plaintiff's personnel file is located is Shepherdsville, Kentucky and that all of the witnesses are located in or around the Western District of Kentucky.

Plaintiff argues that the Defendant is registered to do business in the State of Ohio and, in fact, conducts business in Ohio (Doc. 10). Plaintiff was involved with the successful organizing effort that led to the International [*3] Chemical Workers Union Council ("Council") of the United Food and Commercial Workers becoming the exclusive bargaining agent at Defendant's warehouse facility where Plaintiff was employed (Doc. 10). Due to this involvement, the Council, which is headquartered in Akron, Ohio, is providing representation to Plaintiff through its staff attorneys who are also located in Akron, Ohio.

**III. ANALYSIS**

The statute that governs this motion is *28 U.S.C. § 1404(a)* which states, in pertinent part,

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Courts have found that the decision to transfer a civil case is in the sound discretion of the trial court. *Midwest Motor Supply Co. v. Kimball, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991).*

The Court must first determine if, in fact, this matter could have been brought in the Western District of Kentucky. *Sky Technology Partners, LLC v. Midwest Research Inst., 125 F. Supp.2d 286, 291 (S.D. Ohio 2000).* In reviewing the face of the complaint, [*4] the Court finds that this matter could have been brought in the Western District of Kentucky. Furthermore, the Plaintiff does not contest this fact (See Doc. 10, p5).

Next, the Court must balance the public interest factors and private interest factors to determine if a transfer would be appropriate. *Sky Technology Partners, 125 F. Supp.2d at 291.* The public interest factors that favor transferring a case include the docket congestion of the Courts, the burden a trial would have on the jurisdiction with no relation to the case, the value of having the trial in the community where the affected public live, and the familiarity of the court with the controlling law. *Id.* The private interests factors that favor transferring a case include the relative ease of access to the sources of proof, the availability of compulsory process for attendance of unwilling witnesses and all other practical problems that make the trial of a case easy, expeditious and inexpensive. *Id.* Additional factors to be considered when evaluating whether a transfer is appropriate under § 1404(a) include "the nature of the suit; the place of the events involved; . . . and the residences of [*5] the parties." *Id.* citing *Midwest Motor Supply Co., Inc., 761 F. Supp. at 1318.* The Court should also give considerable weight to the Plaintiff's choice of forum "and the balance of convenience, considering all relevant factors, must be strongly in favor of a transfer before such transfer will be granted. *Artisan Development, Div. of Kaiser Aetna v. Mountain States Development Corp., 402 F. Supp. 1312, 1314 (S.D. Ohio 1975).*

First, addressing the specific public interest factors, the Court finds that the public interest factors do not weigh strongly for one venue versus the other. Without knowing the docket congestion of the Western District of Kentucky, this Court can only assume that it has a congested docket like that of the Southern District of Ohio. Additionally, both Courts are equally familiar with the controlling law as this case relates to a federal question. The remaining two factors, the burden a trial would have on the jurisdiction with no relation to the case and the value of having the trial in the community where the affected public live, does slightly favor a transfer to the Western District of Kentucky but as the Defendant does

[*6] have a presence in Ohio those factors do not indicate a strong necessity to transfer this matter.

However, the specific private interest factors do strongly favor a transfer of venue to the Western District of Kentucky. This Court is mindful of the deference to be given to Plaintiff's choice of forum and is sympathetic to Plaintiff's counsel's desire for this matter to remain in this district so as to not have to proceed on a *pro hac vice* basis and hire local counsel in Kentucky; however, since Plaintiff herself is a resident of Shephardsville, Kentucky, worked for Defendant in Shephardsville, Kentucky, and saw physicians in Shephardsville and Elizabethtown, Kentucky, this Court finds a transfer to the Western District of Kentucky will not be an inconvenience to the Plaintiff, although admittedly it may be one for Plaintiff's counsel. [1] In addition, every witness that would need to be called to a trial in this matter is from the Western District of Kentucky. The Court may feel differently about this matter if the Western District was located "across the river" from the Southern District of Ohio. However, there is approximately 100 miles between the two courthouses and approximately [*7] 120 miles between Shepardsville, Kentucky and the Southern District of Ohio, compared to 20 miles between Shepardsville, Kentucky and the Western District of Kentucky.

> 1   This inconvenience will be minimal as Plaintiff's counsel will have to travel from Akron in any event.

The Plaintiff asserts that the "availability of compulsory process for unwilling witness" is not a factor of importance as Plaintiff believes that the Court's subpoena power will not be necessary as the witness are employees of Defendant and are thus, under the control of Defendant. The Court, however, refuses to limit Defendant in that regard. The Civil Rules are clear. A court shall quash or modify a subpoena if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides." *Fed.R.Civ.P. 45 (c)(3)(A)(ii).* As previously stated, since Shepardsville is 120 miles from Cincinnati, the chances of many of the witnesses being more than 100 miles away from this [*8] Court is fairly great.

In addition, the travel expenses, including mileage and hotel stays, for the parties in this case, including covering those expenses for the witnesses, would be greatly increased if this matter remains in the Southern District of Ohio.

Based on the foregoing, Defendant's Motion for to Transfer Venue (Doc. 5) is hereby **MOOT** and Defendant's Motion to Transfer Venue (Doc. 19) is hereby **GRANTED.** It is hereby ordered that this matter be

transfer from the docket of this Court to the United States District Court for the Western District of Kentucky.

**IT IS SO ORDERED.**

/s/ Michael R. Barrett, Judge

United States District Court

# EXHIBIT 2

1 of 1 DOCUMENT

**TALENT TREE CRYSTAL, INC., Plaintiff, v. DRG, INC., Defendant.**

**File No. 1:04-CV-875**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2005 U.S. Dist. LEXIS 34214*

**December 6, 2005, Decided
December 7, 2005, Filed**

**PRIOR HISTORY:** *DRG, Inc. v. Talent Tree, Inc., 119 Fed. Appx. 702, 2004 U.S. App. LEXIS 25549 (2004)*

**COUNSEL:** [*1] For Talent Tree Crystal, Inc., plaintiff: David J. Gass, Miller Johnson Snell & Cummiskey PLC, Grand Rapids, MI; David J. Butler, Duke K. McCall, III, Thomas R. Lotterman, Swidler Berlin LLP, Washington, DC.

For DRG, Inc., defendant: John Michael Zukowski, Pascal Paul Piazza, Zukowski Bresenhan & Sinex LLP, Houston, TX.

**JUDGES:** ROBERT HOLMES BELL, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ROBERT HOLMES BELL

**OPINION**

This matter is before the Court on Defendant DRG Inc.'s motion to transfer venue pursuant to *28 U.S.C. § 1404(a)*. On November 8, 2005, the Court denied DRG's motion to dismiss for improper venue after hearing oral argument from the parties. *See Talent Tree Crystal, Inc. v. DRG, Inc.,* 1:04-CV-875 (W.D. Mich.) (Docket # 22, 62). On November 15, 2005, DRG filed the instant motion to transfer under *§ 1404(a). See Docket # 64.* DRG argues that the contractual forum selection clause, the convenience of the parties and witnesses, the accessibility of sources of proof, the costs of witness testimony, the contractual choice of law provision, and the interests of justice weigh in favor of a transfer of venue to the Southern District of Texas, Houston Division. [*2] Plaintiff Talent Tree Crystal, Inc. ("Talent Tree"), however, argues that the forum selection clause should be given little weight, and its choice of forum, the convenience of the parties and witnesses, the costs of witness

testimony, the expense and expeditiousness of trial in this district, the interest of justice, the relative congestion of the two courts, and the public's interest in having local controversies decided locally weigh against a transfer of venue. For the reasons stated below, the Court grants DRG's motion to transfer venue to the Southern District of Texas, Houston Division.

I.

This case involves the alleged breach of a franchise agreement by DRG. Talent Tree is in the business of operating and licensing temporary employee staffing businesses. Talent Tree's principal place of business is located in Houston, Texas. DRG is a franchisee of Talent Tree and is located in Grand Rapids, Michigan. This case represents the fifth round of litigation between these parties regarding their franchise agreement. In addition to the present matter, this Court has presided over two previous cases involving this agreement. *See DRG, Inc. v. Talent Tree, Inc.,* No. 1:02-CV-401 (Quist, [*3] J.); *DRG, Inc. v. Talent Tree Staffing Services, Inc.,* No. 1:96-CV-553 (Bell, C.J.). Both DRG and Talent Tree have also each filed a lawsuit in Texas. DRG filed a suit in the state district court for Harris County, Texas, while Talent Tree, four months after filing the present suit before this Court, filed suit in the federal district court for the Southern District of Texas. The suit before this Court, DRG's suit in Texas state court, and Talent Tree's suit in Texas federal court are all currently pending and all seek relief based upon the breach of various provisions of the franchise agreement. [1]

1 Apparently the Texas state court case has been temporarily stayed by the state intermediate appellate court following Talent Tree's invocation of the "federal court" provision of the forum selection clause. *See DRG's Mot. Dis., Ex. F, G* (Docket # 22).

The parties' franchise agreement provides the following mandatory forum selection clause:

> Any cause of action between [Talent Tree] and [DRG] [*4] arising under this Agreement will be brought in the United States District Court of the Southern District of Texas. If that Court lacks jurisdiction, the action will be brought in the state courts of Houston, Texas and [DRG] submits to the jurisdiction of such courts. No rights or causes of action arising from this Agreement will be lost if these venues are not available.

Franchise Agreement, P10(e), Exhibit 1, Pl.'s Compl. (Docket # 1). DRG argues that this clause places the burden of proof on Talent Tree. Talent Tree, on the other hand, contends that the forum selection clause should be accorded little weight in the calculus required under *§ 1404(a)*. The Court will address the significance of the forum selection clause below. But, at the very least, the presence of the forum selection clause shifts the burden of proof on this motion to Talent Tree. *See Viron Int'l Corp. v. David Boland, Inc., 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002)* (McKeague, J.).

In the typical case the moving party bears the burden of proof on a motion to transfer under *§ 1404(a). See e.g., Steelcase, Inc. v. Smart Techs., Inc., 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004)* [*5] (Quist, J.). In a case such as this one, however, where the parties have contractually agreed to litigate in a particular forum, this Court has previously held that the burden of proof shifts to the nonmoving party to demonstrate why it should not be bound by the forum selection clause. *Viron Int'l Corp., 237 F. Supp. 2d at 815; see also United States v. P.J. Dick Inc., 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000)* (describing the "heavy burden of proof" that a party faces when seeking to set aside a forum selection clause based on inconvenience). Thus, Talent Tree has the burden of demonstrating that the forum selection clause should not apply in this case.

The Court now turns to the merits of DRG's motion. *Section 1404(a)* provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. In evaluating a motion to transfer under *§ 1404(a)*, the Court has broad discretion to grant or deny the request and must determine: (1) whether the action could have been brought in the [*6] proposed transferee district; (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience. *See IFL Group Inc. v. World Wide Flight Service, Inc., 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004)*. Neither party contends that their agreed upon forum would be an improper venue and, given that a suit involving these same parties and this franchise agreement has been filed in that district, it is clear that this action could have been brought in the proposed transferee venue. Therefore, the Court will turn to the second and third prongs of the analysis.

Courts examine a number of factors when evaluating the interests of justice and convenience of the parties and witnesses including: (1) convenience of the parties and witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, (5) the interests of justice, (6) the relative congestion in the courts of the two forums, (7) the public's interest in having local controversies adjudicated locally, (8) the [*7] relative familiarity of the two courts with the applicable law, (9) the plaintiff's original choice of forum, and (10) whether the parties have agreed to a forum selection clause. *Viron Int'l, 237 F. Supp. 2d at 816; Steelcase, Inc., 336 F. Supp. 2d at 719-20*.

## 1. Convenience of Parties and Witnesses

Procedurally, this case presents a somewhat unique situation in which the moving party is requesting that the case be transferred from its district of residence to the district of residence of the nonmoving party. Presumably, it is more convenient for each party to litigate the case in its own district of residence. *See Morales v. Navieras de Puerto Rico, 713 F. Supp. 711, 713 (S.D.N.Y. 1989)*. The convenience of this forum for the parties is mitigated, however, by two additional factors. First, the parties agreed to litigate their disputes under the franchise agreement in the Southern District of Texas. While a forum selection clause is not a dispositive factor on a motion to transfer, it is significant and, in this case, weighs in favor of transferring the case to Texas. *See Stewart v. Ricoh Corp., 487 U.S. 22, 29, 31, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)* [*8] (holding that a forum selection clause is a significant, but not dispositive factor under the *§ 1404(a)* analysis), *Moses v. Business Card Exp., Inc., 929 F.2d 1131, 1136 (6th Cir. 1991)*. Second, a transfer to the Southern District of Texas would also serve the parties' convenience because the parties have a suit pending in that district involving the breach of the same franchise agreement. A review of the complaints filed in each respective case reveals that the two cases encompass similar breach of contract issues arising from the same franchise agreement. *Compare* Pl.'s Compl. P19 (alleging breach of P5 of the franchise agreement) (Docket # 1) *with* Ex. A Pl.'s Compl. P10, 14 (alleging

breach of P5(a) and 8(f)(7)) (Docket # 22). It appears to this Court that litigating similar issues arising from the same agreement in a single forum would be more convenient for the parties.

Talent Tree argues that the litigation of the two previous cases involving these parties demonstrates that this district is a convenient forum. The previous suits in this district are of limited relevance to the parties' convenience in the present case and do not tip the balance in favor [*9] of denying the transfer. For example, the previous lawsuits do nothing to address the inconvenience of currently conducting two cases involving the same parties, same agreement, and, most likely, many of the same witnesses in two distant forums. It is also slightly disingenuous for Talent Tree to argue that this district is a "perfectly convenient forum for the parties, notwithstanding the forum selected in the parties' franchise agreement" while vigorously contending in Texas state court that the forum selection clause mandating that suit be filed in the Southern District of Texas must be enforced. See e.g. Exhibit F, G, Def.'s Mot. (Docket # 22).

Talent Tree also contends that the convenience of the witnesses would not be served by a transfer away from this district. Talent Tree points to the fact that four of the six witnesses who have been deposed live in Grand Rapids. See Butler Decl. P2 (Docket # 75). The convenience of these witnesses is given less weight, however, because each one is an employee of DRG, and thus "are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail." 17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 111.13 [*10] [1][f][iii] (collecting cases). [2] Neither party has provided any evidence that Michigan is a more convenient forum for any non-party witnesses. [3] Therefore, the convenience of the witnesses is, at best, neutral because Michigan would be a more convenient forum for DRG's employees and party witnesses and Texas would be a more convenient forum for Talent Tree's employees. See Viron Int'l Corp., 237 F. Supp. 2d at 816-17.

> 2    In light of the two on-going lawsuits in Texas, the witnesses will already be required to travel to Texas. A transfer, therefore, would seem to eliminate the inconvenience of attending a third court proceeding in a distant forum.
>
> 3    Talent Tree refers to a single non-party witness who is located in California. Butler Decl. P2. There is no evidence that Michigan would be a more convenient forum for this witness than Texas.

### 2. Accessibility of Sources of Proof

DRG contends that this factor favors a transfer because the bulk of Talent Tree's documentary evidence [*11] is located in Houston, Texas. Talent Tree responds that the accessibility of sources of proof is not an issue in this case and does not favor a transfer. According to Talent Tree's counsel, the relevant documentary evidence is located in Florida, Michigan, and Texas. See Butler Decl. at P3. This factor favors neither Michigan or Texas as the forum for this dispute, given that the relevant documents can easily be transported to and from Texas to Michigan, and vice versa. See Viron Int'l Corp., 237 F. Supp. 2d at 817.

### 3. Cost of Securing Witness Testimony

Talent Tree argues that, based on the location of the majority of DRG's material witnesses and the comparative financial position of the parties, this factor favors denying the requested transfer. DRG briefly mentions, without explanation, that this factor favors transfer. While, in the event of a transfer, DRG will need to incur the costs of securing live testimony of its witnesses in Texas, this factor is given less weight in light of the suits pending in the Texas state and federal courts. Due to the Texas state court and Southern District of Texas litigation, DRG will need to incur the costs of securing [*12] testimony in Texas. Thus, it is not likely that the transfer of this matter will significantly increase the costs of securing testimony in this case. Moreover, the continuation of two lawsuits in Michigan and Texas would likely increase the costs of securing testimony for both parties because it would be necessary to shuttle witnesses between the two forums. Therefore, this factor weighs in favor of a transfer.

### 4. Practical Problems Associated with Trying the Case in the Least Expensive and Most Expeditious Fashion

Talent Tree argues that this factor weighs in favor of a denial of the transfer because discovery has been completed in this case, dispositive motions have been filed, a summary judgment oral argument date has been set, and a trial is scheduled during February 2006. By comparison, Talent Tree contends that, in the event of a transfer, the case would be delayed by at least eight months because discovery has not closed in the Texas matter, the dispositive motion deadline is in July 2006, and trial is scheduled during the fall of 2006. While the Court recognizes that transferring this case will result in a slight delay of the adjudication, this fact does not persuade [*13] the Court that a transfer is unwarranted.

### 5. Interests of Justice

Talent Tree argues that the interests of justice weigh heavily against transferring this case to Texas. Talent Tree focuses on DRG's failure to file a transfer motion

during the nearly 11 months this case has been pending. While delay can be a factor in the transfer analysis, courts generally look to see if the non-movant can show prejudice by the delay. *See U.S. Fidelity & Guar. Republic Drug Co., Inc., 800 F. Supp. 1076, 1082-83 (E.D.N.Y. 1992)* (citing *Babbidge v. Apex Oil Co., 676 F. Supp. 517, 522 (S.D.N.Y. 1987))*. Talent Tree has not provided any facts demonstrating that it would be prejudiced by the transfer at this time. Moreover, it cannot be argued that Talent Tree would be prejudiced by the transfer to the Southern District of Texas in light of the fact that Talent Tree has deemed that forum to be an appropriate venue to adjudicate certain aspects of the franchise agreement.

The interests of justice would be served by a transfer of this case to the Southern District of Texas. A transfer will promote judicial economy by obviating the need to pursue two actions involving [*14] the same franchise agreement in distant forums. In the event, the two cases are consolidated, it would allow a single court to provide a final adjudication of the parties' contractual dispute. Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court. *See Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd., 645 F. Supp. 89, 92 (E.D.N.Y. 1986)* ("The pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue.") (quoting *Supco Auto. Parts, Inc., v. Triangle Auto Spring Co., 538 F. Supp. 1187, 1192 (E.D. Pa. 1982))*.

### 6. *Relative Congestion*

Talent Tree also argues that the relative congestion of the two courts weighs against transferring this case to the Southern District of Texas. Talent Tree cites recent federal court management statistics indicating that, as of 2004, there were 372 pending cases per judge in the Western District of Michigan, and 507 cases pending per judge in the Southern District of Texas. *See* Exhibit E, Pl.'s Res. Br. Based upon this statistic, Talent Tree argues that the transfer would not alleviate congestion [*15] in this Court in favor of a less congested forum. Talent Tree overlooks another indicator of the relative congestion of the two courts in the statistics it provided to the Court, the median time from filing to disposition of a civil case. In this district, the median time from filing to disposition of a civil case was 9.7 months, while in the Southern District of Texas the median time was 6.8 months. Thus, although the Southern District of Texas may have more cases per judge, this fact does not appear to result in a greater delay in the disposition of civil cases.

Talent Tree's data also fails to account for the recent elevation of a member of this Court to the Sixth Circuit Court of Appeals and the decision of two other members

of this Court to take senior status. As of January 1, 2006, this Court will be operating with a single active judge. With a single active judge, delays in the adjudication of civil cases will inevitably result, due to the increasing number of criminal cases and their priority over civil actions. It does not appear that this factor weighs in favor or against transfer because both court dockets are significantly congested.

### 7. *Public's Interest in Local* [*16] *Controversies*

Talent Tree argues that this factor weighs against the transfer because the Michigan public has an interest in having this dispute, involving a Michigan corporation, resolved in Michigan. [4] Talent Tree makes too much of this factor. At best, it is a "wash." This contractual dispute involving the various provisions of a franchise agreement is of little interest to the public in Michigan or Texas. Even assuming some interest in this dispute on the part of the public, it does not weigh in favor of either forum. The Michigan public's interest arises from the location of DRG in Grand Rapids. By the same token, the Texas public would have a similar interest based upon Talent Tree's location in Houston, Texas. Thus, this factor neither weighs for or against transfer.

> 4  Talent Tree does not appear to have taken the Michigan public's apparent interest into account when filing its lawsuit against DRG in the Southern District of Texas four months after filing this suit.

### 8. *Relative Familiarity with* [*17] *the Law*

The franchise agreement governing this dispute contains a choice of law provision stating that the contract is governed by Texas law. Franchise Agreement P10(d), Exhibit 1, Pl.'s Compl. DRG argues that this factor supports a transfer in this case. Talent Tree contends that this factor is neutral because this case does not involve complex questions of state law and only requires the application of "essentially uniform" principles of contract interpretation. The lack of complexity of the issues in this case is balanced against the "appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*. While the contractual choice of law provision weighs in favor of transfer, the absence of complex issues of Texas contract law suggests that this factor should be given less weight. Thus, this factor is neutral.

### 9. *Plaintiff's Choice of Forum*

The plaintiff's choice of forum is often given some weight in the transfer analysis. [*18] *Viron Int'l Corp., 237 F. Supp. 2d at 819.* The Court will not give any weight to Talent Tree's choice of forum in this case, however, in light of the forum selection clause selecting the Southern District of Texas, Talent Tree's residence in that district, and Talent Tree's own willingness to litigate certain issues arising from the franchise agreement underlying this case.

Talent Tree argues that its choice should be given some weight based upon DRG's choice to litigate two previous disputes involving this franchise agreement in this Court. Talent Tree's reliance on the two previous lawsuits in this Court is misplaced. A *§ 1404(a)* motion to transfer calls for an "*individualized, case-by-case* consideration of convenience and fairness." *Stewart, 487 U.S. at 29* (quoting *Van Dusen, 376 U.S. at 622*) (emphasis added). The parties were free to raise the forum selection clause and file a motion to transfer in the previous cases. It does not appear that such a motion was made in either case. The failure to object to venue in this district in previous cases, however, does not preclude that issue from being raised in the present case. [*19] Whether in the past, Talent Tree failed to invoke the forum selection clause is of no concern to the present matter. Talent Tree cannot use its failure to raise the issue in previous cases as evidence weighing in favor of ignoring the agreed upon contractual venue provision in this case.

10. *Forum Selection Clause*

In *Stewart,* the Supreme Court held that a forum selection clause should be given significant, although not dispositive, weight under the *§ 1404(a)* analysis. *487 U.S. at 29, 31.* Talent Tree argues that the clause should be given little weight due to the litigation of the previous

lawsuits involving these parties in this Court and due to DRG's delay in filing this motion to transfer. Although in this case Talent Tree has tried to distance itself from the forum selection clause, it cannot escape the fact that its own standard franchise agreement mandates that suits arising under the agreement must be filed in the Southern District of Texas. This is a significant factor favoring granting DRG's motion to transfer. The decision not to invoke the clause in previous cases does not effect the present analysis in this case. The clause has been properly raised [*20] in this case and clearly favors transferring the case to the Southern District of Texas.

While Talent Tree has shown that a slight delay in the adjudication of this matter will occur if transfer is granted, this fact does not tip the balance in favor of denying the transfer motion. It is outweighed by the convenience of the parties, the interests of justice, the removal of the costs of securing testimony in two forums, and the forum selection clause. Each of these factors favors transferring this case. The remaining factors are a "wash." Therefore, Talent Tree has failed to satisfy its burden of proof and the case should be transferred.

Accordingly, the Court grants DRG's motion for transfer of venue pursuant to *28 U.S.C. § 1404(a).* Upon the transfer of this case to the Southern District of Texas, the Clerk of the Court should review it to determine if it can be consolidated with the other pending case involving these parties or designated as a related case. An order will be entered consistent with this opinion.

Dated: December 6, 2005

ROBERT HOLMES BELL

CHIEF UNITED STATES DISTRICT JUDGE